IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

| | | |
|---|---|---|
| SERCO INC.; STANLEY ASSOCIATES INC.; CGI FEDERAL INC.; STG, INC.; ARTEL, INC.; ADVANCED TECHNOLOGY SYSTEMS INC.; APPTIS INC.; NORTEL GOVERNMENT SOLUTIONS, INC., and THE CENTECH GROUP | ) | **AGREED UPON REDACTED COPY MAY BE MADE PUBLIC** |
| Plaintiffs, | ) | |
| v. | ) | Consolidated Nos. 07-691C, 07-732C, 07-741C, 07-747C, 07-760C, 07-761C, 07-766C, 07-771C, 07-803C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| INDUS CORPORATION; ELECTRONIC DATA SYSTEMS CORPORATION; INTERNATIONAL BUSINESS MACHINES CORPORATION; and GENERAL DYNAMICS ONE SOURCE, LLC, | ) | |
| Defendant-Intervenors. | ) | |

**CONSOLIDATED-PLAINTIFF STANLEY ASSOCIATES, INC'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND FOR PERMANENT INJUNCTION, AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... v

STATEMENT OF QUESTIONS ..... 1

STATEMENT OF THE CASE ..... 2

STATEMENT OF FACTS ..... 3

ARGUMENT ..... 10

I. STANLEY'S MOTION IS PROPERLY BEFORE THE COURT ..... 10

II. GSA'S BCP EVALUATION LACKS A REASONABLE BASIS, IS CONTRARY TO THE TERMS OF THE RFP, AND VIOLATES APPLICABLE LAW AND REGULATIONS ..... 11

A. The SSA Failed to Treat Stanley Equally with Respect to the [redacted] Subfactor ..... 11

B. The SSA Failed to Follow the Criteria in the RFP and in Annex D of the Source Selection Plan in Evaluating Stanley's [redacted] ..... 15

C. Stanley Was Not Evaluated [redacted] or [redacted] as Required by the RFP, or Even in a Neutral Manner but, Instead, was Inexplicably and Unreasonably Treated [redacted] ..... 16

D. Stanley was Prejudiced by the SSA's Failure to Correctly Apply the Evaluation Factors and, but for GSA's Errors, It Would Have Had More Than a Substantial Chance of Receiving Award ..... 17

III. GSA'S PAST PERFORMANCE EVALUATIONS LACK A REASONABLE BASIS, ARE CONTRARY TO THE TERMS OF THE RFP, AND VIOLATE APPLICABLE LAW AND REGULATIONS ..... 19

A. The Questions GSA Asked the Past Performance References Failed to Address all of the Evaluation

Criteria Against Which the RFP Advised that
Past Performance Would be Evaluated ........................................................ 19

B. Stanley's Past Performance Evaluations Were
Contrary to the RFP and Unreasonable ........................................................ 21

1. The scores attributed to Stanley's Reference [redacted]
are unreasonable........................................................................ 21

2. The Past Performance scores are unexplained
and unreasonable........................................................................ 22

a. [redacted] ........................................................22
b. [redacted] ........................................................23
c. [redacted] ........................................................24
d. Consensus Evaluation........................................................24

3. Stanley was treated unequally in GSA's Past
Performance evaluation ........................................................................ 24

C. The Past Performance Evaluators Committed
Numerous Other Errors........................................................................ 26

D. Stanley Was Prejudiced by the Numerous Past
Performance Evaluation Mistakes ........................................................ 27

IV. THE BEST VALUE DETERMINATION WAS FLAWED,
UNREASONABLE, AND IRRATIONAL ........................................................ 28

A. GSA's Determination to Award to the Top 28
Technically Ranked Proposals Without
Regard to Price Was Unreasonable........................................................ 29

B. GSA's Cost/Technical Tradeoff Analysis
was Flawed and Unreasonable........................................................ 32

1. GSA's Analysis Failed to Conform with the RFP and
Was Based Upon a Flawed Technical Evaluation .................................. 32

2. Stanley/[redacted] Tradeoff ........................................................ 36

3. Stanley/[redacted] Tradeoff........................................................ 39

4. Stanley/[redacted] Tradeoff........................................................ 40

5. Stanley/[redacted] Tradeoff........................................................ 41

6. Other Exhibit cost/technical tradeoffs were irrational and unreasonable ............................................................ 43

C. The SSDM Mischaracterized the Record and Was Not In Accord with Stated Evaluation Criteria........................................... 44

V. CONCLUSION AND RELIEF SOUGHT………………...……………………………48

# TABLE OF AUTHORITIES

**Cases** **Page**

*American Fed'n of Gov't Employees, AFL-CIO v. United States*,
258 F.3d 1294, 1302 (Fed.Cir.2001) ... 1

*Arch Chemicals, Inc. v. United States*,
64 Fed.Cl. 380, 389 (2005) ... 13

*Avanco Int'l, Inc.*,
B-241007.2, Mar. 13, 1991, 91-1 CPD ¶ 276 ... 28, 32

*Bannum, Inc. v. United States*,
404 F.3d 1346, 1353 (Fed.Cir.2005) ... 11, 19

*E.W. Bliss Co. v. United States*,
77 F.3d 445, 449 (Fed.Cir.1996) ... 29

*Great Lakes Dredge & Dock Company v. United States*,
60 Fed.Cl. 350, 358-59 (2004) ... 10

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
238 F.3d 1324, 1333 (Fed.Cir. 2001) ... 19

*Intercon Associates, Inc.*,
B- 298282, et al., 2006 WL 2548825, August 10, 2006 ... 44

*J.A. Jones Mgmt. Servs., Inc.*,
B-254941, Mar. 16, 1994, 94-1 CPD P 244 ... 27

*Johnson Controls World Servs., Inc.*,
B-289942, et al., May 24, 2003, 2002 CPD ¶ 88 ... 32

*Kathpal Techs., Inc.*,
B-283137, Dec. 30, 1999, 2000 CPD ¶ 6 ... 29, 31

*Latecoere Int'l, Inc. v. United States Dep't of Navy*,
19 F.3d 1342, 1356 (11th Cir.1994) ... 19,48

*Logicon, Inc. v. United States*,
22 Cl. Ct. 776, 783 (1991) ... 11

*Magnum*,
B-297687.2, June 20, 2006, 2006 CPD ¶ 99 ... 38

*Marquette Med. Sys., Inc.*,
B-277827.5, B-277827.7, Apr. 29, 1999, 99-1 CPD ¶ 90 ........................................................ 36

*Midland Supply, Inc.*,
B-298720.3, May 14, 2007, 2007 CPD ¶ 204............................................................................ 44

*MIL Corp.*, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29 at 8 ................................................. 29,31

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Auto Insurance Co.*,
463 U.S. 29, 50, 103 S. Ct. 2856, 77 L.Ed.2d 443 (1983)....................................................... 11

*NMS Mgmt., Inc.,*
B-286335, Nov. 24, 2000, 2000 CPD ¶ 197 ............................................................................. 27

*OTI America, Inc. v. U.S.*,
68 Fed. Cl. 646, 656 (2005) ....................................................................................................... 11

*Parks Co.*, B-249473, Nov. 17, 1992, 92-2 CPD ¶ 354 at 6........................................................ 29

*PGBA, LLC v. United States*,
60 Fed.Cl. 196, 207 (Fed. Cl. 2004) ......................................................................................... 24

*Tennier Indus., Inc.,*
B-286706, Mar. 14, 2001, 2002 CPD ¶ 75 ................................................................................ 33

*Unisys Corp. v. Widnall*,
98 F. 3d 1325, 1327 (Fed. Cir. 1996)......................................................................................... 29

*United International Investigative Services v. United States*,
41 Fed.Cl. 312, 323 (1998) ....................................................................................................... 49

*University Research Co., LLC v. United States*,
65 Fed.Cl. 500, 506 (2005) ........................................................................................................ 19

**Statutes**

5 U.S.C. § 706 (2000) .................................................................................................................. 10

28 U.S.C. § 1491(b) ...................................................................................................................... 10

**Regulations**

FAR 15.306(a)(2)..................................................................................................................... 5, 27

FAR 15.308.................................................................................................................................... 28

**CONSOLIDATED-PLAINTIFF STANLEY ASSOCIATES, INC'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND FOR PERMANENT INJUNCTION, AND MEMORANDUM IN SUPPORT**

Consolidated-Plaintiff Stanley Associates, Inc. ("Stanley"), by and through undersigned counsel and pursuant to Rule 52.1 of the Rules of this Court ("RCFC"), hereby moves for judgment on the administrative record ("Motion") on its Complaint filed on October 18, 2007, protesting the General Services Administration's ("GSA") award of Alliant Governmentwide Acquisition Contracts ("GWACs") to 29 Offerors, excluding Stanley, pursuant to Request for Proposal No. TQ2006MCB0001 ("RFP" or "Solicitation"), and for a permanent injunction against performance of the contracts awarded on or about July 31, 2007.

As an actual offeror whose direct economic interest was affected by the failure to receive a GWAC contract and has a substantial chance for award, Stanley is an interested party under 28 U.S.C. § 1491(b)(1) and has standing to bring suit in this bid protest. *See American Fed'n of Gov't Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001).

**STATEMENT OF QUESTIONS**

1. Whether the questions GSA asked the Past Performance references were inconsistent with the evaluation criteria in the RFP because they did not address all of the elements identified in the RFP for the five Past Performance subfactors.

2. Whether the Scores of [redacted] attributed to Stanley's Past Performance Reference [redacted] are irrational and unreasonable because the reference advised that [redacted]

3. Whether the bases for the individual Past Performance evaluator's and the Past Performance Evaluation Team's adjectival scores are unexplained in the record and are irrational and unreasonable.

