~~*Protected Information to Be Disclosed Only In Accordance with U.S. Court of Federal Claims Protective Order*~~

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)**

SERCO INC.; STANLEY ASSOCIATES INC.; CGI FEDERAL INC.; STG, INC.; ARTEL, INC.; ADVANCED TECHNOLOGY SYSTEMS, INC.; APPTIS INC.; NORTEL GOVERNMENT SOLUTIONS, INC.; and THE CENTECH GROUP, INC.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant,

and

INDUS CORPORATION; ELECTRONIC DATA SYSTEMS CORPORATION; INTERNATIONAL BUSINESS MACHINES CORPORATION; and GENERAL DYNAMICS ONE SOURCE, LLC,

Defendant-Intervenors.

Consolidated Nos. 07-691C, 07-732C, 07-741C, 07-747C, 07-760C, 07-761C, 07-766C, 07-771C, and 07-803C

Judge Allegra

**AGREED-UPON REDACTED COPY MAY BE MADE PUBLIC**

**CONSOLIDATED PLAINTIFF APPTIS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
ConwayR@dicksteinshapiro.com (e-mail)

*Counsel of Record for Apptis, Inc.*

Of Counsel:
Justin A. Chiarodo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
ChiarodoJ@dicksteinshapiro.com (e-mail)

Dated: November 30, 2007

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... iii

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE AND STATEMENT OF FACTS .......... 2

A. Procurement Background, Solicitation, And Receipt Of Proposals .......... 2

B. GSA's Proposed Evaluation Methodology .......... 4

C. GSA's Technical Evaluation [redacted] .......... 5

D. GSA's Decision To Award Contracts To The Top 28 Technically-Ranked Offerors .......... 6

E. GSA's Unrebuttable Presumption [redacted] .......... 7

F. GSA's "Trade-Off" Of Apptis .......... 9

i. [redacted] .......... 9

ii. [redacted] .......... 11

iii. [redacted] .......... 11

G. GSA's Reduction [redacted] .......... 12

H. GSA's Disparate Treatment Of Apptis' Past Performance As Compared To The Other Offerors .......... 13

I. Apptis Protests To GAO And The Court Of Federal Claims .......... 16

ARGUMENT .......... 16

I. JURISDICTION, STANDING, AND STANDARD OF REVIEW .......... 16

II. GSA IMPROPERLY AWARDED CONTRACTS WITHOUT CONSIDERING COST OR PRICE, CONTRARY TO APPLICABLE LAW AND THE REQUIREMENTS OF THE RFP AND THE SOURCE SELECTION PLAN .......... 18




DSMDB-2361678v01

Page

A. Legal Standard ....................................................18

B. GSA's Decision To Award Contracts To The Top 28 Technically-Ranked Offerors Was A *Per Se* Violation Of GSA's Obligation To Consider Cost And Price ....................................................19

C. GSA Failed To Properly Consider Cost And Price In Violation Of The RFP And The Source Selection Plan [redacted] ....................................................21

III. GSA'S "BEST-VALUE" DECISION METHODOLOGY AND THE APPTIS TRADE-OFF WERE IMPROPER, FAILED TO TREAT OFFERORS EQUALLY, AND ARE UNSUPPORTED BY THE ADMINISTRATIVE RECORD ....................................................24

A. Legal Standard ....................................................24

B. GSA's Award Decision Methodology Was Based On An Improper And Unsupported Presumption [redacted] ....................................................26

C. GSA's Best-Value "Trade-Off" For Apptis Lacked A Rational Basis, Is Unsupported By The Administrative Record, And Does Not Justify The Price Premium For The Compared Offerors ....................................................28

IV. GSA IMPROPERLY EVALUATED THE APPTIS PROPOSAL ....................................................32

A. Legal Standard ....................................................32

B. GSA Improperly Reduced Apptis' [redacted] In Violation Of The RFP And The SSP, And Inconsistently With GSA's Evaluation Of Similarly Situated Offerors ....................................................32

C. GSA Improperly Evaluated Apptis' [redacted] ....................................................34

D. GSA Improperly Evaluated Apptis [redacted] When Compared To GSA's Evaluation Of Similarly Situated Offerors ....................................................36

V. GSA'S IMPROPER ACTIONS CAUSED APPTIS SUBSTANTIAL PREJUDICE ....................................................39

CONCLUSION ....................................................40

# TABLE OF AUTHORITIES

Page

Cases

*Acra, Inc. v. United States*, 44 Fed. Cl. 288 (1999) .......... 32

*Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054 (Fed. Cir. 2000) .......... 17

*Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8 (2005) .......... 17

*Banknote Corp. of Am. v. United States*, 365 F.3d 1345 (Fed. Cir. 2004) .......... 17, 18

*Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004) .......... *passim*

*Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005) .......... 17

*Chant Eng'g Co. v. United States*, 75 Fed. Cl. 62 (2007) .......... 17

*CHE Consulting, Inc. v. United States*, 78 Fed. Cl. 380 (2007) .......... 17

*Data Gen. Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996) .......... 39

*Grumman Data Sys. Corp.*, GSBCA No. 11635-P, 92-1 BCA CCH ¶ 24,700 .......... 18

*Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990 (Fed. Cir. 1996) .......... 17

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001) .......... 18

*Incident Catering Servs., LLC*, B-296435.2, et al., Sept. 7, 2005, 2005 CPD ¶ 193, 2005 WL 3193685 .......... 24

*Information Sciences Corp. v. United States*, 73 Fed. Cl. 70 (2006) .......... *passim*

*Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955 (Fed. Cir. 1993) .......... 18, 24, 31