4. Whether GSA incorrectly scored Stanley for [redacted] by (a) failing to give Stanley an [redacted] for Stanley's [redacted] or alternatively (b) by failing to give it at least [redacted] on the basis that it was acknowledged to be [redacted].

5. Whether GSA's determination to award to the top 28 technically ranked offerors was inconsistent with the RFP and a violation of law and regulation.

6. Whether GSA's best value analysis and cost/technical tradeoff was unreasonable and irrational because: (a) GSA improperly determined to award to the top 28 technically ranked proposals whose price was "fair and reasonable"; (b) it was based upon a flawed technical evaluation of the Basic Contract Plan for [redacted] (c) GSA failed to follow the RFP with respect to the use of past performance and Basic Contract Plan "discriminators" in its cost/technical tradeoff; and (d) GSA failed to provide reasonable justification for the price premium associated with the [redacted] to whom Stanley was compared that had higher prices than Stanley.

## STATEMENT OF THE CASE

GSA's evaluations and award decisions in the procurement at issue must be set aside, as they were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. GSA's Basic Contract Plan evaluation was unreasonable and contrary to law and regulation because GSA: (1) failed to treat Stanley equally to other Offerors with [redacted] (2) failed to follow the criteria in the RFP and the SSP by giving Stanley ratings of [redacted] – Stanley's [redacted] was at least [redacted]

[redacted] warranting a score of [redacted] and (3) failed to follow the criteria in the RFP by failing to evaluate Stanley [redacted]

GSA'S Past Performance evaluation also violated the terms of the RFP and was contrary to law and regulations. The errors included: (1) Past Performance reference questions that were unrelated to or failed to address evaluation criteria identified in the RFP; (2) unreasonable scores attributed to the evaluation of one of Stanley's references; (3) unreasonably considering [redacted] performance to be [redacted] (4) failure of the evaluators to identify how the evaluators arrived at their ratings for Stanley; and (5) unequal treatment of Stanley by one of the evaluators.

GSA's best value determination was unreasonable and contrary to law and regulation because GSA: (1) determined to award to the top 28 technically ranked proposals, whose prices were deemed "fair and reasonable" pursuant to a standard deviation analysis, without consideration of significant differences in actual proposed prices; (2) failed to follow the RFP with respect to the use of proposal "discriminators" in its cost/technical tradeoff; (3) made its award decision based on flawed underlying technical and price evaluations; (4) failed to provide reasonable justification for the price premiums associated with the [redacted] proposals with higher Technical rankings than Stanley; and (5) improperly attempted to support its award decision with an analysis in the SSDM that is contrary to the terms of the RFP and without a reasonable basis in the record. Stanley was competitively prejudiced because, but for GSA's multiple errors, it had a substantial chance of award.

## STATEMENT OF FACTS

1. GSA's Alliant acquisition is a ten-year, $50 billion best-value procurement that contemplated award of multiple indefinite delivery, indefinite quantity ("ID/IQ") GWACs for

long-term, integrated Information Technology ("IT") solutions on a global basis. AR 122, RFP § (hereafter "§") B.1, B.4; AR 141, § F.2; AR 210, § L.2; AR 241, § M.2(a).

2. Under the GWAC, task orders may be issued for a variety of IT solutions and services. The task orders are to be performed throughout the world. AR 128, § C.1.

3. The term of the GWAC is a five-year base period with one five-year option period. AR 141, § F.2. The RFP envisioned competition among contract-holders during the five- or ten-year period for orders on, *inter alia*, fixed-price, cost-reimbursement, and time-and-materials ("T&M") bases. AR 123, § B.6.

4. GSA issued the RFP on September 29, 2006, AR 121, which required submission of proposals addressing: (1) General; (2) Past Performance; (3) Alliant Basic Contract Plan ("BCP"); and (4) Cost/Price. AR 221, § L.12.1.

5. For Past Performance, Offerors were required to complete and submit two Government-provided Past Performance Tables: (1) Table 1 was to identify all applicable GWAC, multiple award ID/IQ or multiple-award Blanket Purchase Agreements ("BPA"), up to 20 contracts, AR 227-29, § L.12.3(c); and (2) Table 2 was to identify all applicable Task Orders issued against single award contracts, up to a maximum of 50 contracts. AR 229-30, § L.12.3(d).

6. With respect to BCP, each Offeror was instructed to explain how it would continuously identify, mitigate, manage, and control risks within its holistic approach for managing the comprehensive scope of the Alliant program. AR 232, § L.12.4. Offerors were also required to identify any gaps or weaknesses in their past performance and specifically address them and convey their ability to insure successful performance of all aspects of the Basic Contract and Orders to include all three component areas of Section C (*i.e.*, Infrastructure, Application Services and IT Management Services). *Id.*

7. Offerors were required to "demonstrate a clear understanding of the management and performance requirements of [the] solicitation by providing a concise description of its management approach for the following three BCP subfactors: (a) Resources; (b) Program Management; and (c) Corporate Commitment." *Id.*

8. For Cost/Price Proposals, § L instructed Offerors to complete two Government-provided Excel spreadsheets AR 237-38, § J, Attachs. 2 and 3, to include their rates for each of the 80 Government-identified labor categories. AR 234-39, § L.12.5; AR 251-94.

9. The RFP provided that GSA "contemplate[d] placing approximately 25 to 30 awards resulting from this solicitation, but reserve[d] the right to place fewer or more awards, depending upon the quality of the proposals received," AR 210, RFP § L.3, and that award would "be made to [the] responsible Offerors whose proposals are determined to provide the 'best value' to the Government . . . utilizing the 'best value' trade-off approach . . . ." AR 241, § M.2(a). Although the "technical factors combined are significantly more important than cost or price . . . **the closer the technical scores of the various proposals are to one another, the more important cost or price considerations become in determining the overall best-value for the Government**." AR 242, § M.3(d) (emphasis added).

10. GSA intended to make awards without discussions "except for **clarifications**, as described in FAR 15.306(a)(2)," although it reserved the right to conduct discussions. AR 241, § M.2(c) (emphasis added).

11. RFP § M detailed two primary evaluation "factors," *i.e.,* Technical and Cost/Price. AR 241, § M.2(b). The Technical Evaluation Factors were Past Performance and BCP, which were approximately equal in importance and which combined were significantly more important than Cost or Price. *Id.*

12. Past Performance and BCP were to be evaluated to determine GSA's "confidence level in the Offeror's ability to manage risk and to deliver high quality service and solutions under the Basic Contract," by assigning adjectival/confidence ratings as follows:

> **Past Performance** for which the Government will look "retrospectively" and consider the Offeror's history of success in delivering high quality service and solutions on contract efforts of similar scope and complexity to those anticipated under the Alliant Contract pursuant to Section C. AR 243-44, § M.5 (a).
>
> **Alliant Basic Contract Plan** for which the Government will look "prospectively" and consider the Offeror's level of commitment to the Alliant program and potential for high quality service and solutions for all work described in Section C. *Id.* at § M.5(b).

13. The Past Performance factor included five subfactors of equal importance: (a) Quality of Service; (b) Schedule; (c) Cost Control (which does not apply to FFP or FFP w/EPA); (d) Business Relations; and (e) Subcontract Management/Socioeconomic Goals. AR 244, § M.5.1(a)-(e). The RFP, § M.5.1.3 "Evaluation Method" at AR 245 stated:

> In the event any Offerors are deemed virtually equivalent, the following discriminators may be used: Offerors with demonstrated success in providing integrated IT solutions including all three component areas in Section C will be evaluated more favorably. Offerors with successful performance on efforts that include OCONUS work, Cost-type contracts, balanced with fixed price contracts, or include significant subcontract management will be rated more highly.

14. BCP consisted of three subfactors in descending order of importance: (a) Resources; (b) Program Management; and (c) Corporate Commitment. AR 245, § M.5.2. The actual weights of the BCP subfactors, which were not revealed to Offerors, were Resources [redacted]; Program Management [redacted]; Corporate Commitment [redacted] AR 868.

15. Although the RFP indicated that GSA would evaluate its confidence level in each of these BCP Subfactors by "assigning adjectival/confidence ratings," it did not disclose the rating scheme to be used. AR 243, § M.5.

16. The RFP stipulated that GSA would conduct several cost/price analyses in an effort to assess the Offerors' Cost/Price proposals. AR 248-49, § M.6.2 (cost analyses); AR 248, § M.6.1 (price analyses).

17. Offers were due by November 17, 2006. AR 219. Sixty-six proposals, including Stanley's, were timely submitted. AR 2403. Of those, four were rejected (AR 975) for failing to meet the RFP requirements, as described at AR 242, §§ M.3(a), M.4.

18. GSA formed two teams under the Source Selection Evaluation Team ("SSET"): the Technical Evaluation Team ("TET") and the Cost/Price Evaluation Team ("CPET"). AR 2404, AR 981. The TET consisted of the Past Performance Evaluation Team ("PPET") and the Basic Contract Plan Evaluation Team ("BCPET"). *Id.*

19. GSA decided to make award without discussions. AR 2412.

20. The Source Selection Decision Memorandum ("SSDM") stated that on May 25, 2007, the SSET and representatives of the TET and CPET teams briefed the Source Selection Authority ("SSA") with the results of their evaluations ("SSET Briefing") and that the teams were [redacted] AR 996. According to the power point slides used for the SSET Briefing, the SSET recommended that award be made to the top [redacted] Offerors. AR 12398. At the time of the SSET Briefing, [redacted] *Id.; see also* AR 12409.