*Metcalf Constr. Co. v. United States*, 53 Fed. Cl. 617 (2002) .......... 25, 27, 31

*MIL Corp.*, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29, 2004 WL 3190217 .......... *passim*

*OTI Am., Inc. v. United States*, 73 Fed. Cl. 758 (2006), *aff'd*, 227 F. App'x 926 (Fed. Cir. 2007) .......... 32, 36, 39

*Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560 (2000) .......... 32, 36, 39

Page

*Shumaker Trucking & Excavating Contractors, Inc.*, B-290732, Sept. 25, 2002, 2002 CPD ¶ 169, 2002 WL 31242197 .......... 25, 27, 31, 32

*Widnall v. B3H Corp.*, 75 F.3d 1577 (Fed. Cir. 1996) .......... 24

*Wit Assocs., Inc. v. United States*, 62 Fed. Cl. 657 (2004) .......... 39

Statutes

5 U.S.C. § 706(2)(A) .......... 17

10 U.S.C. § 2305(a)(3)(A)(ii) .......... 18

28 U.S.C. § 1491(b)(1)-(4) .......... 16

28 U.S.C. § 1491(b)(1) .......... 16

41 U.S.C. § 253a(c)(1)(B) .......... 18

Regulations

FAR 9.104-3(b) .......... 35

FAR Part 15 .......... 3

FAR 15.304(c)(1) .......... 18

FAR 15.404-1 .......... 4

Rules

RCFC 52.1 .......... 17

RCFC 52.1(b) .......... 1, 2

~~*Protected Information to Be Disclosed Only In Accordance with U.S. Court of Federal Claims Protective Order*~~

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

SERCO INC.; STANLEY ASSOCIATES INC.; CGI FEDERAL INC.; STG, INC.; ARTEL, INC.; ADVANCED TECHNOLOGY SYSTEMS, INC.; APPTIS INC.; NORTEL GOVERNMENT SOLUTIONS, INC.; and THE CENTECH GROUP, INC.,

Plaintiffs,

vs.

THE UNITED STATES,

Defendant,

and

INDUS CORPORATION; ELECTRONIC DATA SYSTEMS CORPORATION; INTERNATIONAL BUSINESS MACHINES CORPORATION; and GENERAL DYNAMICS ONE SOURCE, LLC,

Defendant-Intervenors.

Consolidated Nos. 07-691C, 07-732C, 07-741C, 07-747C, 07-760C, 07-761C, 07-766C, 07-771C, and 07-803C

Judge Allegra

**AGREED-UPON REDACTED COPY MAY BE MADE PUBLIC**

**CONSOLIDATED PLAINTIFF APPTIS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims ("RCFC"), Consolidated Plaintiff Apptis, Inc. ("Apptis") respectfully submits this Memorandum in Support of Its Motion for Judgment on the Administrative Record. As set forth in detail below, Defendant The United States' award decisions under Solicitation Number TQ2006MCB0001 were arbitrary, capricious, and a violation of law and regulation.



DSMDB-2361678v01

## STATEMENT OF THE ISSUES

1. Whether Defendant failed to properly consider cost and/or price in its award decisions, as required by the Request for Proposals, the Source Selection Plan, and applicable law, thus depriving Apptis of an opportunity for award.

2. Whether Defendant failed to conduct a proper best-value and/or trade-off analysis of the Offerors' proposals, including the Apptis proposal, as required by the Request for Proposals, the Source Selection Plan, and applicable law, thus depriving Apptis of an opportunity for award.

3. Whether Defendant failed to properly evaluate the technical merit of the Apptis proposal, [redacted] as required by the Request for Proposals, the Source Selection Plan, and applicable law, thus depriving Apptis of an opportunity for award.

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

Pursuant to RCFC 52.1(b), Apptis submits the following statement of relevant facts:

### A. Procurement Background, Solicitation, And Receipt Of Proposals

1. On September 26, 2007, Defendant, acting by and through the General Services Administration ("GSA"), issued Solicitation Number TQ2006MCB0001 ("RFP"). Administrative Record ("AR") 121-294. The RFP sought proposals for Government-wide Acquisition Contracts ("GWACs") under a program called Alliant. RFP, § B.1, AR 122. The maximum size of the Alliant program is $50 billion. RFP, § B.4, AR 122. The RFP sought contractors that could provide a wide variety of integrated information technology services to the Government. RFP, § C.1, AR 128. GSA stated its intention to award 25 to 30 contracts under the RFP. RFP, § L.3, AR 210.

2. The RFP was issued using the competitive procedures of Federal Acquisition Regulation ("FAR") Part 15. RFP, § M.2, AR 241. The RFP stated that awards would "be made to [the] responsible Offerors whose proposals are determined to provide the 'best value' to the Government . . . utilizing the 'best value' tradeoff approach." RFP, § M.2(a), AR 241.

3. Section M of the RFP explained that the proposals were to be evaluated under two primary areas: (1) Technical; and (2) Cost/Price. RFP, § M.2(b), AR 241. The Technical area was based on two evaluation factors: (a) Past Performance and (b) the Alliant Basic Contract Plan. Past Performance and Basic Contract Plan were to be given approximately equal weight in the evaluation, and when combined, were to be given significantly more weight than Cost or Price. RFP, § M.2(b), AR 241.

4. The RFP required that "differences in non-price factors and evaluated price will be compared to determine which Offeror represents the best value to the Government." RFP, § M.3(d), AR 242.

5. The RFP further required that "the closer the technical scores of the various proposals are to one another, the more important cost or price considerations become in determining the overall best-value for the Government." RFP, § M.6, AR 247.