21. Although the SSET was [redacted] in its evaluation results, AR 996, the BCPET met for a [redacted] on June 6, 2007, and without narrative explanation it revised [redacted], including Stanley. AR 940-42, AR 23669. The score for Stanley's [redacted] was revised from [redacted]

[redacted] to two ratings of [redacted] AR 942, AR 23669, which [redacted] Stanley's weighted PP/BCP score.

22. The overall technical rankings (Past Performance and BCP combined) for Stanley and some of the other Offerors were also revised, again apparently based upon the revised [redacted]. Between the May 25, 2007 SSET Briefing and July 31, 2007 when the SSA issued the SSDM, Stanley's overall technical ranking went from [redacted] AR 12409, [redacted] AR 976-77.

23. The SSDM states that in the weeks after the SSET Briefing, [redacted] AR 996. Some of the Exhibit C best value and cost/technical tradeoff documents were signed by the Alliant GWAC PCO and SSET Chair [redacted] on July 24, 2007, *e.g.*, AR 2269, AR 2285, and some were signed on other dates. Stanley's (Exhibit C32) was signed on July 30, 2007. AR 2398.

24. Despite discussion in the SSDM of the SSET Briefing and preparation of the cost/technical tradeoff documents, the record does not document (i) how the significant changes in the technical rankings of certain Offerors occurred, (ii) who directed the changes, or (iii) why they were made. Most curiously, the SSDM fails even to mention the [redacted] and the revisions to Stanley's and other Offerors' rankings reflected therein, AR 996-997.

25. The record is clear that the SSET recommended award to the **top** [redacted] technically rated Offerors, AR 12398, yet the SSDM states that the SSET recommended award to the **top 28** technically rated Offerors and that the SSA accepted that recommendation. AR 2411 (emphasis

added). The SSA also decided to [redacted] AR 2413.

26. On August 19, 2007, **after award,** Ms. Beasley signed an Addendum to Stanley Exhibit C32 that revised the narrative for the cost/technical tradeoff between Stanley and [redacted] AR 2450-2465, by adding comments [redacted] AR 2465. No reference was made to specific technical subfactors.

27. On or about July 31, 2007, Stanley learned that it was not selected for award, AR 2439, and requested a debriefing. AR 2528. It received a written debriefing on August 21, AR 2403-2431, which disclosed for the first time the adjectival ratings used to evaluate Offerors' Technical proposals, *i.e.,* Exceptionally High Confidence ("EH"); Significant Confidence ("S"); Acceptable Confidence ("A"); Marginal Confidence ("M"); or Little to No Confidence ("N"). AR 2417-24.

28. Stanley's Technical Proposal received consensus ratings [redacted] for both Past Performance and BCP, AR 2384, 2385, and was ranked [redacted] for BCP (AR 1006, Column D) [redacted] for Past Performance (*Id.,* Column F), with an Overall Technical Rank Order of [redacted] (*Id.*, Column A).

29. Stanley's Total Evaluated Price [redacted] was ranked [redacted] (*Id.,* Column J) and was [redacted] than the Independent Government Cost Estimate ("IGCE") [redacted] and [redacted] than the Mean Overall Price among all 62 Offerors [redacted] AR 2431. Stanley's Total Evaluated Price was lower than [redacted] of the 29 successful offerors (AR 1006; 1010), four of which [redacted] had prices even higher than the [redacted] IGCE. AR 1010.

30. In Exhibit C32, GSA performed a cost/technical tradeoff analysis of Stanley's proposal to the higher-priced [redacted], were tied), AR 2413-14, which analysis contained numerous evaluation errors, including failure to consider price, that led to its conclusion that Stanley's proposal was not a best value. AR 2384-2398. Stanley was also compared to [redacted]. AR 2255-2383.

31. Stanley timely protested to GAO and when its protest was dismissed, it timely protested to this Court.

## ARGUMENT

### I. STANLEY'S MOTION IS PROPERLY BEFORE THE COURT.

The Court of Federal Claims has jurisdiction over actions brought by disappointed offerors in a Government procurement pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1) (2000), as amended by the Administrative Disputes Resolution Act of 1996, Pub.L. No. 104-320, § 12(a), 110 Stat. 3870, 3874-75, 28 U.S.C. § 1491(b) ("ADRA"). When evaluating an agency procurement decision, the ADRA requires that the Court apply the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706 (2000) ("APA"), which allows the Court to set aside agency action that is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." As the court stated in *Great Lakes Dredge & Dock Company v. United States*, 60 Fed. Cl. 350, 358-59 (2004):

> An agency decision will be set aside as arbitrary and capricious if the agency has not considered all relevant factors and articulated a rational connection between the facts found and the choice made. . . . While the agency's decision is entitled to "a presumption of regularity," that presumption does not shield the agency's decision from a "thorough, probing, in-depth review." . . . After-the-fact rationalizations for agency action should be rejected, and legal arguments for agency actions must find support in the administrative

> record. . . . And although the arbitrary and capricious standard is highly deferential, "it is not a rubber stamp." . . . Only by "carefully reviewing the record and satisfying [itself] that the agency has made a reasoned decision" can this court "ensure that agency decisions are founded on a reasoned evaluation of the relevant factors."

Citations omitted. "[A]n agency's action must be upheld, if at all, on the basis articulated by the agency itself" and not *post hoc* rationalizations, *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Auto Insurance Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), and a protester need only prove its case by a preponderance of the evidence. *See, e.g., Logicon, Inc. v. United States*, 22 Cl. Ct. 776, 783 (1991).

For a disappointed bidder to be entitled to relief, it must also show that it was prejudiced by the agency's actions. It meets that burden by showing that but for the alleged agency error, "a substantial chance [exists that] it would have received the contract award . . . ." *Bannum, Inc. v. United States,* 404 F.3d 1346, 1353 (Fed.Cir.2005). GSA's evaluation and award decisions lacked rational bases and also violated applicable law and regulations. But for these errors, Stanley – the Offeror next in line for award – had a substantial chance for award.

## II. GSA'S BCP EVALUATION LACKS A REASONABLE BASIS, IS CONTRARY TO THE TERMS OF THE RFP, AND VIOLATES APPLICABLE LAW AND REGULATIONS

### A. The SSA Failed to Treat Stanley Equally with Respect to the [redacted] Component of the Resources Subfactor

Offerors must be treated equally and the evaluation factors listed in the solicitation must be consistently applied. *OTI America, Inc. v. U.S.*, 68 Fed. Cl. 646, 656 (2005). GSA violated these requirements when evaluating Stanley's [redacted].

Stanley submitted a [redacted] AR 2050-2063, as did several other

Offerors.[1] For example: [redacted] submitted a [redacted], AR 14237; [redacted] submitted a [redacted], AR 7390; and [redacted] submitted a [redacted] AR 544. These Offerors, however, all received scores [redacted] while Stanley received [redacted] scores of [redacted]

[redacted] rating was based on the following BCPET comments:

[redacted]

[redacted] rating was based on the following BCPET comments:

- [redacted] AR-7532;
- [redacted] AR 7544;
- [redacted] AR 7549.

[redacted] was based on the following BCPET comments:

---

[1] Stanley also submitted with its proposal a commitment letter from [redacted] AR 1966-68.

[2] The SSP provided for a score of [redacted] AR 81.

- [redacted] AR 756 (emphasis in original);

[redacted] AR 759;

- [redacted] AR 765.

One evaluator made no comments on [redacted], but gave [redacted] AR 762.

**Stanley's** evaluation, however, contained the following comments:

[redacted] AR 2214;

- [redacted] AR 2223;

- [redacted]

One evaluator made no comments at all about Stanley's BCP except with respect to [redacted] and the [redacted] themselves. AR 2220-22. The remainder of the worksheet contains only the form comments from the sample form attached to the SSP. *See* AR 91-93.[5]

---

[3] This evaluator's initial rating [redacted] was revised to [redacted] AR 942; 23669

[4] While not mentioned by the evaluator, [redacted] email also states: [redacted] AR 799.

Without stating reasons, it is impossible to tell from the administrative record what criteria this evaluator used as the basis for any of Stanley's ratings, and he does not provide a coherent or reasonable explanation as to his exercise of discretion. Proposal evaluations are required to be factually supported, rational, and fully explained. *See, e.g., Arch Chemicals, Inc. v. United States,* 64 Fed.Cl. 380, 389 (2005). The RFP is in accord, providing "[t]eam members are

Stanley's unequal treatment is especially apparent in one of the four evaluators, [redacted], comments and ratings. Even though [redacted] cited the need for clarification regarding the [redacted], other Offerors nonetheless received scores [redacted] without needing any apparent "clarification". He gave [redacted] stating:

[redacted]

AR 7544 (emphasis added). He also gave [redacted]

[redacted]

AR 756 (italics in original; bold added). In contrast, [redacted] gave Stanley [redacted] stating:

[redacted]

AR 2214 (emphasis added).

While it appears from the BCP Consensus Meeting revised rating score sheets that Stanley's [redacted] rating was [redacted] AR 23669 (emphasis added), there is no indication that GSA sought such [redacted] or from Stanley. When the revised rating table was ultimately submitted to [redacted] as part of the SSDM, [redacted] was changed to [redacted] and Stanley's scores changed [redacted] without an explanation for either change or any indication that further [redacted] was ever sought or obtained. AR 942.

---

responsible for documenting any concerns and questions and factually supporting its [sic] determinations and conclusions using the worksheets provided." AR 41.