6. The Past Performance factor was comprised of five subfactors of approximately equal weight: 1) Quality of Service, 2) Schedule, 3) Cost Control, 4) Business Relations, 5) Subcontract Management/Socioeconomic Goals. RFP, § M.5.1, AR 244.

7. The Basic Contract Plan factor was comprised of three subfactors, in descending order of importance: (a) Resources, (b) Program Management, and (c) Corporate Commitment. RFP, § M.5.2, AR 245.

8. Cost and Price proposals were to be evaluated using proposal analysis techniques consistent with FAR 15.404-1. RFP, § M.6, AR 247.

9. On November 17, 2006, Apptis submitted a timely and fully compliant proposal in response to the RFP. Apptis Proposal, AR 22834-23041. GSA received 66 timely proposals on the proposal due date, and ultimately evaluated 62 proposals that passed the initial acceptability review. Source Selection Decision Memorandum ("SSDM"), § IV(A)-(C), AR 994-995.

**B. GSA's Proposed Evaluation Methodology**

10. The source selection process and GSA's methodology for evaluating Alliant proposals are documented in the RFP, as implemented by the SSDM, and GSA's Source Selection Plan ("SSP"). *See* AR 31-121, AR 121-294, AR 973-1061.

11. Implementing the RFP, the SSDM stated that GSA would evaluate Offerors' proposals "in strict conformance with the Solicitation," including both Past Performance and Basic Contract Plan. SSDM, § III(A)(1), AR 984. GSA also stated that it would evaluate an Offeror's Cost/Price in accordance with the RFP. SSDM, § III(D), AR 988.

12. Both the SSP and the SSDM provided that proposals would be ranked by individual evaluators for both Past Performance and Basic Contract Plan. Further, each team was required to caucus with the evaluation team members to form a "consensus evaluation" for each Offeror, that is, a single adjectival rating for each technical factor for each Offeror. SSP, §§ 7.0-7.7, AR 44-52; SSDM, § III(E), AR 992. These adjectival ratings were ultimately converted to [redacted]. *See* Technical Team Memorandum, AR 839-840, AR 868-972; SSDM Ex. Ca (Past Performance "Evaluation Consensus Score"), AR 1009; SSDM Ex. Ca (Basic Contract Plan "Average Evaluation Score"), AR 1008.

13. Implementing the Cost evaluation provisions in the RFP, GSA stated that proposals would [redacted] for Cost evaluation purposes where the Offerors:

[redacted] *See* RFP, § M.6.2, AR 248-249; SSDM, § IV(D), AR 990; Alliant Cost/Price Evaluation Instructions, § 1(A), AR 809.

14. Similarly, implementing the Price evaluation provisions in the RFP, GSA stated that proposals would be [redacted]. *See* RFP, § M.6.1, AR 248; SSDM, § IV(D), AR 991-992; Alliant Cost/Price Evaluation Instructions, § 2, AR 810-811.

[redacted]

**C. GSA's Technical Evaluation [redacted]**

16. GSA evaluated proposals under the technical factors of Past Performance and Basic Contract Plan, and ranked proposals from 1 to 62 based on those two technical factor evaluations. SSDM, § IV(C), AR 995. These overall technical rankings were memorialized in Exhibit C to the SSDM. SSDM Ex. C, AR 1006-1007.

[redacted]Exhibit C plainly demonstrates the [redacted], based on their technical rankings; for example, as demonstrated in the table below (excerpted from SSDM, Ex. C, AR 1006-1007), [redacted]

| | [redacted] | | [redacted] | | [redacted] | |
|---|---|---|---|---|---|---|
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |
| [redacted] | | | [redacted] | | [redacted] | |

[redacted]

19. In addition to the technical scores, Exhibit C also contained pricing information for the Offerors, including each Offeror's total evaluated price, standard deviation from the price mean, and price rank order. SSDM, § IV(D), AR 995.

**D. GSA's Decision To Award Contracts To The Top 28 Technically-Ranked Offerors**

20. After proposals were ranked from 1 to 62 according only to their combined technical scores, including Past Performance and Basic Contract Plan, the Source Selection

Evaluation Team ("SSET") recommended to the Source Selection Authority ("SSA"), [redacted] that the proposals technically ranked from 1 through 28 receive awards. SSDM, § IV(E), AR 997. The SSA accepted this recommendation. SSDM, § IV(E), AR 997. Cost or Price, including evaluated price, was not considered as part of this award decision, which was based only [redacted] *See* SSDM, § IV(E), AR 997, Ex. C, AR 1006-1007.

[redacted] Describing this decision to award contracts [redacted], the SSDM made specific reference to [redacted]

22. The Administrative Record contains no support that this award decision involved the consideration or evaluation of Cost or Price, including evaluated price, as expressly required by the RFP and in accordance with GSA' source selection documents. *See* RFP, § M.3(d), AR 242; RFP, § M.6, AR 247-249; SSDM, § IV(D), AR 990-992; Alliant Cost/Price Evaluation Instructions, § 1(A), AR 809-812.

**E. GSA's Unrebuttable Presumption That [redacted]**

[redacted] In addition to the top 28 technically-ranked awardees, [redacted]



DSMDB-2361678v01

24. The Administrative Record contains no support [redacted] *See* RFP, § M.3(d), AR 242; RFP, § M.6, AR 247-249; SSDM, § IV(D), AR 990-992;Alliant Cost/Price Evaluation Instructions, § 1(A), AR 809-812.

25. [redacted] there were 29 total contract awards. SSDM, § IV(E), AR 998. After this tentative selection of 29 awardees, the SSA turned to the remaining proposals. SSDM, § IV(E), AR 998.