GSA patently treated Stanley differently from other Offerors that submitted [redacted]; none of them had an [redacted] thus [redacted] comment [redacted], *see* AR 799, would apply to each of them as well as Stanley. Even though Stanley was in exactly the same position as [redacted], it received substantially [redacted] apparently on the basis of [redacted] email. The acceptance of other Offerors' [redacted] implies acceptance of [redacted], but while the GSA apparently accepted [redacted], it rejected Stanley's. Therefore, [redacted], as well as the other evaluators, failed to apply the evaluation criteria to Stanley in the same way as the three referenced Offerors. Nothing in the record explains or justifies this disparate treatment, and it was unreasonable as a matter of law.

**B. <u>The SSA Failed to Follow the Criteria in the RFP and in Annex D of the Source Selection Plan in Evaluating Stanley's</u> [redacted]**

Assuming, *arguendo,* that Stanley did not have an [redacted] Stanley nonetheless established that its [redacted] was [redacted] thereby meeting the standard for [redacted] AR 81.

Annex D to the Source Selection Plan ("SSP") provided that a rating [redacted] would be given for [redacted] AR 81 (emphasis added). [redacted] email stated [redacted] AR 799. Thus, Stanley's [redacted] was, at the very least, [redacted], which the SSA [redacted] in its trade-off analyses between and among Stanley and other Offerors (stating that Stanley was [redacted] AR 2394-95.

Because the record is devoid of any reason other than [redacted] for rating Stanley [redacted] its score is contrary to the terms of the RFP and thus unreasonable.

**C. Stanley Was Not Evaluated [redacted] or [redacted] as Required by the RFP, or Even in a Neutral Manner but, Instead, was Inexplicably and Unreasonably Treated [redacted]**

The RFP states:

> An Offeror that can demonstrate that its purchasing policies and practices are efficient and provide adequate protection of the Government's interests by providing evidence from the cognizant Federal agency ACO of successful progress toward an approved purchasing system will be rated **more favorably**. An Offeror that provides documentation from the cognizant Federal agency ACO as evidence of an approved purchasing system pursuant to FAR 44.305 will be evaluated **even more favorably**.

AR 246 (emphasis added). Contrary to the RFP, the SSP defines a score [redacted] as [redacted] and a score [redacted] as [redacted] AR 81.

The record shows that the BCPET and SSA applied the incorrect SSP definitions, rather than the RFP mandated definitions. Stanley had an [redacted], or at least was [redacted], and should have been evaluated [redacted] or [redacted] (AR 246), like similarly situated Offerors. However, it was evaluated [redacted] when it received [redacted]

This section of the RFP is the apparent basis for the tradeoff analysis between Offerors and the SSA used this standard to evaluate certain Offerors more favorably. *See, e.g.*, AR 2394-95. In the tradeoff analyses, and consistent with the RFP, Stanley was acknowledged as having [redacted] AR 2394-5, which should have resulted in its proposal being evaluated [redacted] Instead, and contrary to the express language of the RFP, Stanley was unjustifiably given the clearly [redacted] ratings of [redacted]

**D. Stanley was Prejudiced by the SSA's Failure to Correctly Apply the Evaluation Factors and, but for GSA's Errors, It Would Have Had More Than a Substantial Chance of Receiving Award.**

Stanley, which had scores that were already extremely close to those of successful Offerors, would have had more than a "substantial chance" of receiving an award had its BCP score been properly calculated.

Stanley's technical rank was [redacted] and its Weighted BCP-PP Average Score was [redacted] AR 1006. [redacted] was part of the Resources factor, which carried [redacted] the weight for the BCP score. AR 868. Had Stanley's score for the [redacted] subfactor been [redacted], as the SSP and the principle of equal treatment required, Stanley's Weighted BCP-PP Average Score would have been [redacted] and better than [redacted] ranked [redacted] who received an award. AR 1006. Even if the [redacted] score were [redacted] its Weighted BCP-PP Average Score would have been [redacted], *i.e.,* better than [redacted] ranked [redacted] whose [redacted] price was higher than Stanley's. AR 1006.

The following Table, which is based on data from Attachment 3 at AR 876 with adjusted scores of [redacted] and [redacted] substituted for Stanley's [redacted] graphically illustrates the impact of this single scoring error:

**Adjusted [redacted] Scores for Stanley's [redacted]**

| | | | | | |
|---|---|---|---|---|---|
| | [redacted] | | | [redacted] | |
| Rating | [redacted] | [redacted] | | [redacted] | [redacted] |
| Sub-factor/Element | | | | | |
| **Resources (Adjusted):** | [redacted] | [redacted] | | [redacted] | [redacted] |
| Recruiting/Retention & Secret/Top Secret Clearances | [redacted] | [redacted] | | [redacted] | [redacted] |
| Resumes of Key Personnel | [redacted] | [redacted] | | [redacted] | [redacted] |
| Business Systems | [redacted] | [redacted] | | [redacted] | [redacted] |
| Purchasing System (Hypothetical) | [redacted] | [redacted] | | [redacted] | [redacted] |
| Subcontracting Mgt & Supplement Core Capabilities | [redacted] | [redacted] | | [redacted] | [redacted] |
| OCONUS Capabilities & Continuity of Operations | [redacted] | [redacted] | | [redacted] | [redacted] |
| **Program Management:** | [redacted] | [redacted] | | [redacted] | [redacted] |
| Management Information System | [redacted] | [redacted] | | [redacted] | [redacted] |
| Earned Value Management System | [redacted] | [redacted] | | [redacted] | [redacted] |
| Quality Controls, Surveillance Methodologies | [redacted] | [redacted]0 | | [redacted] | [redacted] |
| **Corporate Commitment:** | [redacted] | [redacted] | | [redacted] | [redacted] |
| Corporate Structure Org Chart & Lines of Authority | [redacted] | [redacted] | | [redacted] | [redacted] |
| Proposal Management | [redacted] | [redacted] | | [redacted] | [redacted] |
| Risk Mitigation | [redacted] | [redacted] | | [redacted] | [redacted] |
| Business Process Improvements | [redacted] | [redacted] | | [redacted] | [redacted] |
| Technical Innovation | [redacted] | [redacted] | | [redacted] | [redacted] |
| Business Development | [redacted] | [redacted] | | [redacted] | [redacted] |
| | | | | | |
| Overall Rating (Adjusted) | [redacted] | [redacted] | | [redacted] | [redacted] |

Averaging Stanley's Adjusted BCP scores of [redacted] with its [redacted] points for past performance (AR 1006, Column E) would raise Stanley's Weighted BCP-PP Average Score to [redacted]; averaging an Adjusted BCP score of [redacted] would result in a Weighted BCP-PP Average Score of [redacted] If the SSA had followed the RFP and treated Stanley equally, Stanley's score would have been higher than successful Offeror [redacted] or at least [redacted]

[redacted] Therefore, Stanley clearly had at least a "substantial chance" of receiving a contract award, *Bannum, Inc.,* 404 F.3d at 1353, and was prejudiced by GSA's errors.

## III. GSA'S PAST PERFORMANCE EVALUATIONS LACK A REASONABLE BASIS, ARE CONTRARY TO THE TERMS OF THE RFP, AND VIOLATE APPLICABLE LAW AND REGULATIONS

An agency's evaluation of proposals must be rational and fully explained. *See, e.g., Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed.Cir. 2001) ("[T]he test for reviewing courts is to determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion'" quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994). While an agency is entitled to broad discretion when conducting past performance evaluations, that deference is not unlimited, and the court will review the evaluation to determine if it was reasonable, consistent with the stated evaluation criteria, and in compliance with applicable statutory and regulatory requirements. *See, e.g., University Research Co., LLC v. United States*, 65 Fed.Cl. 500, 506 (2005). GSA's evaluation of Stanley's past performance violated the applicable standards.

### A. The Questions GSA Asked the Past Performance References Failed to Address all of the Evaluation Criteria Against Which the RFP Advised that Past Performance Would be Evaluated

The RFP identified five Past Performance evaluation subfactors of equal weight (AR 244), and Section M.5.1 of the RFP identified specific Past Performance information that was to be obtained from the references. *Id.* However, the questions GSA actually asked the references were unrelated to or failed to address evaluation criteria identified in the RFP. For example, with regard to Past Performance/Schedule factor, the RFP stated:

> **Schedule** - The Government will evaluate the Offeror's ability to meet **all schedule goals** related to completion of the contract, task orders, milestones, delivery schedules and

[6] Stanley's price was only $605,512 higher than Alion's. AR 1006.

> administrative requirements (timely submission of accurate Small Business Subcontracting reports; invoices; contract closeout documentation, etc). AR 243, § M.5.1 (emphasis added.)

The Table 1 references were asked [redacted], AR 87, while the Table 2 references were not even asked [redacted]. AR 89. Since the RFP provided that GSA would evaluate the Offeror's ability to met "**all schedule goals** related to completion of the contract, task orders, milestones, delivery schedules and administrative requirements (timely submission of accurate Small Business Subcontracting reports; invoices; contract closeout documentation, etc."), AR 244 (emphasis added), questions to references limited to [redacted] were inadequate to collect and secure the required information and could not have formed the basis for an evaluation of proposals that was in accordance with the RFP.

Many of the other Past Performance questions, AR 87-90, were similarly inadequate. *See, e.g.,* AR 244, which advised Offerors that for Cost Control GSA would evaluate an Offeror's ability to (i) deliver a service at the agreed price/cost, (ii) effectively forecast costs, (iii) effectively manage costs, (iv) effectively control contract costs, (v) report variances, and (vi) analyze variances. The Table 1 references were asked [redacted] AR 87, and the Table 2 references were asked [redacted] and [redacted] AR 90. Assuming that [redacted] is substantially similar to [redacted], the questions asked to both the Table 1 and 2 references

failed to address the ability of the Offeror to (i) [redacted], (ii) [redacted] and (iii) [redacted] Moreover, the ability to [redacted] was not a disclosed evaluation criterion.