26. The remaining proposals were considered solely in the form of an alleged "trade-off" analysis. The "trade-off" analysis occurred *after* the SSA provisionally identified [redacted] SSDM, § IV(E), AR 998.

27. The Administrative Record contains no evidence that this presumptive "best-value" determination involved the consideration or evaluation of Cost or Price as specified in the RFP and GSA's source selection documents. *See* RFP, § M.6, AR 247; SSDM, § IV(D), AR 990-992; Alliant Cost/Price Evaluation Instructions, § 1(A), AR 809-812.

28. The "trade-off" analysis was designed [redacted] SSDM, § IV(E), AR 998.

29. In its "trade-off" analysis, the SSA [redacted]. SSDM, § IV(E), AR 1000.

30. Ultimately, none of presumptive 29 awardees were "displaced" as a result of GSA's "trade-off" approach. *See* SSDM, § IV(E), AR 998.

31. In addition, the "trade-off" did not result in *any change* to the overall ranking of proposals as memorialized in Exhibit C to the SSDM. *See* SSDM Ex. C, AR 1006-1013 (demonstrating no change in proposal rank order, or awardee status, before or after the "trade-off" analysis).

**F. GSA's "Trade-Off" Of Apptis**

[redacted] GSA compared the Apptis proposal [redacted]

[redacted] Specifically, [redacted]

34. As illustrated below, this Apptis "trade-off" analysis is comprised solely of a few narrative excerpts from the Compared Offerors' respective evaluations under both Past Performance and Basic Contract Plan, and, in each case, the analysis is limited to areas [redacted] *See* SSDM Ex. C36 & Ex. C36 Addendum, AR 23147-23170.

**i. [redacted]**

[redacted]

[redacted]

[redacted]

[redacted]

ii. [redacted]

[redacted]

### G. GSA's Reduction Of Apptis' Basic Contract Plan Ranking

46. Under GSA's Basic Contract Plan evaluation scheme, evaluation team members would [redacted] for the Basic Contract Plan factors and subfactors based on the technical standards in Annex D to the SSP. SSP, § 7.4, AR 51-52. These scores were ultimately averaged using the weighted factors (in descending order of importance) outlined in the SSP and SSDM, consistent with RFP evaluation criteria. *See* Rank Order Memorandum, AR 838-972.

[redacted] Under this process, Apptis initially received [redacted]

[redacted] However, on July 12, 2007, [redacted] the Source Selection Chair, noted via e-mail that [redacted]

[redacted]

[redacted] There is no provision [redacted] outside of the process prescribed in the RFP and the SSP, which was to be based *solely* on the adjectival ratings assigned by individual evaluators in accordance with the RFP and the SSP. [redacted]

### H. GSA's Disparate Treatment Of Apptis' Past Performance As Compared To The Other Offerors

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**I. Apptis Protests To GAO And The Court Of Federal Claims**

66. By letter dated July 31, 2007, GSA notified Apptis that it had received 66 proposals and awarded 29 contracts, but that Apptis was not selected for award. AR 23199-23201.

67. Apptis subsequently timely filed a bid protest at the Government Accountability Office, which it withdrew by letter dated October 11, 2007, in light of the September 26, 2007 filing of a bid protest in this Court by Serco, Inc. related to the Alliant procurement.

68. Apptis thereafter timely filed a bid protest in the Court of Federal Claims on November 1, 2007.

## ARGUMENT

I. JURISDICTION, STANDING, AND STANDARD OF REVIEW

The Tucker Act, 28 U.S.C. § 1491(b)(1)-(4), provides this Court with jurisdiction to render judgment on a post-award bid protest by an interested party for "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). As Apptis is a disappointed bidder whose direct economic interest would be

affected by the Alliant contract awards at issue, this Court has jurisdiction to entertain Apptis' bid protest.

RCFC 52.1 provides for judgment on the Administrative Record. In reviewing motions under Rule 52.1, the court must determine "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" *CHE Consulting, Inc. v. United States*, 78 Fed. Cl. 380, 387 (2007) (citations omitted). "The court must make findings of fact where necessary." *Id.* "The resolution of cross-motions for judgment under Rule 52.1 is akin to an expedited trial on [the written record]." *Id.*

It is well settled that "this court's review of an agency's decision regarding a contractual solicitation or award takes place in accord with standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706." *Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 19 (2005); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Accordingly, the court must determine whether the contracting agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bannum*, 404 F.3d at 1351; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). "A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence." *Chant Eng'g Co. v. United States*, 75 Fed. Cl. 62, 70 (2007) (citing *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 995-96 (Fed. Cir. 1996)).

The court may overturn a challenged decision if "'(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351

(Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).[1]

## II. GSA IMPROPERLY AWARDED CONTRACTS WITHOUT CONSIDERING COST OR PRICE, CONTRARY TO APPLICABLE LAW AND THE REQUIREMENTS OF THE RFP AND THE SOURCE SELECTION PLAN

### A. Legal Standard

Price or cost must always be a factor in an agency's decision to award a contract. 10 U.S.C. § 2305(a)(3)(A)(ii); 41 U.S.C. § 253a(c)(1)(B); FAR 15.304(c)(1). "Moreover, the importance of price in a price/technical tradeoff must not be discounted to such a degree that it effectively renders the price factor meaningless." *See Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 959 (Fed. Cir. 1993) (citing *Grumman Data Sys. Corp.*, GSBCA No. 11635-P, 92-1 BCA CCH ¶ 24,700 at 123,721).