The Past Performance evaluation was inconsistent with the RFP and thus unreasonable.

## B. Stanley's Past Performance Evaluations Were Contrary to the RFP and Unreasonable

### 1. The scores attributed to Stanley's Reference #1 are unreasonable

[redacted] was the Stanley Table 1 reference interviewed by GSA.[7] His response to every question was [redacted] AR 2159-60, and each of the evaluators referred to that rating in giving Stanley [redacted] for past performance of multiple award (Table 1) contracts. *See, e.g.,* AR 2184, 2187, 2189-90, 2192, 2194-94, 2000-04. The consensus evaluation even identified [redacted] under both Quality of Service, AR 2207, and Schedule, AR 2208.[8] What the evaluators apparently failed to consider since it is not mentioned anywhere in the Past Performance scoring (including the consensus evaluation), is that [redacted] expressly advised [redacted] AR 2160 (emphasis added). He also said he saw [redacted]th Stanley and [redacted] *Id.*

It was unreasonable and without basis in the RFP for a rating of [redacted] to rate only [redacted] and to be considered [redacted] Quality of Service and Schedule. Rather, since Stanley received [redacted] gives, his [redacted] was the equivalent of

---

[redacted] to conduct these interviews.

[8] Because [redacted] in response to every question [redacted] and because Stanley contends that his ratings should have been considered [redacted] Stanley will not include [redacted] in its analysis of its PP evaluation.

[redacted] from other references. These errors would be prejudicial in any evaluation and they were especially prejudicial to Stanley, which was [redacted].

**2. <u>The Past Performance scores are unexplained and unreasonable</u>**

The evaluators' and consensus score sheets for Stanley's Past Performance fail to disclose how the scoring conclusions were reached. Although the record lists the references' responses to the Past Performance questions, each of the evaluations and the consensus score sheets treated these statements differently in arriving at scores with no explanation of the method by which the adjectival ratings were assigned.

[redacted]

[redacted] gave Stanley an overall rating of [redacted] His score sheets (AR 2182-95) rate each answer to each question asked of each reference but do not explain how the number of [redacted] (and sometimes [redacted]) for each answer resulted in his overall ratings. Thus:

- **Quality of Service** – [redacted];
- **Schedule** - [redacted] es;
- **Cost Control** - [redacted] (*see* AR 2175) even though the RFP expressly states that Cost Control "does not apply to FFP or FFP w/EPA" (AR 244). [redacted] Stanley would have received [redacted] (AR 2188-89);
- **Business Relations** – [redacted] (AR 2190);
- **Subcontractor Management-Socioeconomic Goals** – [redacted] (AR 2192).

---

[9] The number of [redacted] ratings do not include [redacted] that he attributed to [redacted] for the reasons set forth in § B.1. above.

Not counting [redacted] Stanley had more [redacted] in Quality of Service, Cost Control, Business Relations, and Subcontractor Management-Socioeconomic Goals, with a "tie" between [redacted] for Schedule. Nothing in the record, including the "consensus narrative" contained at C32, AR 2384-2385, explains why [redacted] gave [redacted] for these subfactors. In the absence of any such explanation, his ratings lack a reasonable basis.

[redacted]

[redacted] performed his Past Performance evaluation (AR 2198 - 2204) completely differently from [redacted] did not ascribe any adjectival ratings to the references' responses but simply listed all of the strengths and weaknesses and gave ratings [redacted] for each PP factor. [10] However, like [redacted], he failed completely to explain the bases for [redacted] ratings. Thus he noted:

[redacted]

- [redacted]

[redacted]

---

[10] Stanley got [redacted] in Quality of Service and [redacted] in Business Relations and [redacted]

- **Subcontractor Management/Socioeconomic Goals** – [redacted] Again, the lack of any contemporaneous information revealing the bases for [redacted] scores renders them unsupported and thus unreasonable.

[redacted]

Why [redacted] gave Stanley [redacted] (AR 2194-95) is even more obscure than the other evaluators' scoring: he simply provided a [redacted]. Indeed, it is often difficult to determine [redacted] scores are unsupported in the record.

**d. <u>Consensus Evaluation</u>**

Like [redacted] evaluation, the consensus score sheets list [redacted] without explaining why they resulted in scores [redacted] Without an adequate explanation, the Court cannot conclude that the consensus evaluation was reasonable.

**3. <u>Stanley was treated unequally in GSA's Past Performance evaluation</u>**

All offerors must be treated equally. *See PGBA, LLC v. United States,* 60 Fed.Cl. 196, 207 (Fed.Cl.2004), *aff'd* 389 F.3d 1219 (Fed.Cir.2004) ("[U]neven treatment goes against the standard of equality and fair-play that is a necessary underpinning of the federal government's procurement process and amounts to an abuse of the agency's discretion."). GSA violated this principle because Stanley's past performance was not evaluated in the same way as some of the other offerors.

[redacted] for each subfactor and ascribing an [redacted] to

each response [11] (*e.g.,* AR 2182-93); (ii) [redacted] (*e.g.*, AR 5433-34); and (iii) [redacted] (*e.g.*, AR 16246-47). Why and when he [redacted] resulted in unequal treatment. For example, in his review of [redacted] Past Performance/Schedule he used [redacted]

[redacted]

AR 16246-47 (emphasis added). Two of the [redacted] were not that [redacted] Moreover, [redacted] inexplicably and inconsistently considered it [redacted] For this, [redacted] Stanley, on the other, got a rating of [redacted] from him based on [redacted]

[redacted]

---

[11] This is the way he evaluated Stanley's past performance.
[12] [redacted] was an awardee.

[redacted]

AR 2187-88 (emphases added). Whether because of his use of [redacted] or otherwise unreasonably failing to justify the scores given to Stanley versus other offerors, [redacted] failed to treat Stanley equally with other offerors.

C. **The Past Performance Evaluators Committed Numerous Other Errors**

The evaluators made a number of other errors in connection with their scoring of Stanley's Past Performance. Two of the more egregious are:

- GSA asked references, under the Subcontract Management/Socioeconomic Goals factor, [redacted]. AR 90. Stanley's Reference [redacted] AR 2168. The Past Performance evaluators twisted this comment into a [redacted]. The TEB determined that [redacted]

[redacted] AR 2211. [redacted] nor is there anything in the record to support such a statement. In fact, nothing in Stanley's proposal suggests that it will [redacted] GSA should have sought clarification from Stanley, as permitted by FAR 15.306(a)(2), rather than ascribing a [redacted] to Stanley based on pure speculation. *See NMS Mgmt., Inc.,* B-286335, Nov. 24, 2000, 2000 CPD ¶ 197.

- [redacted] AR 2177. He also considered it a problem that Stanley's [redacted]. AR 2178. Not only did GSA fail to identify [redacted] but GSA did not give Stanley an opportunity to respond to and/or clarify this adverse Past Performance information, FAR 15.306(a)(2). The Past Performance consensus also improperly ascribed this same [redacted] three separate Past Performance subfactors (*i.e.,* [redacted] based on this [redacted]. AR 2207, 2208, 2210. This is improper. *See, e.g., J.A. Jones Mgmt. Servs., Inc.*, B-254941, Mar. 16, 1994, 94-1 CPD ¶ 244.

**D. <u>Stanley Was Prejudiced by the Numerous Past Performance Evaluation Mistakes</u>**

In a procurement as [redacted] and in which GSA ultimately made awards to the 28 technically top-ranked offerors and the [redacted] overall – award. Stanley's Past Performance score was either [redacted]

[redacted] to which it was directly compared in the SSA's best value analysis. Even [redacted] in its Past Performance ranking would have resulted in award of a contract to Stanley: it got [redacted] for its Past Performance consensus score, while the scores of Offerors to which it was directly compared were: [redacted] AR 1006. Moreover, Stanley's Past Performance score was extremely close to higher-priced awardees [redacted] *Id.* In a procurement where the slightest technical score differentials separate the awardees from the unsuccessful Offerors, it is plain that if Stanley's proposal were properly evaluated for Past Performance and received even a slightly higher score (and consequently a higher BCP-PP weighted average score), it would have had a substantial chance for award. Stanley therefore was competitively prejudiced by GSA's Past Performance evaluation errors.

## IV. THE BEST VALUE DETERMINATION WAS FLAWED, UNREASONABLE, AND IRRATIONAL

Agencies must document their selection decisions to show the relative differences between proposals, the proposals' weaknesses and risks, and the bases and reasons for the selection decision. A best value determination is objectionable where the record does not contain a reasonable basis in the record therefor. *Avanco Int'l, Inc.*, B-241007.2, Mar. 13, 1991, 91-1 CPD ¶ 276. The cost/technical tradeoff process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. However, the perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file. FAR 15.308. Where proposals reasonably have been considered to be substantially technically equal, cost may properly become the determining factor for award notwithstanding that the evaluation criteria assigned

cost less importance than technical factors. *The Parks Co.*, B-249473, Nov. 17, 1992, 92-2 CPD ¶ 354 at 6.

Although procurement officials have substantial discretion to determine which proposal represents the best value for the Government (*see, e.g., E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir.1996) (citing *Lockheed Missiles & Space Co., Inc. v. Bentsen,* 4 F.3d 955, 958 (Fed.Cir.1993); *Unisys Corp. v. Widnall*, 98 F. 3d 1325, 1327 (Fed. Cir. 1996), this Court will review an award decision to determine if an agency's best value choice was grounded in reason.