Applying this principle, the Court in *Information Sciences Corp. v. United States*, 73 Fed. Cl. 70, 115 (2006), set aside a GSA contract award for information technology services where the contracting officer failed to evaluate price in a competitive range determination, as required by the FAR and the solicitation at issue. The Government argued that "'when the contracting officer [set the competitive range], he at least looked at price. He considered them. He knew what the prices were of the offerors at that point and acted rationally and reasonably.'" *Id.* (alteration in original) (citations omitted). The Court rejected this argument, noting that the Government failed to consider both price reasonableness and realism as specified in the

---

[1] In *Banknote*, the Federal Circuit expounded upon these principles, as follows:

> When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

*Banknote*, 365 F.3d at 1351 (internal quotation marks and citations omitted).

solicitation, and as required by the FAR. *Id.* As the Court observed, "the CO does not have discretion to ignore an evaluation factor that is set forth in the Solicitation . . . . The court recognizes that the CO is afforded wide discretion, however, that discretion does not extend to violating the FAR and ignoring an integral factor in the procurement." *Id.*

In another instructive illustration of an agency's failure to properly consider price, the Government Accountability Office ("GAO") sustained a bid protest on the basis that the agency's consideration of price was effectively limited only to determining whether proposed prices were reasonable and realistic. *MIL Corp.*, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29, 2004 WL 3190217. GAO concluded the agency effectively abandoned its own evaluation criteria, which was based on the evaluation and color-rating of offerors' price features and a cost-technical trade-off, by focusing instead on the proposals' price reasonableness and realism. *Id.* at *6-*8. GAO concluded that these actions impermissibly rendered price a nominal evaluation factor. *Id.* at *7.

B. GSA's Decision To Award Contracts To The Top 28 Technically-Ranked Offerors Was A *Per Se* Violation Of GSA's Obligation To Consider Cost And Price

After ranking the Offerors' proposals from 1 to 62 based *only* on their technical evaluation scores, limited to Past Performance and Basic Contract Plan, the Source Selection Evaluation Team ("SSET") recommended to the Source Selection Authority ("SSA"), [redacted] that the proposals technically ranked from 1 through 28 receive awards. SSDM, § IV(E), AR 997. The SSA accepted this recommendation. SSDM, § IV(E), AR 997. It is undisputed that the combined technical ranking of the Offerors does not reflect any consideration of Cost or Price.

In fact, the Administrative Record is bereft of any indication that Cost or Price was meaningfully considered in advance of the SSA's decision to award contracts to the top 28 technically-ranked Offerors. GSA disregarded its own proposed process for evaluating and

considering Offerors' Cost and Price in its award decision, impermissibly focusing only on the Offerors' technical ranking. *See Info. Scis. Corp.*, 73 Fed. Cl. at 115; *MIL Corp.*, 2004 WL 3190217 at *6-*8.

As did the agency in both *Information Sciences Corp.* and *MIL Corp.*, GSA established a detailed scheme for evaluating and considering cost and price that it ultimately abandoned. The RFP expressly stated that evaluated price would be a factor in any award decision, and that GSA would consider and compare numerous cost/price standards prior to award. *See* RFP, § M.3(d), AR 242; RFP § M.6.1, AR 248. Implementing these requirements, the SSDM and GSA's instructions for the evaluation of Cost and Price both [redacted] SSDM, § IV(D), AR 990-992; Alliant Cost/Price Evaluation Instructions, § 1(A), AR 809-812. Beyond this, Cost and Price were to play a very important role in award decisions given [redacted] *See* RFP, § M.6, AR 247.

Despite these requirements, GSA's decision to award based solely on technical ranking demonstrates *absolutely no consideration of price*, much less the important consideration of evaluated price required by the RFP. *See* RFP, § M.3(d), AR 242; RFP, § M.6.1, AR 248. Though GSA calculated certain cost and price features of the submitted proposals, and memorialized some of those features in Exhibit C to the Source Selection Decision Memorandum, it effectively short-circuited its consideration and evaluation of Cost and Price by focusing exclusively on the technical ranking to determine the top 28 awardees. As one illustration of GSA's decision to abandon its cost and price evaluation scheme, [redacted]

[redacted]

Taken collectively, GSA's decision to award contracts to the top 28 technically-ranked Offerors, based on technical rankings alone, was a *per se* violation of both the RFP and its proposed evaluation scheme, as well as applicable law requiring the meaningful consideration of Cost and Price. *MIL Corp.*, 2004 WL 3190217 at *6-*8; *see also Info. Scis. Corp.*, 73 Fed. Cl. at 115. This error was not mitigated by GSA's efforts to calculate Offerors' costs and prices, and the statistical relationships between those figures, because GSA ignored those calculations in its award decisions. Awareness of cost or price is not the meaningful consideration of Cost or Price. *MIL Corp.*, 2004 WL 3190217 at *6-*8; *see also Info. Scis. Corp.*, 73 Fed. Cl. at 115.

[redacted] GSA Failed To Properly Consider Cost And Price In Violation Of The RFP And The Source Selection Plan Given [redacted]

Both the RFP and GSA's proposed award decision methodology required GSA to carefully consider Cost and Price in this procurement. This is made clear by two noteworthy aspects of the RFP and the source selection documents. First, as discussed above, the RFP expressly stated that evaluated price would be a factor in any award decision, and that GSA would consider and compare numerous cost/price standards prior to award. *See* RFP, § M.3(d), AR 242; RFP, § M.6.1, AR 248. Implementing these requirements, GSA stated that proposals meeting certain cost/price metrics would [redacted] *See* SSDM, § IV(D), AR 990-992; Alliant Cost/Price Evaluation Instructions, § 1(A), AR 809-812. Second, [redacted] both the RFP and the SSP required that

cost and price considerations were to be more important in overall best-value determinations. RFP, § M.3(d), AR 247; *see also* SSP, § 8.0, AR 54.