In the instant procurement, GSA's best value cost/technical tradeoffs violated the above-stated fundamental tenets and cast a shadow over the entire evaluation because GSA: (1) determined to award to the top 28 technically ranked proposals, whose prices were deemed "fair and reasonable" pursuant to a standard deviation analysis, without consideration of significant differences in actual proposed prices; (2) failed to follow the RFP with respect to the use of proposal "discriminators" in its cost/technical tradeoff; (3) made its award decision based on flawed underlying technical and price evaluations; (4) failed to provide reasonable justification for the price premiums associated with the [redacted] proposals with higher Technical rankings than Stanley; and (5) supported its award decision with a SSDM that contains analysis contrary to the terms of the RFP and without a reasonable basis in the record.

**A. GSA's Determination to Award to the Top 28 Technically Ranked Proposals <u>Without Regard to Price Was Unreasonable</u>**

Because agencies must consider cost or price in evaluating proposals, 41 U.S.C. 253a(c)(1)(B), an agency cannot "eliminate technically acceptable offers from competition without meaningful consideration of price," *Kathpal Techs., Inc.*, B-283137, Dec. 30, 1999, 2000 CPD ¶ 6 at 10, nor may a tradeoff analysis "effectively ma[k]e price meaningless as a comparative evaluation factor." *The MIL Corp.*, Dec. 30, 2004, 2005 CPD ¶ 29 at 8. Thus, the

Government may not limit the "consideration of price in their source selection decision . . . to merely noting that all offerors' proposed pricing was considered fair and reasonable" or "minimize the potential impact of price so as to make it a nominal evaluation factor." *Kathpal,* 2000 CPD ¶ 6 at 17.

Price was one of the three evaluation factors identified in the RFP. The RFP provided "Best Value Award will be made to responsible Offerors whose proposals are determined to provide the 'best value' to the Government. FAR Part 15 competitive negotiation selection procedures utilizing the 'best value' trade-off approach will be utilized . . . ." AR 241. The RFP § M.6 COST PRICE EVALUATION provided that although the two technical factors (Past Performance and Basic Contract Plan) were more important than price, the closer the technical scores, the more important price became:

> **Best Value Tradeoff**—Consistent with FAR 15.101-1. the Government will conduct a "best value" tradeoff, in which the differences in non-price factors and evaluated price will be compared between the Offerors in order to determine which Offeror represents The technical factors combined are significantly more important than cost or price; however, **the closer the technical scores of the various proposals are to one another, the more important cost or price considerations become in determining the overall best-value for the Government . . . .** AR 242 (emphasis added).

After establishing the technical rank order for all evaluated Offerors, [redacted] recommended that the SSA make award to the top 28[13] technically ranked proposals without mention of cost or price except as to its "reasonableness." AR 995-97. The SSA abandoned GSA's stated best value award criteria by accepting the recommendation to award to the top 28 technical proposals whose price was deemed "fair and reasonable." In so doing, GSA minimized price to such an extent as to render it meaningless: award was to be made to the proposals

13 [redacted] first recommended award to the [redacted], AR 12377-12414, but this recommendation was apparently modified to [redacted] after the SSET briefing to the SSA on May 25, 2007.

representing the "best value" to the Government, not simply to those with the best technical ratings if their prices were deemed "fair and reasonable". Awards based only upon technical rankings and "price reasonableness" have been rejected repeatedly as improper as effectively rendering price meaningless. *See*, *e.g.*, *Kathpal,* 2000 CPD ¶ 6 at 7; *The MIL Corp.*, 2005 CPD ¶ 29 at 8.

The most egregious example of GSA's faulty best value analysis is demonstrated in the SSA's discussion [redacted] the [redacted] AR 998. [redacted] *Id.* (emphasis added).[14] The [redacted] from the mean (all were [redacted] and thus arguably were not fair and reasonable, but the SSA never analyzed or justified the actual price premiums associated with these proposals by any meaningful comparison with technically equal lower-priced proposals, including Stanley's. The Exhibits C discussed an Offeror's price in comparison to the IGCE and the Mean Overall Price, but completely failed to make paired comparisons of actual proposed prices. Thus, instead of price becoming more important the closer the technical proposals became, RFP § M.2 (b), AR 242, there was no actual comparison of the proposals' prices. GSA's decision to make award based upon "fair and reasonable" pricing using [redacted] formula, rather than comparing actual proposed prices in its best value analysis, was improper. *Kathpal,* 2000 CPD ¶ 6 at 7; *The MIL Corp.*, 2005 CPD ¶ 29

---

[14] Indeed, all of the 29 awardees' prices were deemed to [redacted] based on this formula, AR 996, regardless of the fact that [redacted] outside [redacted] of the mean overall price and that the price of the highest priced awardee [redacted] higher than Stanley's proposed price. AR 1006.

at 8.[15] As discussed further below, GSA's formulaic treatment of price was not supported by any analysis adequately identifying or justifying the purported technical advantages associated with the higher priced proposals, as required by the RFP and applicable regulations.

## B. GSA's Cost/Technical Tradeoff Analysis was Flawed and Unreasonable

### 1. GSA's Analysis Failed to Conform with the RFP and Was Based Upon a Flawed Technical Evaluation

In a best value procurement, the SSA is required by regulation to select the proposal that represents the best value to the Government, while ensuring that the proposals are evaluated based solely on the factors and subfactors contained in the solicitation**.** 48 C.F.R. § 15.303(b)(4)- (b)(6) (1998). The source selection decision must be documented, and the documentation must include the rationale for any business judgment or tradeoffs the SSA made or relied upon, including any purported benefits associated with additional costs. 48 C.F.R. § 15.308 (1998); *Avanco Int'l, Inc.*, B-241007.2, Mar. 13, 1991, 91-1 CPD ¶ 276 at 6. The propriety of the price/technical tradeoff decision turns on whether the selection official's judgment concerning the significance of the difference in the technical ratings was reasonable and adequately justified. *Johnson Controls World Servs., Inc.*, B-289942, et al., May 24, 2003, 2002 CPD ¶ 88 at 10. The best value determination failed to conform to the RFP, was unsupported in the record, and was based upon flawed technical evaluations of Past Performance and BCP.

The SSET's briefing to the SSA identified four "key discriminators":

[redacted]

---

[15] GSA even ignored its own "price reasonableness" analysis by awarding to Offerors whose price proposals were outside [redacted] from the mean total price, whether high or low. AR 1006 Column H [redacted] Of these, Stanley's proposal was compared to [redacted]. AR 2327-2336; AR 2384-2398.

[redacted] AR 12390.

The RFP identified only that "successful performance on efforts that include OCONUS work, Cost-type contracts, balanced with fixed-price contracts, or significant subcontract management" would be used as proposal "discriminators" if Offerors were determined to be "virtually equivalent." AR 245, § M.5.1.3. However, as discussed in detail below, it is apparent that in practice, BCP elements that were to be evaluated [redacted]"[16], *e.g.*, [redacted] were also treated as discriminators and were more heavily weighted by the SSA than acknowledged in the RFP.

GSA made paired comparisons between Stanley and the higher-priced Offerors [redacted] a lower-priced Offeror. In selecting these paired comparisons, GSA stated: [redacted] AR 2391.[17] Stanley's Technical Rank Order was [redacted], its price rank was [redacted], and its price was [redacted] AR 1006.

Exhibit C32 (Stanley) reveals that GSA (1) failed to apply proposal "discriminators" as set forth in the RFP, giving too much weight to the BCP discriminator of [redacted] and giving too little weight to the past performance discriminators of the three Section C

---

[16] GSA never explained what [redacted] consideration meant, and a fundamental problem with the best value determination is that such a vague standard cannot provide a means to reasonably distinguish between proposals. *See Tennier Indus., Inc.*, B-286706, Mar. 14, 2001, 2002 CPD ¶ 75.

[17] There was no Solicitation requirement that a lower-priced Offeror "displace" a higher technically ranked proposal in order to receive an award.

component areas, OCONUS, fixed-price and cost-reimbursement efforts; and (2) based its conclusions on a flawed technical evaluation.

Although GSA purported to give consideration to Stanley's [redacted] GSA stated, in pertinent part:

> [redacted]

Having acknowledged Stanley's [redacted] for the past performance discriminators, the SSET immediately [redacted]

> [redacted]
>
> * * *
>
> [redacted]

AR 2394-95 (emphasis added). Thus, the past performance discriminators that GSA stated [redacted]. Stanley has addressed GSA's improper conclusion about [redacted] in Sections II.A and B, *supra*.) As GSA summed up in the conclusion to its analysis in Exhibit C32, [redacted]

[redacted] AR 2398. GSA then simply made the conclusory statement that [redacted] *Id.*

Assuming, *arguendo*, that GSA was correct about Stanley [redacted] GSA's analysis is insufficiently reasoned or documented to satisfy the requirements of a valid best value determination, and to the extent it [redacted] it is inconsistent with the RFP. [redacted] alone could outweigh the importance of the [redacted] combined, and nowhere does the RFP discuss the actual price value of [redacted]

Further, § M.5.2 "Alliant Basic Contract Plan", specifically stated that BCP was to be evaluated by "determining whether the plan sufficiently addresses any gaps or weaknesses **not addressed by past performance**." AR 245-46. In fact, Section M provided that Offerors' [redacted] were to be evaluated as **only one of six components** of the Resources subfactor of the BCP factor, with the Resources subfactor being [redacted]. AR 868 (Weighting: Resources). Given this evaluation scheme, it is unreasonable and illogical to place [redacted] in a best value determination. Further, by over-emphasizing the importance of [redacted] in its best value analysis, GSA compounded its initial BCP evaluation error that found that Stanley [redacted]

By contrast, in the RFP Q & A's, GSA repeatedly assured Offerors that [redacted] These statements actively misled Offerors about the ability to be awarded an Alliant contract without [redacted][18] An agency may not announce one basis for evaluation and award in the RFP and then evaluate proposals and make award on a different basis. *Marquette Med. Sys., Inc.*, B-277827.5, B-277827.7, Apr. 29, 1999, 99-1 CPD ¶ 90 at 5-6.