Exhibit C to the Source Selection Decision Memorandum plainly demonstrates [redacted]

This [redacted] apparent on the face of the weighted technical ranking in AR 1006-1007, meant that cost or price considerations were required to play a more important role in determining the overall best value for the Government. RFP, § M.3(d), AR 247; *see also* SSP, § 8.0, AR 54. The Administrative Record reveals that Cost and Price never played this required and important role in GSA's award decisions, as seen in three separate and significant areas.

First, as discussed above, GSA presumptively awarded contracts to the top 28 technically-ranked Offerors without the consideration of Cost or Price, much less the careful consideration of Cost or Price in conjunction with technical capability as required by the RFP and the SSP. *See* RFP, § M.6, AR 247; *see also* SSP, § 8.0, AR 54. On its face, this indicates that Cost or Price played *no role*, rather than the required "more important" role in determining the overall best value for the Government.

Second, in lieu of carefully considering Price [redacted] the SSA made specific reference to [redacted]

The Administrative Record contains no evidence that this decision to separate proposals [redacted] involved the consideration or evaluation of Cost or Price as specified in the RFP and the source selection documents, particularly those provisions requiring the careful consideration of price as technical scores became closer. *See* RFP, § M.6, AR 247; SSDM, § IV(D), AR 990-992; Alliant Cost/Price Evaluation Instructions, § 1(A), AR 809-812. This is of particular significance because the difference in technical ranking [redacted]

- Third, [redacted] GSA's decision to award [redacted]

Rather, GSA's analysis is limited to an ad hoc comparison [redacted]

[redacted]

As described above, GSA effectively abandoned its own evaluation criteria and disregarded [redacted] among Offerors' technical ranking, which required the close and careful consideration of price, in favor of ad hoc determinations that were inconsistent with the RFP. Moreover, it is well established that the mere *awareness* of price, without the meaningful consideration of price in accordance with *all* stated evaluation criteria, is improper and not in accordance with law. *MIL Corp.*, 2004 WL 3190217 at *6-*8; *see also Info. Scis. Corp.*, 73 Fed. Cl. at 115. GSA's consideration of Cost and Price does not meet this standard.

## III. GSA'S "BEST-VALUE" DECISION METHODOLOGY AND THE APPTIS TRADE-OFF WERE IMPROPER, FAILED TO TREAT OFFERORS EQUALLY, AND ARE UNSUPPORTED BY THE ADMINISTRATIVE RECORD

### A. Legal Standard

It is well recognized, both at this Court and at GAO, that a "contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 383 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004); *Incident Catering Servs., LLC*, B-296435.2, et al., Sept. 7, 2005, 2005 CPD ¶ 193, 2005 WL 3193685 at *6. Moreover, though an agency has significant discretion in making "best-value" decisions, a contracting agency must demonstrate, with a reasonable certainty, that the added value of a proposal is worth the higher price. *See Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 959-60 (Fed. Cir. 1993); *see also Widnall v. B3H Corp.*, 75 F.3d 1577, 1581-82, 1584 (Fed. Cir. 1996).

Expanding on this principle, where an agency utilizes adjectival ratings in evaluating proposals, or conducting a best-value trade-off, the agency must nonetheless identify and describe the specific advantages that make one proposal of a higher quality than another. *See Metcalf Constr. Co. v. United States*, 53 Fed. Cl. 617, 641 (2002). Discussing this concept, the Court in *Metcalf* concluded that the agency's mere observation of differences between proposals was not a sufficient analysis of "'specific advantages that ma[d]e one proposal of higher quality than another.'" *Id.* at 641 (alteration in original). As the Court observed, "[the agency] recorded the strengths and weakness of all of the offerors, but placed no particular emphasis on those areas, positively or negatively. The remark that the other offerors received two [highly acceptable ratings] while plaintiff only received one [highly acceptable rating] is superficially weak and inconclusive, not to mention its flawed reasoning." *Id.* (footnote omitted).

GAO has similarly held that an agency's source selection decision cannot be based on a mechanical comparison of the offerors' technical scores or ratings *per se*, but must rest upon a qualitative assessment of the underlying technical differences among the competing proposals. *See MIL Corp.*, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29, 2004 WL 3190217 at *6-*8; *Shumaker Trucking & Excavating Contractors, Inc.*, B-290732, Sept. 25, 2002, 2002 CPD ¶ 169, 2002 WL 31242197 at *4. In *Shumaker*, GAO concluded that the agency improperly focused on the awardee's higher technical point score, "without discussing what, if anything, the spread between the technical scores of [the awardee] and Shumaker actually signified." *Shumaker*, 2002 WL 31242197 at *5. GAO concluded this was insufficient to justify the agency's "best-value" decision, reinforcing the principle that technical ratings alone may not form the basis for a proper best-value analysis.

B. GSA's Award Decision Methodology Was Based On An Improper And Unsupported Presumption [redacted]

GSA's consideration of proposals beyond the 29 awardees involved a purported "trade-off" analysis. According to GSA, this "trade-off" was designed to answer the question of whether the lower technically-ranked Offerors provided [redacted] SSDM, § IV(E), AR 998. In effect, this methodology created an unrebuttable presumption that the 29 awardees, including the 28 highest technically-ranked awardees, were the best value to the Government, (1) before all proposals had been fully and fairly considered for award, (2) before the Government considered Cost or Price as required by the RFP and the SSP, and (3) without any explanation of the specific advantages that those 29 proposals possessed that justified their "best-value" selection.