Finally, the best value determination largely contained no analysis, as required by the RFP, of how having [redacted] justified the price premiums GSA proposed to pay.[19] Moreover, there is no evidence that GSA considered Stanley [redacted] based at least, on its [redacted], as required by the RFP, in determining best value. AR 245-246; *see* discussion at Section II.C., *supra*.[20] Its cost/technical tradeoff analysis was therefore unreasonable.

**2. Stanley/[redacted] Tradeoff**

Although the SSA selected [redacted] for award, the May 25, 2007 SSET Briefing by the Consensus Team did not recommend award to [redacted] AR 12398. [redacted]

---

[18] In fact, of the [redacted] higher-priced awardees compared to Stanley, only [redacted] AR 2257; 2264.

[19] GSA revealed only limited rationale for favoring an [redacted] in Exhibit C31 [redacted], stating that it was [redacted] AR 4980. Even this perceived significance was not revealed to Offerors in the RFP.

[20] GSA refused to define what it meant by "more favorable consideration" of an [redacted] *See* Solicitation Q & A's, AR 321 (Question 127 requesting explanation of "evaluated more favorably" for purchasing system), *id.,* (Question 129); AR 323 (Question 137); AR 374-375 (Questions 348-350); AR 375 (Questions 351-352; 354).

*Id.* The reasons why [redacted] are not explained anywhere in the record. The SSET Briefing identified [redacted] with Stanley having the higher technical ranking. AR 12409. However, it is apparent that for unknown reasons the evaluators revised Offerors' adjectival BCP scores on June 6, 2007, almost two weeks after the SSET Briefing. There is no explanation in the record for these changes.[21] AR 942. To the extent the SSDM states that the SSET recommended award to [redacted], that statement ignores the express language of the SSET Briefing and the fact that [redacted] was ranked below the [redacted] and Stanley.

What the record does contain is the SSET's Exhibit C32, which made a paired comparison of Stanley with [redacted] The comparison rests primarily upon [redacted] and mentions, but ultimately ignores, Stanley's superior experience for the [redacted] Instead, it relied upon [redacted] which the RFP did not identify as a proposal discriminator. AR 2395. As GSA stated in its best value analysis of [redacted]

> [redacted]

*Id.* Not only was [redacted] not a disclosed discriminator, it was also only one component of [redacted] and it is unclear from the record if the evaluators, the

[21] The SSA's description of the source selection process, AR 996, makes no mention of any [redacted] scores or overall rankings after the May 25, 2007 briefing, which presents an unexplained and significant hole in the record.

SSET Chair, and/or the SSA considered [redacted] evidence of "completeness, understanding of the requirement and potential for optimization of the Alliant program" as required by the RFP, because only one individual evaluator [redacted] AR 4014.[22] [redacted] BCP consensus evaluation. AR 4028-29.

Further, the SSDM unreasonably overlooked Stanley's [redacted] The Exhibit C32 "consensus narrative" did identify a long list of strengths associated with Stanley's proposal for [redacted] but, inexplicably, none of this information was considered in the cost/technical tradeoff analysis:

[redacted]

AR 2388. Because the SSDM did not reasonably or meaningfully address Stanley's strengths for [redacted] versus [redacted] in the cost/technical tradeoff, it is impossible from the record to conclude that [redacted] was a reasonable discriminator to determine best value as between Stanley and [redacted] *See, e.g., Magnum*, B-297687.2, June 20, 2006, 2006 CPD ¶ 99 (record devoid of discussion of substantive differences in proposals for "qualify" subfactor).

Finally, to make matters worse, the tradeoff analysis for Stanley and [redacted] relied on the evaluators' total misinterpretation of one past performance reference, who stated that Stanley's

[22] The Corporate Commitment subfactor was only [redacted] of the BCP Factor, with each of its six components just [redacted] received a consensus rating of [redacted] for Corporate Commitment. AR 4028.

[redacted] AR 2396. From this comment, the SSET concluded that there was [redacted] to Stanley's proposal compared to [redacted] AR 2395, despite the fact that no [redacted] of Stanley's proposal in the record, AR1006, Columns L and M, and despite the fact that the [redacted] AR 2168.

For the foregoing reasons, the paired comparison between [redacted] and Stanley unreasonably concluded that [redacted] higher-priced proposal was a better value to the Government than Stanley's.

**3. Stanley/[redacted] Tradeoff**

GSA's paired comparison of Stanley with [redacted] was also flawed. While again disregarding [redacted] GSA instead focused on [redacted] It evaluated [redacted] AR 2397.

For [redacted] the SSDM [redacted] and from this erroneously concluded that Stanley [redacted] The result was that GSA evaluated [redacted] Such an analysis is inconsistent with the RFP and fails to justify or even address the [redacted]

---

[23] GSA did not give Stanley the opportunity to respond to this adverse past performance information.

[redacted] *Id.* In point of fact, the RFP did not request information about [redacted] and [redacted] It was patently unreasonable for GSA to base its best value tradeoff decision on information not identified or required by the RFP concerning [redacted] that Offerors were not required to address.

For the foregoing reasons, the paired comparison of Stanley with [redacted] is unreasonable.

**4. Stanley/[redacted] Tradeoff**

The tradeoff with [redacted] is devoid of any reasonable basis for paying [redacted] higher price of [redacted]. AR 1006. In fact, [redacted] on which GSA so heavily relied to discriminate among and between proposals, was noted by one evaluator to [redacted] AR 11936-37 (emphasis added). GSA's cost/technical tradeoff analysis ignored this fact completely, as well as the fact that Stanley had no such [redacted] or anything else. AR 1010. Exhibit C32 inexplicably treats [redacted] and Stanley equally with regard to [redacted] simply stating that [redacted] AR 2395.

Selectively ignoring [redacted] GSA concluded that [redacted] This [redacted]

[24] Apparently considering its own justification for the price premium of [redacted] proposal inadequate, GSA added rationale, in a post-ward Addendum to C-32 dated August 19, 2007, emphasizing [redacted] add to the value of an Alliant IT Services proposal is not revealed in either the RFP or the evaluation materials.

[redacted] AR 2397. Again, GSA failed in any way to tie these purported advantages to the Government's needs in the Alliant program. GSA improperly emphasized this information, causing it to become more heavily weighted than provided by the RFP.

Based on the foregoing, the paired comparison between Stanley and [redacted] was unreasonable.

**5. Stanley/[redacted] Tradeoff**

Neither the SSET, the TET, nor the CPET recommended award to [redacted]. Instead the SSA, for the first time considering price in his selection decision, decided to award the 29th contract to [redacted]. AR 997-998. The SSA based his determination on the conclusion that [redacted] AR 1000.

In contrast to the other Stanley tradeoffs that [redacted] the discussion of the Stanley/[redacted] tradeoff [redacted] yet the SSA still failed to explain why a price that was [redacted] The conclusion that [redacted] AR 2398, is nothing more than a conclusory statement without support in the record. Moreover, [redacted] between Stanley and [redacted] yet the SSA did not find Stanley's [redacted]

The record discloses a number of [redacted] that were not present in Stanley's. [redacted]

[redacted] AR 1010; 867. GSA's cost/price review and analysis noted that [redacted] AR 4955 (emphasis added), although [redacted] AR 4956 (emphasis in original). Thus, while the RFP cautioned that [redacted] this factor was never addressed by the SSET or the SSA in deciding to award to [redacted] AR 247 RFP, § M.6 (emphasis added); *see also* AR 235, § L.12.5.

Exhibit C31 contains the primary tradeoff analysis between [redacted] price proposal. Noting that [redacted] the SSA states:

> [redacted]

AR 4972. Nonetheless, the SSA concluded that [redacted] AR 4978. This conclusion

flies in the face of a [redacted] past performance rating for cost control without any reasonable basis. As before, this tradeoff and award decision was unreasonable and Stanley was directly affected since GSA chose to compare it to [redacted]

**6. <u>Other Exhibit cost/technical tradeoffs were irrational and unreasonable.</u>**

GSA also nominally conducted tradeoff comparisons of Stanley's proposal to other higher-priced proposals. These comparisons contained the same flaws noted above for Exhibit C32; Stanley's [redacted] without any evidence that they received the "more favorable" consideration required by the RFP.[25] In GSA's mind, the value of these considerations was apparently [redacted] and there is also no evidence that GSA considered Stanley more favorably, per the RFP, for [redacted]. *See discussion* at AR 2395.

Given the [redacted] differences in the technical scores, GSA's analyses of proposals were GSA over-valued and/or under-valued discriminators, in contravention of the RFP's stated evaluation scheme, could and did affect award outcomes. GSA's application of discriminators was arbitrary and capricious and Stanley was prejudiced by GSA's error. Had Stanley's BCP scores not been inexplicably revised following [redacted], had [redacted] not been made a virtual requirement for Stanley and hence grossly over-valued, and had GSA properly applied and weighted past performance

---

[25] This is evident from the SSET's discussion of "other discriminators" at Exhibit ("Ex") C1 (AR 2261); Ex. C2 (AR 2268); Ex. C4 (AR 2276-77); Ex. C5 (AR 2285); Ex. C6 (AR 2293); Ex. C8 (AR 2300-2301); Ex. C9 (AR 2307-2308); Ex. C10, AR 2316-2317); Ex. C12 (AR 2325-26); Ex. C13 (AR 2333-2334); Ex. C16 (AR 2343-2344); Ex. C17 (AR 2352-2354); Ex. C18 (AR 2361-2362); Ex. C22 (AR 2369-2370); and Ex. C25B (AR 2378-79).

discriminators, Stanley unquestionably would have had a "substantial chance" to receive award. GSA failed to support its best value determination not to award to Stanley.