It is particularly problematic that this "trade-off" analysis only occurred *after* the SSA provisionally identified [redacted] SSDM, § IV(E), AR 998. As discussed above in Section II, GSA selected these proposals based *solely* on their technical ranking, without the appropriate and required consideration of Cost or Price. SSDM, § IV(E), AR 998. In addition, the Administrative Record does not contain any discussion, basis, or analysis indicating why these particular proposals were given a premature presumption of "best value," before fully and fairly evaluating all submitted proposals.

The presumption that the 29 awardees provided the "best value" proved unrebuttable. This is demonstrated by two separate aspects of GSA's source selection results. First, *none* of the 29 presumptive awardees, including the top 28 technically-ranked Offerors, were "displaced" as a result of GSA's trade-off. On its face, this result indicates that GSA did not fully and fairly evaluate all proposals to determine which solutions provided the true best value to the Government, [redacted] among the proposals that

required the important consideration of Price. At lease several proposals, or more, should have been displaced given the wide variety of technical solutions and prices in this procurement.

Second, GSA's "trade-off" did not result in [redacted] as memorialized in Exhibit C to the SSDM. *See* SSDM Ex. C, AR 1006-1013 (demonstrating [redacted] awardee status, before or after the "trade-off" analysis). Thus, both before *and after* GSA's trade-off, not one proposal was evaluated as [redacted] value than was reflected in the original technical rankings that formed the basis for GSA's award decisions. At a minimum, a meaningful best-value analysis would have resulted in a [redacted] that reflected GSA's overall judgment as to the best-value proposals, not merely a restatement of GSA's original technical rankings.

Moreover, GSA's own source selection documents illustrate that proposals in the "trade-off" were not considered on an equal basis. [redacted] SSDM, § IV(E), AR 1000. This [redacted] to a selected group of Offerors meant that all Offerors were not given a fair and equal evaluation, and reinforces the overwhelming and, indeed, unrebuttable preference that Offerors with higher technical rankings were given in GSA's award decision process.

As established above, a "contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." *Banknote Corp. of Am.*, 56 Fed. Cl. at 383. In addition, an agency's source selection decision must rest upon a qualitative assessment of the underlying technical differences among the competing proposals. *See Metcalf Constr. Co.*, 53 Fed. Cl. at 641; *see also MIL Corp.*, 2004 WL 3190217 at *6-*8; *Shumaker*, 2002 WL 31242197 at *5. GSA's unrebuttable presumption of the "best value" of

the 29 awardees, and corresponding trade-off methodology that did not result in any change in Offeror ranking, did not meet either requirement.

C. GSA's Best-Value "Trade-Off" For Apptis Lacked A Rational Basis, Is Unsupported By The Administrative Record, And Does Not Justify The Price Premium For The Compared Offerors

In its "trade-off" analysis, which occurred after the SSA identified "the 29 best value proposals for Alliant," SSDM, § IV(E), AR 998, GSA [redacted]

The Apptis "trade-off" analysis is comprised solely of narrative excerpts from both Apptis and the Compared Offerors' respective evaluations under both Past Performance and Basic Contract Plan, and, in each case, the analysis is limited to the areas [redacted] As discussed below, these "trade-offs" do not satisfy GSA's obligation to explain the specific features, rather than higher technical subfactor ranking, of the Compared Offerors that justified their considerably higher prices.

[redacted]

[redacted]

[redacted]

This impermissible focus on adjectival subfactor ratings is further demonstrated in the Compared Offerors's own Source Selection Exhibits. [redacted]

[redacted]

On its face, this conclusory statement fails to meet the requirement for a proper, qualitative, best-value comparison because it focuses exclusively on adjectival ratings that do not indicate the substantive merit and features of the respective proposals. *See Shumaker*, 2002 WL 31242197 at *5 (technical ratings alone may not form the basis for a proper best-value analysis).

The improper focus on subfactor ratings is yet again present in GSA's overall Apptis trade-off justification. [redacted]

Not only is the justification limited to the number of subfactors in which the Compared Offerors exceeded Apptis on an adjectival level, [redacted]

Though an agency is entitled to pay a higher price for a proposal, it must demonstrate, with a reasonable certainty, that the added value of a proposal is worth the higher price. *See Lockheed Missiles & Space Co.*, 4 F.3d at 959-60. This analysis must be grounded in a qualitative, not quantitative, assessment of the underlying technical differences among the competing proposals. *See Metcalf*, 53 Fed. Cl. at 641; *see also MIL Corp.*, 2004 WL 3190217

at *6-*8; *Shumaker*, 2002 WL 31242197 at *5. The lack of required critical analysis in the Apptis trade-off, and in GSA's trade-off approach generally, is plainly evident throughout the Administrative Record.

## IV. GSA IMPROPERLY EVALUATED THE APPTIS PROPOSAL

### A. Legal Standard

As discussed above, a "contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 383 (2003); *see also Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 569 (2000). "[U]neven treatment goes against the standard of equality and fair play that is a necessary underpinning of the federal government's procurement process." *OTI Am., Inc. v. United States*, 73 Fed. Cl. 758, 776 (2006) (internal quotation marks and citation omitted), *aff'd*, 227 F. App'x 926 (Fed. Cir. 2007). Similarly, it is "beyond peradventure that the government may not rely upon undisclosed evaluation criteria in evaluating proposals." *Banknote Corp. of Am.*, 56 Fed. Cl. at 386 (citing *Acra, Inc. v. United States*, 44 Fed. Cl. 288, 293 (1999)).