**C. The SSDM Mischaracterized the Record and Was Not In Accord with Stated <u>Evaluation Criteria</u>**

An agency's evaluation judgments and conclusions must be reasonable and consistent with the terms of the RFP and applicable procurement statutes and regulations. *Intercon Associates*, Inc., B- 298282, *et al,* 2006 WL 2548825, August 10, 2006 (citing *Century Envtl. Hygiene*, *Inc.,* B-279378**,** June 5, 1998, 98-1 CPD ¶ 164 at 4). The source selection decision must be documented, and the documentation must include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs. FAR § 15.308. An agency's mischaracterizations of the record that are unreasonable and inconsistent with the evaluation scheme cannot form the basis of a best value determination. *See Midland Supply, Inc.*, B-298720.3, May 14, 2007, 2007 CPD ¶ 204 at 4.

There are numerous misstatements and inconsistencies in the SSDM's conclusions that conflict with the RFP and are inconsistent with law and regulations governing best value determinations. These misstatements and inconsistencies both reflect a profound misunderstanding of the RFP's evaluation scheme and improperly mischaracterized the record regarding the evaluators' actual conclusions, thereby rendering the source selection determination irrational and unreasonable. Examples are provided in the following bulleted quotations:

[redacted] (AR 994; (emphasis added).

The RFP does not identify [redacted] as an evaluation or selection criterion, and nothing in the RFP (or even the SSDM) defines what such a [redacted] might be, how it would affect award, what the evaluators/SSA would be looking for in the [redacted] or whether technical proposals that were highly rated could/would be denied award because they did not offer the [redacted] This raises the question whether the evaluation was conducted in an attempt to ensure that GSA obtained the undisclosed [redacted] What is clear is that this criterion was undisclosed, and its application was a violation of the evaluation scheme expressly identified in the RFP.

[redacted]

(Emphasis added).

The RFP advised offerors that GSA was "placing approximately 25 to 30 awards resulting from this solicitation, but reserves the right to place fewer or more awards, depending upon the quality of the proposals received. AR 210, § L.3. Thus, more than 30 awards could be made.

- [redacted] *Id.*

This statement cannot justify the award to the top 28 technically ranked awardees because, in fact, there was no such [redacted] The top 28 proposals ranked as follows for price:

[redacted] AR 1006, Column J.

[redacted] AR 998.

The [redacted] is a phantom that cannot support the decision to award to the top 28 technically rated proposals. The differences in technical scores after the [redacted] ranked Offeror were

[redacted]. AR 1006. Although the SSDM noted in support of this theory that prices for the [redacted] and [redacted] Offerors were higher than that of Offeror [redacted] Further, the SSA "jumped" this supposed [redacted] and made the 29th award to [redacted], a factor that he unreasonably failed completely to consider with respect to the first 28 awards.

[redacted] AR 998.

The SSA considered [redacted] only in his trade-off analysis of the 29th awardee, [redacted] and even that analysis was flawed because it failed to consider [redacted] evaluated cost/price [redacted]

- [redacted] AR 998.

In fact, no such [redacted] analysis is identified in the RFP nor is any required, since the SSA, by his own admission, had the authority to award more than 29 contracts. AR 976 ("As stated in Section L.3 of the Solicitation, the Government anticipates placing between 25 to 30 awards, depending on the quality of offers received."). To the extent GSA established a competitive range consisting of the top 28 technical proposals and [redacted] the process was patently unreasonable. The SSA's refusal to broaden award beyond the 29 initially selected offerors unless another offer was good enough to [redacted] one of them constituted an unreasonable and artificial limitation on award. Moreover, even award of a 30th contract would have been consistent with the SSA's stated intention to

award 25-30 contracts. [redacted]

> [redacted] AR 1000.

This statement is blatantly and demonstrably unsupported by the record. Stanley's proposal was, [redacted] as to its [redacted] Also notable is the fact that there were [redacted] which cannot be said for all of the successful Offerors. AR 1010, Columns K and M. The SSA's statement to the contrary only emphasizes his unreasonable reliance upon [redacted]

- [redacted]

AR 1000 (emphasis added).

First, there is no evidence in the record that [redacted] were intended by the references to reflect negatively on Stanley or its performance. *See* Section IV.B.2, *supra*. Moreover, there was no evaluated or noted [redacted] for any aspect of Stanley's proposal, as is unequivocally established by AR 1010, Columns K and M, where GSA noted the [redacted] if any, for each Offeror's proposal; Stanley had [redacted] unlike many of the other Offerors.

> [redacted] AR 1000.

The RFP did not announce that an Offeror must have a rating [redacted] to receive an award; [redacted] failed to do so, yet it received the 29th award, and a number of Offerors failed to rate above [redacted] for two of the three evaluation factors. AR 1006. Indeed, [redacted] of the top 28 awardees were rated higher than [redacted] for cost/price. *Id.* The SSDM was not based in reason and cannot stand. *See Latecoere Int'l., Inc., et al. v. United States Dep't of Navy,* 19 F.3d 1342, 1350 n. 6 (11th Cir.1994).

## V. <u>CONCLUSION AND RELIEF SOUGHT</u>

But for the errors in GSA's best value analysis, which compounded the prejudicial errors in the BCP and past performance evaluations, Stanley would have had a substantial chance for award. First, the best value determination was based upon a flawed evaluation of the BCP subfactor components of [redacted] and EVMS. The best value determination relied upon Exhibit C32 and other Exhibits C comparing adjectival scores for Stanley's [redacted] to [redacted] higher-priced awardees, as well as considering them a second time as an unreasonably heavily weighted proposal discriminator. Despite GSA's representations that an [redacted] was not required for award, GSA favored award to those Offerors with [redacted] in its best value analysis. Because Stanley was erroneously evaluated as [redacted] and was not even evaluated [redacted] GSA's best value comparisons were erroneous. Similarly, Stanley's past performance advantages would have been more readily apparent in GSA's paired comparisons if Stanley had been properly evaluated under the Past Performance Subfactors.

Absent the errors in the BCP and Past Performance evaluations, Stanley would have improved its weighted BCP - PP average score and its overall technical ranking and would have

been in the top 28 technical proposals. Its higher technical score, when combined with consideration of Stanley's lower proposed price in accordance with the terms of the RFP, law, and regulations, would clearly have given Stanley a substantial chance of award.

Stanley is entitled to a permanent injunction against performance of the contract awarded to the 29 offerors. To obtain permanent injunctive relief, a protester must prevail on the merits. It must also show that: (1) it will suffer irreparable harm if injunctive relief is not awarded; (2) granting the relief serves the public interest; and (3) the harm it will suffer outweighs any harm to the Government and third parties." *United International Investigative Services v. United States,* 41 Fed.Cl. 312, 323 (1998). As the court stated in *United International Investigative Services:*

> With regard to the first consideration, the opportunity to compete for a contract and secure any resulting profits has been recognized to constitute significant harm. . . . The public has an interest in "minimizing the costs of federal procurements. . . ." Moreover, the public has a strong interest in preserving the integrity of the procurement process. . . . The issuance of an injunction would protect these interests . . . Finally, the court must consider the relative harm to plaintiff with the harm caused to the government and third parties . . . . *See FMC Corp [v. United States].* 3 F.3d [424 (Fed.Cir. 1993)] at 427.

*Id.,* at 323-324 (citations omitted).

Stanley has met this burden: if an injunction is not issued, it will be deprived of the right to compete fairly for an Alliant contract and secure the profits therefrom; the public interest in minimizing the cost of public contracts and in preserving the integrity of the procurement process from irrational conduct by the Government will be served; and any harm to the Government or the awardees is clearly outweighed by the harm Stanley will suffer if an injunction is not issued, since GSA will still be able to procure its needs (although in full accord with the RFP, law, and regulations) and the Offerors who are entitled to contracts pursuant to a full, open, and fully compliant procurement process will receive them. For all the above reasons, a permanent injunction is necessary and justified.

WHEREFORE, based on the foregoing and the totality of the record, Stanley respectfully prays that the Court: (i) sustain its protest and declare unlawful GSA's evaluation of Stanley's proposal; (ii) declare unlawful the awards made under Solicitation Number TQ2006MCB0001; (iii) enjoin any performance under the contracts awarded to the 29 successful Offerors; (iv) order GSA to make an award to Stanley or, alternatively, reevaluate Stanley's proposal in accordance with the RFP, the law, and applicable regulations; (v) award Stanley its bid preparation costs; and (vi) order such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 30, 2007

/s/ Susan L. Schor
Susan L. Schor
sschor@msadlaw.com
McManus, Schor, Asmar & Darden, L.L.P.
1155 15th Street, N.W., Ninth Floor
Washington, D.C. 20005
202-296-9260; 202-659-3732 fax
*Counsel of Record for Stanley Associates, Inc.*

Of Counsel:
Laurence Schor
lschor@msadlaw.com
Dennis C. Ehlers
dehlers@msadlaw.com
Jeanne A. Anderson
janderson@msadlaw.com
McManus, Schor, Asmar & Darden, L.L.P.