### B. GSA Improperly Reduced Apptis' Technical Ranking [redacted] In Violation Of The RFP And The SSP, And Inconsistently With GSA's Evaluation Of Similarly Situated Offerors

Under GSA's Basic Contract Plan evaluation scheme, evaluation team members would assign [redacted] for the Basic Contract Plan factors and subfactors based on the technical standards in Annex D to the SSP. SSP, § 7.4, AR 51-52. These scores were ultimately averaged using the weighted factors (in descending order of importance) outlined in the SSP and the SSDM. *See* Rank Order Memorandum, AR 838-972. [redacted]

However, on July 12, 2007, [redacted] the Source Selection Chair, noted via e-mail that [redacted]

This is in direct violation of GSA's evaluation procedure, as the Basic Contract Plan technical scores were based on simple numerical averages of each of the four individual evaluators, not on a consensus evaluation. *See* Technical Team Memorandum, AR 839, AR 868-944; SSDM Ex. Ca (Basic Contract Plan "Average Evaluation Score"), AR 1008. Further, other similarly situated Offerors were not subject to this improper downgrade.

For example, [redacted]

As there was no provision for [redacted] which was to be based *solely* on the adjectival ratings assigned by individual evaluators in accordance with the RFP and the SSP, the downward adjustment of Apptis on that basis was improper. This adjustment was also improper given that similarly situated Offerors were not subject to the same downward adjustments in score. [redacted]

Further, this adjustment resulted in Apptis being downgraded from [redacted]

[redacted] GSA Improperly Evaluated Apptis' [redacted]

Apptis ultimately received a [redacted] consensus rating of [redacted]

[redacted]

As discussed above, a "contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." *Banknote Corp. of Am.*, 56 Fed. Cl. at 383; *see also Seattle Sec. Servs.*, 45 Fed. Cl. at 569. Moreover, "[u]neven treatment goes against the standard of equality and fair play that is a necessary underpinning of the federal government's procurement process." *OTI Am.*, 73 Fed. Cl. at 776 (internal quotation marks and citation omitted).

Absent the uneven and disparate treatment described above, Apptis would have properly received a rating of [redacted] This misevaluation significantly prejudiced Apptis because Apptis' overall weighted technical ranking [redacted]

D. GSA Improperly Evaluated Apptis For [redacted] When Compared To GSA's Evaluation Of Similarly Situated Offerors

In addition to the misevaluation of Apptis' Schedule subfactor detailed above, GSA also treated Apptis unequally with other Offerors under [redacted] in violation of GSA's obligation to treat offerors equally. *See Banknote Corp. of Am.* 56 Fed. Cl. at 383; *see also Seattle Sec. Servs.*, 45 Fed. Cl. at 569; *OTI Am.*, 73 Fed. Cl. at 776. Specifically, GSA inexplicably and improperly failed to review or analyze the Apptis' [redacted] results to identify the degree to which any perceived risks

were mitigated, or the extent to which individual references were inconsistent with other [redacted] This is in sharp contrast to the Source Selection Exhibits and evaluations for numerous other Offerors, including the Offerors against which Apptis' proposal was compared as part of the GSA "trade-off." [redacted]

[redacted]

GSA's unequal treatment of Apptis as compared with other Offerors under the [redacted] was a violation of GSA's obligation to treat

offerors equally. *See Banknote Corp. of Am.* 56 Fed. Cl. at 383; *see also Seattle Sec. Servs.*, 45 Fed. Cl. at 569; *OTI Am.*, 73 Fed. Cl. at 776. Further, this unequal treatment under [redacted] prejudiced Apptis because, as described above regarding [redacted], a rating of [redacted]

V. GSA'S IMPROPER ACTIONS CAUSED APPTIS SUBSTANTIAL PREJUDICE

Not only was GSA's evaluation of proposals unreasonable, irrational, and inconsistent with the evaluation criteria set out in the RFP, there was a reasonable likelihood that Apptis would have received a contract award but for GSA's errors. *See Wit Assocs., Inc. v. United States*, 62 Fed. Cl. 657, 664 (2004) (citing *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996)).

First, if GSA evaluated Apptis properly in all technical subfactors, as discussed above, [redacted] would have fallen into the range of the top 28 technically-ranked proposals that fell into the presumptive "best-value" award category. *See* SSDM Ex. C, AR 1006-1007. [redacted]

Second, the deep and systematic flaws in GSA's award decision methodology associated with its failure to consider Cost and Price significantly prejudiced Apptis. This is because Apptis' proposal [redacted]

[redacted]

Accordingly, given the significance and scope of GSA's errors in this procurement, and the fact that Apptis would have had a reasonable likelihood of receiving a contract award absent those errors, the Court should grant Apptis the relief requested in its Motion for Judgment on the Administrative Record.

## CONCLUSION

For the foregoing reasons, Apptis respectfully requests that the Court grant its Motion for Judgment on the Administrative Record.

Dated: November 30, 2007

Respectfully submitted,

By: /s/ Richard J. Conway

Richard J. Conway
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
ConwayR@dicksteinshapiro.com (e-mail)

*Counsel of Record for Apptis, Inc.*

Of Counsel:
Justin A. Chiarodo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
ChiarodoJ@dicksteinshapiro.com (e-mail)

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on this 30th day of November, 2007, a copy of the foregoing Consolidated Plaintiff Apptis, Inc.'s Memorandum in Support for Its Motion for Judgment on the Administrative Record was filed electronically under seal. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Justin A. Chiarodo