**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | |
|---|---|
| **SERCO INC.; STANLEY ASSOCIATES, INC. CGI FEDERAL INC.; STG, INC.; ARTEL, INC.; ADVANCED TECHNOLOGY SYSTEMS, INC.; APPTIS INC.; NORTEL GOVERNMENT SOLUTIONS, INC.; and THE CENTECH GROUP, INC.** | **Nos. 07-691C, 07-732C, 07-741C, 07-747C, 07-760C, 07-761C, 07-766C, 07-771C and 07-803C** |
| **Plaintiffs,** | **(Judge Allegra)** |
| **THE UNITED STATES,** | |
| | **REDACTED VERSION** |
| **Defendant,** | |
| **and** | |
| **INDUS CORP.; ELECTRONIC DATA SYSTEMS CORP.; INTERNATIONAL BUSINESS MACHINES CORP.; and GENERAL DYNAMICS ONE SOURCE, LLC,** | |
| **Defendant-Intervenors.** | |

**CONSOLIDATED-PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Gerald H. Werfel
POMPAN, MURRAY & WERFEL, P.L.C.
601 King Street, Suite 400
Alexandria, Virginia 22314
(703) 739-1340 (Telephone)
(703) 739-1342 (Facsimile)
ghwerfel@pompanmurray.com
*Attorney of Record for STG, Inc.*

Of Counsel:
Philip J. Harvey, Esq.
David G. Fiske, Esq.
Adrien C. Pickard, Esq.
FISKE & HARVEY, PLLC
100 North Pitt Street, Suite 200
Alexandria, Virginia 22314

November 30, 2007

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ........................................................................................ 2

STATEMENT OF THE CASE ........................................................................................ 3

ARGUMENT ........................................................................................................... 9

I. Standard of Review ........................................................................................ 10

II. Contrary to law and the requirements of the Alliant Solicitation, the Government failed to take Cost/Price into account in its Award Decision, instead awarding [redacted] Alliant contracts solely on the basis of technical ranking.................. 12

III. The Government's decision methodology was flawed ............................................... 22

IV. In violation of law, the Government arbitrarily and capriciously failed to consider Cost/Price in making its best value trade-off analysis and failed properly to document and explain its reasons for paying a price premium for [redacted] Alliant contract awards. ........................................................................ 25

V. The Government did not compare STG to those other apparent awardees which were technically ranked higher, but were also more costly. ................................................ 31

VI. In violation of law, the Government made its award decisions on the basis of a mechanical comparison of the Offerors' numerical technical ranking without a proper assessment of the underlying qualitative differences among the competing Offerors' proposals. ........................................................................................ 32

VII. The Government's evaluation of STG's proposal for the two non-cost factors (Past Performance and Basic Contract Plan) was unequal in application, failed to consider the superior features of STG's offer and is premised upon arbitrarily contrived

weakness, all of which resulted in unreasonably low ratings for the non-cost evaluation factors. .......... 34

VIII. The Government's violations of law and its failures to comply with Solicitation requirements severely prejudiced STG's chances for award as the [redacted] .......... 40

CONCLUSION .......... 41

# TABLE OF AUTHORITIES

## Cases

*Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000)............. 11

*Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 19 (2005)..................................................... 11

*Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)............. 11, 12, 13

*Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)........................................ 11

*Chapman Law Firm, LPA*, B-293105.6 *et al.*, Nov. 15, 2004, 2004 CPD ¶ 233 at 5.................. 32

*Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996)................................. 11

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) .......................................................................................................................... 11

*Johnson Controls World Services, Inc.* B -289942; May 24, 2002, 2002 WL 1162912, *7 ....... 28

*Magellan Health Services* , B-298912; January 5, 2007, 2007 WL 1469049, *15, 2007 CPD ¶ 81 ........................................................................................................................................ 28

*The MIL Corp.*, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29 at 8 ................................................ 32

*Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)......................................................................................................................... 11

*San Francisco Fire Fighters Local 798 v. City and County of San Francisco*, 38 Cal. 4th 653, 678 n. 3 (2006)................................................................................................................ 22

*ViroMed Labs., Inc. v. United States*, 62 Fed. Cl. 206, 211-12 (2004) ....................................... 11

## Statutes

28 U.S.C. § 1491(b)(4) (2000)........................................................................................... 11

5 U.S.C. § 706.......................................................................................................................... 11

5 U.S.C. § 706(2)(A)................................................................................................................ 11

FAR Part 15.304(c)(1) .............................................................................................................. 13

FAR Part 15.308 ....................................................................................................................... 27

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | | |
|---|---|---|
| **SERCO INC.; STANLEY ASSOCIATES, INC. CGI FEDERAL INC.; STG, INC.; ARTEL, INC.; ADVANCED TECHNOLOGY SYSTEMS, INC.; APPTIS INC.; NORTEL GOVERNMENT SOLUTIONS, INC.; and THE CENTECH GROUP, INC.** | ) | **Nos. 07-691C, 07-732C, 07-741C, 07-747C, 07-760C, 07-761C, 07-766C, 07-771C and 07-803C (Judge Allegra)** |
| **Plaintiffs,** | ) | |
| **THE UNITED STATES,** | ) | **REDACTED VERSION** |
| **Defendant,** | ) | |
| **and** | ) | |
| **INDUS CORP.; ELECTRONIC DATA SYSTEMS CORP.; INTERNATIONAL BUSINESS MACHINES CORP.; and GENERAL DYNAMICS ONE SOURCE, LLC,** | ) | |
| **Defendant-Intervenors.** | ) | |

**CONSOLIDATED-PLAINTIFF'S MOTION FOR JUDGMENT**
**ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims ("RCFC"), the Consolidated-Plaintiff STG, Inc. ("STG") respectfully requests that the Court enter judgment in its favor and grant it the relief it seeks in its Complaint upon the grounds that STG is entitled to judgment as a matter of law based upon the Administrative Record. In support of this motion, STG relies on the Administrative Record ("AR") and the following memorandum of law.

## STATEMENT OF THE ISSUES

1. Whether the Government failed to take Cost/Price into account in its Award Decision, instead awarding [redacted] Alliant contracts based solely on technical ranking.

2. Whether the Government's decision methodology was flawed.

3. Whether the Government arbitrarily and capriciously failed to consider Cost/Price in making its best value trade-off analysis and whether it failed to document and explain properly its reasons for paying a price premium for [redacted] Alliant contract awards.

4. Whether the Government failed to compare STG to those other apparent awardees that were technically ranked higher, but which were also more costly.

5. Whether the Government made its award decisions on the basis of a mechanical comparison of the Offerors' numerical technical ranking without a proper assessment of the underlying qualitative differences among the competing Offerors' proposals.

6. Whether the Government's evaluation of STG's proposal for the two non-cost factors (Past Performance and Basic Contract Plan) was unequal in application, whether it failed to consider the superior features of STG's offer and whether it was premised upon arbitrarily contrived weaknesses.

7. Whether the Government's violations of law and its failures to comply with Solicitation requirements severely prejudiced STG's chances for award as the [redacted] Offeror.

## STATEMENT OF THE CASE

I. Nature of the Case and Course of Proceedings Below

STG, along with eight other disappointed Offerors,[1] protests the 29 Alliant contract awards made by the General Services Administration (the "Government" or "GSA") under Solicitation No. TQ2006MCB0001 (the "Solicitation" or the "RFP"). STG initially filed a protest against the Alliant contract awards with the Government Accountability Office ("GAO"). After the filing of Case No. 07-691C by the initial plaintiff Serco, Inc. ("Serco"), STG's protest at the GAO was dismissed. Three other disappointed bidders, including Serco, filed protests with this Court challenging the Alliant awards prior to STG's filing of this protest. Five others have subsequently filed protests. All of the protests have been consolidated into this one case.

II. Statement of Facts

The Solicitation

The GSA issued the Solicitation on September 29, 2006, calling for offers to provide "Federal government agencies with long term, integrated, Information Technology (IT) solutions for everyday needs on a global basis." AR 128. Detailed requirements were specified in the Statement of Work in Section C of the RFP. Contractors selected for award were to "[p]rovide Infrastructure and related services, Applications and related services, and IT Management Services to support agencies' integrated IT solution requirements." AR 129.

The RFP contemplated award of approximately 25 to 30 Indefinite Delivery/Indefinite Quantity contracts with a five-year base period and one five-year option period (hereinafter the

[1] This case has been consolidated with the protests of eight other Offerors, all of whom allege similar misconduct regarding the methodology underpinning the Alliant awards, including, *inter alia*, that the Government failed to properly consider Cost/Price in its source selection.

"Alliant Contract"). *See* AR 141, 210. Services under the Alliant Contracts were to be provided pursuant to task orders issued by designated Government agencies. *See* AR 170.

The RFP instructed Offerors to submit pricing by contract year and by location (Government Site or Contractor Site) for the labor categories identified in Attachments 2 and 3 to Section J of the RFP. *See* AR 251 – 294. Offerors were told that "[a]ward will be made to responsible Offerors whose proposals are determined to provide the 'best value' to the Government." AR 241. Offerors were also told that "FAR Part 15 competitive negotiation selection procedures utilizing the 'best-value' trade-off approach will be utilized." *Id*.

Two technical evaluation factors – Past Performance and Alliant Basic Contract Plan – were identified in the RFP which were "approximately equal in importance" and "when combined, are significantly more important than Cost or Price … ." AR 241, 243 – 247. The RFP also identified subfactors for each of the two technical evaluation factors. *See* AR 243 – 245. Cost was the third evaluation factor. *See* AR 247 – 248.

The RFP contained detailed evaluation procedures. First, there was to be an "acceptability" review conducted on a "pass/fail" basis. *See* AR 242. Next, if a proposal passed the acceptability review, the proposal was subjected to a technical evaluation. *Id*.

For the Past Performance evaluation, the RFP stated that certain "discriminators" might be used "[i]n the event any Offerors are deemed virtually equivalent." *See* AR 247 – 248. Similarly, the RFP identified other "discriminators" that would be taken into account in evaluating Basic Contract Plan. *See* AR 242.

After the technical evaluation, the RFP required that the Government perform a cost/price evaluation in which the Government was required to "conduct a best value tradeoff in which

differences in non-price factors and evaluated price will be compared between the Offerors in order to determine which Offeror represents the best value to the Government." *Id*.

The RFP further provided that while technical factors were more important than cost or price, "the closer the technical scores of the various proposals are to one another, the more important cost or price considerations become in determining the overall best-value for the Government." *Id.*

On or about November 17, 2006, STG submitted a timely proposal in response to the RFP, compliant with all requirements specified in the RFP and demonstrating STG's extensive Government and commercial contracting experience in providing the types of services to be acquired under the Alliant Solicitation. *See* AR 2617.

<u>The Government's Evaluation and Selection of Alliant Contractors</u>

GSA prepared a Source Selection Plan ("SSP") for the Alliant procurement that was intended "to provide a process and criteria for the selection of awardees for Alliant, mirroring the evaluation criteria and methodology presented in Section M of the Solicitation." AR 980. In accordance with the SSP, there was to be a Source Selection Evaluation Team ("SSET") consisting of a Source Selection Authority ("SSA"), "SSET Chair, Procuring Contracting Officer (PCO), Team Leads, Team Members, and Advisors … ." AR 981.

"Within the organizational structure [for the SSET] were two primary teams – a Technical Evaluation Team (TET) and a Cost/Price Evaluation Team (CPET)." AR 981. "The TET consisted of two subgroups, representing the two technical evaluation factors – the Past Performance Evaluation Team (PPET) and the Basic Contract Plan Evaluation Team (BCPET)." AR 981.

The SSA for the Alliant procurement is [redacted]. *See* AR 981. As the SSA, he "makes the final award decision, based on his independent judgment using the TET and CPET evaluations presented by the SSET Chairs and his own analysis of the information." AR 54. "The SSET Chair and PCO is [redacted]." AR 981. As the SSET Chair, she was responsible for "[p]reparing and providing a briefing on the evaluation results and award recommendations to the SSA … ." AR 981.

"The PPET, BCPET and CPET Team Leads were responsible for . . . the presentation of evaluation results in a narrative report to the SSA." AR 982. Individual Team Members were responsible for "[r]eviewing and evaluating proposals on the basis of solicitation requirements and in accordance with evaluation procedures … [and] [p]reparing thorough narrative justification with facts and findings to support ratings … ." AR 982. "After the evaluations are completed by each evaluator, the team leads will caucus the members to form a Consensus evaluation for each Offeror, that is a single adjectival rating for each Technical factor for each Offeror." AR 52. According to the SSP, "[t]he SSET Chairman will technically rank order the Offerors based on the PPET and BCPET ratings." AR 52.

By letter dated July 26, 2007, the SSET was provided a written description of "the process used to rank order the Offerors that submitted proposal under … Solicitation No. TQ2006MCB0001." AR 839. Exhibit C to the letter "documents the official rank order to be presented to the Source Selection Authority for his perusal and agreement decision." AR 839.

(1) Column A in Exhibit C identifies the "tech rank order" for each Offeror. *See* AR 1006. STG's proposal was identified as number [redacted] in "tech rank order." *See* AR 1006.

(2) Column C in Exhibit C identifies average scores by Offeror for the Basic Contract Plan evaluation factor. *See* AR 1006. Next to each Offeror's name, there is a numerical score

which supposedly "represent[s] the BCP overall average evaluation ratings assigned by the four members of the BCP SSET who evaluated the BCPs." AR 839. STG's proposal received a [redacted] for the BCP evaluation factor. *See* AR 1006.

(3) Column E in Exhibit C identifies average scores by Offeror for the Past Performance evaluation factor. *See* AR 1006. Next to each Offeror's name, there is a numerical score which supposedly "represent[s] the PP consensus evaluation ratings assigned in unison by the PP SSET." AR 840. STG's proposal received a [redacted] for the PP evaluation factor. *See* AR 1006.

(4) Column G in Exhibit C identifies "weighted BCP-PP average scores" for each Offeror. *See* AR 1006. The average weighted score for the Basic Contract Plan and Past Performance evaluation factors for the STG proposal is [redacted]. *See* AR, page 1006.

<u>Award of the Alliant Contracts and STG's Debriefing</u>

By letter dated July 31, 2007, STG was advised that its offer in response to the RFP had not been selected for award, and was provided with a listing of the 29 contractors who had received awards under the RFP. *See* AR 2935 – 2937. STG requested a debriefing, and by letter dated August 20, 2007, received by STG on August 21, 2007 (the "Debriefing Letter"), STG was provided the debriefing required by FAR 15.506. *See* AR 2938 – 2962.

The Debriefing Letter advised STG that its proposal was one of 62 proposals that were fully evaluated, and stated that no discussions had been conducted with any of the Offerors. *See* AR 2938, 2946. The Debriefing Letter also advised that STG had submitted the [redacted] price in response to the RFP. AR 2946. According to the Debriefing Letter, STG's proposal had been ranked [redacted] for Past Performance and [redacted] for the Basic Contract Plan. *See* AR 2946. STG's proposal was ranked [redacted] overall. AR 2946.

According to the Debriefing Letter, the GSA evaluators assigned adjectival ratings, for each proposal, to the two non-cost evaluation factors (Past Performance and Basic Contracting Plan) ranging from "Exceptionally High Confidence" at the high end to "Little or No Confidence" on the low end. AR 2939, 2950 – 2952. For Past Performance, STG's proposal received a consensus rating of [redacted] AR 2958. According to the Debriefing Letter, STG's proposal, received a consensus rating of [redacted] for Basic Contracting Plan.[2] AR 2959.

The Debriefing Letter also discusses the process employed by the Government to determine the 29 contract awardees. "After establishing the technical rank order for all evaluated Offers, the Chair [of the SSET] recommended that the SSA make award to the 28 technically top-ranked Offerors." AR 2945. The 29th award was made "to the Offeror ranked 31st . . . because this Offeror proposed substantially lower prices than any of the other Offerors in that zone . . ." AR 2945.

The Debriefing Letter advises that "the Government conducted a 'best-value" tradeoff, in which differences in non-price factors and evaluated price were compared between the Offerors in order to determine which Offeror represented the best value to the Government." AR 2946. "[T]he closer the technical scores of the various proposals were to one another, the more important cost or price considerations became in determining the overall best-value for the Government." AR 2946. "The Government compared STG's Proposal against the Offerors which were technically-ranked [redacted]." AR 2946 - 2947. According to the Debriefing Letter, "[t]hese Offerors were selected for this

---

2 [redacted] *See* AR 3060.

comparison because they were the next-highest technically ranked Offerors which were selected for an Award which also proposed a total price which was higher than STG's total proposed price. AR 2947. "The Government analyzed the 'discriminators' which were identified in . . . the Solicitation to determine if these discriminators would weigh in favor of an Award for STG . . ." AR 2947.

Protests against the Alliant Contract Awards

On October 26, 2007, and after protests filed with the GAO were dismissed, STG filed a protest with this Court challenging GSA's failure to select STG's proposal for one of the 29 awards made under the RFP. See AR 2981 – 3017; 3065 – 3102. Three other disappointed bidders filed protests with this Court challenging the Alliant awards prior to STG's protest, and five others filed protests subsequent to the STG protest.

## ARGUMENT

The Alliant procurement is the subject of nine protests. It is a complex procurement that represents an effort on the part of GSA to establish multiple award contract vehicles for use by all federal government agencies to cover all of their Information Technology requirements including computers, computer equipment, software, computer support services, for the next ten years. While the procurement itself is complex, the STG protest is not. The GSA violated fundamental rules of Government contracting by excluding low cost, well-regarded and highly rated Offerors like STG from the Alliant award pool and arbitrarily and capriciously downgrading the technical rating assigned to STG's proposal.

In selecting contractors for award of the Alliant contract, GSA was faced with a difficult task – [redacted]. The Alliant procurement attracted the best and most-experienced IT providers in the industry, all

eagerly competing for up to $50 billion worth of Government business spread over the next ten years. Making distinctions among a large pool of well-qualified and evenly-matched contractors was a daunting task, and unfortunately the record in this case demonstrates that GSA was overmatched.

In the end, GSA made distinctions [redacted]. It adopted a ranking scheme that deviated from its own Source Selection Plan and placed primary emphasis on numerical point scores rather than adjectival ratings. Under this scheme, [redacted]. More troublesome was GSA's total disregard for price. [redacted] Without even attempting to explain why, the GSA simply concluded that technical rank should determine the winners of 28 of the 29 Alliant contracts.

As discussed below, the evaluation and selection process utilized by GSA violated basic principles of Government contracting, placing low-priced contractors like STG at an extreme disadvantage. Moreover, STG's chances of award were further reduced because of an evaluation that clearly penalized STG for imagined weaknesses in its proposal. Properly evaluated, and even under GSA's distorted scheme for making award, STG's proposal should have been in line for an award. The myriad of mistakes made by GSA have tainted the awards already made, and those mistakes must now be corrected to ensure that best value Offerors like STG receive proper consideration.

## I. STANDARD OF REVIEW

It is well settled that "this court's review of an agency's decision regarding a contractual solicitation or award takes place in accord with standards set forth in the Administrative

Procedure Act, 5 U.S.C. § 706." *Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 19 (2005); *ViroMed Labs., Inc. v. United States*, 62 Fed. Cl. 206, 211-12 (2004); *see also* 28 U.S.C. § 1491(b)(4) (2000) ("In any action under this [bid protest] subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). In ruling on a motion or cross-motions under RCFC 52.1 the issue is whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The court must make fact findings where necessary. *Id.* The resolution of RCFC 52.1 cross-motions is akin to an expedited trial on the paper record. *Id.*

Accordingly, the court must determine whether the contracting agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bannum*, 404 F.3d at 1351; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000). The plaintiff bears the burden of proving the arbitrary and capricious nature of the agency action, by a preponderance of the evidence. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citation omitted). "Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts." *ViroMed Labs.*, 62 Fed.Cl. at 212 (citing *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The court should overturn the challenged decision if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

"When a challenge is brought on the first ground, the test is whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Banknote Corp of Am.*, 365 F.3d at 1351 (internal citations omitted). "When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations." *Id*.

## II. CONTRARY TO LAW AND THE REQUIREMENTS OF THE ALLIANT SOLICITATION, THE GOVERNMENT FAILED TO TAKE COST/PRICE INTO ACCOUNT IN ITS AWARD DECISION, INSTEAD AWARDING TWENTY-EIGHT OF THE TWENTY-NINE ALLIANT CONTRACTS SOLELY ON THE BASIS OF TECHNICAL RANKING.

### A. The Government is required to consider Cost/Price in every procurement.

The Government must consider Cost/Price in every procurement, even in those situations where award will be based on best value. *See* 41 U.S.C. § 253a(c)(1)(B); *see also* FAR Part 15.304(c)(1) In this best value Solicitation, the Government was required to assess whether [redacted]. Despite the fact that the Solicitation placed an emphasis on the non-cost evaluation factors, the Government was still required to take Cost/Price into account and justify the price premiums being charged by those Offerors with higher total evaluated prices than those proposed by Offerors like STG. *Id*. The Government has erringly transmogrified this emphasis into its sole decision criterion, as discussed in more detail below, creating an insurmountable preference in favor of those bidders with higher average technical scores.

The Government's award decision failed to consider Cost/Price, instead relying entirely on the rankings created by comparing the Offerors' average technical scores. Clear evidence of this is the Government's decision to award contracts to the 28 Offerors with the highest average

technical score. *Compare* AR 997 *with* AR 1006. Additional evidence of the Government's failure to consider price is discussed in more detail below. Because the Government failed to consider Cost/Price in making its award decisions, they lack a rational basis and are in violation of law, the FAR and the Solicitation. 41 U.S.C. § 253a(c)(1)(B); FAR Part 15.304(c)(1); *see also Banknote Corp. of Am.*, 365 F.3d at 1351. As a result of the Government's failure to consider Cost/Price in making its award decision, STG, as the bidder offering the fifth lowest price, has been competitively prejudiced.

B. The technical scores [redacted].

The Government used adjectival ratings to evaluate the Offerors' technical merit. These adjectival ratings included "EH" which represented an *exceptionally high* confidence in the criterion and was equated with a numerical value of "5". AR 992. "S" represented *significant* confidence and was equated with a numerical rating of "4". *Id.* "A" represented *acceptable* confidence and was equated with a numerical value of "3". *Id*. "M" represented *marginal* confidence and was equated with a numerical value of "2". *Id.* "N" represented *little to no* confidence and was equated with a numerical value of "1". *Id.*

Thus, Offerors receiving an average technical rating between 4.501 and 5.0 would merit an overall average technical rating of "EH."[3] Offerors receiving an average technical rating between 3.501 and 4.5 would merit a rating of "S." Those with an average technical rating between 2.501 and 3.5 would merit a rating of "A." Those with an average technical rating

[3] The Government does not define how a specific numerical score relates to the adjectival ratings. However, Attachments 3 (AR 868 – 878) and 4 (AR 945 – 955) reveal that the Government relies on the same adjectival rating system *vis a vis* the numerical score obtained by a particular bidder. In these Attachments, the Government gives bidders receiving numerical scores of 4.501 or better an adjectival rating of "EH" (*see, e.g.* AR 869 – [redacted]), and scores of 3.501 through 4.5 are given an adjectival rating of "S" (*see, e.g.* AR 869 – [redacted]). This division is the same for "A" (2.501 through 3.5) and for "M" (1.501 through 2.5).

between 1.501 and 2.5 would merit a rating of "M" and those with an average rating below 1.5 would merit a rating of "N".

Exhibit C to the SSDM (AR 1006) identifies the rankings for the Alliant Offerors based on the average technical scores and shows that [redacted].

Thus, the [redacted] These [redacted] Offerors fall into a range for which the Government adjectivally ascribes the same level of confidence. In turn, this indicates that the [redacted]. *See* AR 242. This did not happen.

Because all Offerors were "acceptable," each could be expected to satisfactorily perform the requirements specified in the RFP. Moreover, because [redacted]

[redacted]. As is evidenced by the Government's decision to award contracts to the 28 Offerors with the highest average technical scores and its apparent total failure to consider price in making the award decisions, the Government has violated the Solicitation and the FAR. It has no rational basis on which to make such an award without considering Cost/Price. For this reason, STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced and the protest should be sustained.

C. The SSA failed to consider Cost/Price.

The SSA was under an obligation to exercise his independent judgment in determining the technical merit of the various proposals; performing a best value tradeoff to determine whether the increased Cost/Price of the higher ranked, higher priced proposals was worth the increased technical merit; and making awards based on his own analysis. The SSA eschewed these obligations when he made his award decisions without taking Cost/Price into consideration and adopting wholesale the recommendations of the SSET. AR 997 ("[redacted]").

Indeed, the SSA's task was a difficult one. This is acknowledged by the SSA in the SSDM, where he notes how challenging the selection process was, due in large part to the fact that there were 62 competent and qualified Offerors with the necessary technical capabilities to perform the tasks required by the Government under the Alliant procurement. AR 997. Despite this difficulty, the SSA was not relieved of his duty to review and consider all of the various strengths and weaknesses of each Offeror thoroughly in contention for award. This included not just those top 28 Offerors, but each bidder that had passed the acceptability review and demonstrated its capability to perform an Alliant contract. Capitulating to the heavy burden he

faced, the SSA abdicated his obligation to review each offer to determine which ones provided the Government with the best value. Instead, he simply adopted the suggestion of the SSET and made an award (without regard to Cost/Price) to the 28 bidders with the highest average technical scores. The record is devoid of any meaningful explanation for his failure to act independently or for his decision to award contracts without regard to Cost/Price. For this reason, STG, as the Offeror with the [redacted] total evaluated price, was competitively prejudiced and the protest should be sustained.

D. The Government's perceived relationship between Cost/Price and technical merit does not justify making individual awards without performing a complete best value analysis.

The Government contends that it viewed the proposals as "arrayed along a continuum reflective of their strengths and weaknesses, in technical quality and price." AR 998. The Government uses this assertion to support its faulty conclusion that the top 28 technically ranked Offerors represented the best value proposals for Alliant. Its first mistake is in concluding that there is a smooth inversely proportional gradient *between* total evaluated price and average technical score. The Government erroneously concludes that as price decreases, so too does technical merit. On this basis, it chooses to award contracts to the 28 Offerors with the highest average technical score, [redacted].

Specifically, [redacted] were given "free-rides" to charge prices well in excess of those offered by other bidders. The Government's faulty assumption that high price equated with high technical quality and *vice versa* inexorably led to its decision to award the Alliant contracts without regard to cost.

To demonstrate the inherent flaws with the Government's analysis, STG has prepared Exhibit A, which demonstrates the relationship between total evaluated price and average technical merit. Exhibit A shows what the Government should expect to receive, in terms of technical merit, in return for each dollar it spends. As set forth in Exhibit A, [redacted]. *See* Exhibit A (Price vs. Average Technical Points). Indeed, in this best value Solicitation, the Government was permitted to give technical scores significant weight. However, [redacted].

While it never defines how much weight it intended to or actually did ascribe to average technical score, it is clear that the Government failed to take into account the relationship between Cost/Price and technical merit. As shown in Exhibit A, [redacted]. *See* Exhibit A. STG, with a [redacted]. *Id.* This contrasts with [redacted]. [redacted].

Another means of demonstrating the Government's failure to recognize the overall relationship between price and technical merit is shown in the chart attached as Exhibit B. In Exhibit B, plaintiff has calculated the percentage technical advantage that each awardee enjoys over STG. Plaintiff has also calculated the percentage price premium over STG's [redacted] which each awardee has proposed. The result is that, with regard to STG, [redacted]

[redacted]. More specifically, Exhibit B demonstrates that, [redacted].

For example, [redacted], is shown to enjoy a [redacted] technical premium over STG. However, this technical premium comes at significant cost. In order to obtain this [redacted] technical advantage, the Government must pay a nearly [redacted] price premium, a factor of over [redacted]. Other egregious examples include [redacted]. In each of these examples, [redacted]. The Government has failed to explain how and why [redacted]. For this reason, the Government's award to these companies (and the others listed in Exhibit B) has no rational basis and it is a violation of the

Solicitation and the FAR. STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced and the protest should be sustained.

E. The Government unlawfully and improperly created an award presumption in favor of Offerors with higher average technical scores.

Offerors were told that the Government would place an emphasis on technical merit in deciding the winners of the Alliant competition. AR 241. This emphasis, however, did not excuse the Government's decision to disregard Cost/Price differentials among the Offerors or justify the award preference extended to Offerors with higher average technical scores. AR 242. Nonetheless, this is exactly what the SSA did. In fact, the Government makes quite clear the presumption that is extended to those Offerors whose average technical score landed them in the top 25. AR 2945 ("[T]hose Offerors which were ranked in the [redacted] based on their Technical Proposals had a reasonable expectation for Award."); *also compare e.g.*, 2899 ("Since GS will award only 25 to 30 contracts, an Offeror ranked [redacted] on technical merit would be expected to receive an award.") to 2946 ("… an Offeror ranked [redacted] on technical merit would not be expected to receive an award.").

This award preference unfairly prejudiced lower Cost/Price Offerors who judiciously chose ***not*** to gold plate their proposals with extravagant technical features (choosing instead to provide the Government with lower cost alternatives that still met the Government's needs), placing them in the unfair position of having to "unseat" presumptive awardees. After the initial average technical scores were computed and the nominal rankings were established (*see* AR 1006), the Government's failure to give any consideration to Cost/Price made it virtually impossible for these lower ranked Offerors to "unseat" any of the proposed awardees, turning the best value competition into one based solely on technical merit. The Government's decision to

give contracts to the 25 Offerors with the highest average technical score had no rational basis in either logic, the Solicitation or the FAR, and violated the latter two. For this reason, STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced and the protest should be sustained.

F. To the extent the Government considered price at all, it failed to re-rank the Offerors, ensuring that every Offeror ranked 1 through 25 technically would receive an award regardless of price.

After the Government ranked the Offerors based on their average technical scores, creating a set of nominally presumptive awardees, it failed to re-rank the awardees taking Price/Cost into account. Notably absent from the Administrative Record is a spreadsheet similar to those in Attachment 3 (*see* AR 1006 – 1010), which factored in Cost/Price and would have resulted in apparent awardees being moved up or down in their relative rankings. The importance of this missing spreadsheet is not lost on STG, who also views this as *de facto* and direct evidence of the Government's outright failure to consider Cost/Price in making its award decision. As a result, Offerors with higher technical scores received less scrutiny than those Offerors closer to the margins (*i.e.*, 25 – 28). Not coincidentally, these Offerors proposed lower prices. The upshot of this was to minimize the impact that price had on these marginal comparisons.

For example, [redacted]

[redacted].

STG, which ranked [redacted], was compared only to [redacted]. While its price was better than all of these Offerors, [redacted]. While STG contends that this [redacted] was excessive, considering [redacted], the more general impact of the Government's failure to re-rank the other awardees is that STG, along with certain other awardees, was never compared to other bidders with pricing well in excess of what was proposed by those Offerors in this "danger zone." [redacted], for example, were not scrutinized nearly as clearly as [redacted]. Neither was [redacted] for that matter. These Offerors were given, more or less, a "free ride." If STG's proposal was critically compared to these higher priced Offerors, the Government would have recognized that the higher prices proposed were not justified by [redacted]. The Government's failure to re-rank the Offerors after taking price into account meant that those Offerors in the top 25 technically were guaranteed an award. The Government's failure in this regard has no rational basis and is arbitrary and capricious. STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced by the Government's failure and the protest should be sustained.

G. The Government has the best value analysis backwards

To the extent that the Government conducted a best value analysis, it did so backwards. Instead of determining whether the increased prices of certain Offerors were justified by their higher technical scores, the Government instead considered whether certain Offerors' lower prices were worth the decrease in their average technical scores. *See e.g.*, AR 2933 ("[redacted]"). This backwards analysis has no rational basis. STG has been competitively prejudiced by this backwards analysis, and the protest should be sustained.

## III. THE GOVERNMENT'S DECISION METHODOLOGY WAS FLAWED

As part of the Government's award decision, it attempted to determine the reasonableness and fairness of the Cost/Price of each Offeror by comparing the loaded hourly rates of each offer to one another and to the Independent Government Cost Estimate ("IGCE") and by comparing each Offerors' proposed price to the mean (average) total evaluated price of all Offerors. AR 2944. These two comparison methods are faulty indicators of reasonableness or fairness and the Government's utilization of the methods was arbitrary and capricious.

First, the Government calculated the mean price of all of the offers, and then determined each offer's percentage difference from the mean. AR 2944. The mean price for all Offerors was [redacted], establishing a middle point from which other Offerors' deviation would be compared to determine reasonableness. Thereafter, the Government broke the Offerors into two groups: (1) those that fell within one standard deviation[4] of the mean price; and (2) those that fell outside of one standard deviation of the mean price. *See* AR 1010. Those falling within one

[4] "In a normal distribution, a standard deviation encompasses plus or minus 34 percent of the scores, or 68 percent total, and two standard deviations are plus or minus 48 percent, or 96 percent of the total." *San Francisco Fire Fighters Local 798 v. City and County of San Francisco*, 38 Cal. 4th 653, 678 n. 3 (2006) (internal citations omitted).

standard deviation of the mean were considered favorably. AR 2944. Those falling two or more standard deviations above the mean were not.

The Government also compared the various Offerors' prices to the IGCE, which was established as [redacted]. *See* AR 2929. The Government established that "[t]hose Offerors under the IGCE were considered favorably." AR 992. Logically, those Offerors who were above the IGCE were not considered favorably, as this was *prima facie* evidence of the particular proposed price's unreasonableness.

The first problem with this methodology for determining reasonableness is that the IGCE [redacted]. S*ee* AR 2929.

Secondly, [redacted]. Thus, the IGCE is a poor indicator of fair and reasonable pricing. Rather, it more properly should have been considered a marker for maximum allowable price. Still, the Government views an Offerors' price in relation to the IGCE as one of the hallmarks of reasonableness.

The third problem with this analysis is that the "standard deviation" methodology merely captures those offers with prices that were either [redacted] above or below the mean price ([redacted]) and which were [redacted] above or below the mean price, but outside of [redacted], ([redacted]). With prices ranging from [redacted] as the lowest priced proposal to [redacted] as the highest priced proposal, the standard deviation method renders such a comparison meaningless. For example, a company with a proposed price of [redacted] and a company with a proposed price of [redacted] each fall within one standard

deviation from the mean price. [redacted]. In addition, according to the Government, both of these prices are fair and reasonable, despite the fact that nearly [redacted] separates the two offers. This is remarkable in a Solicitation in which the highest price proposed by any Offeror was [redacted].

[redacted]. The standard deviation analysis leads to the conclusion that nearly all of the proposed prices are reasonable, even in cases where the proposed price is more than [redacted] than the average price of all proposals.

[redacted]. This leads to the incongruous result of the same proposals simultaneously being reasonable and unreasonable. The methods used by the Government to determine fair and reasonable pricing had no rational basis and were arbitrary and capricious.

Even if the price analysis methodology adopted by the Government were sound, in the end, it played no role in determining the Alliant awardees. To the extent that certain higher technically ranked proposals failed the price tests or strayed from the established deviations, the Government abandoned the tests where such proposed high prices belonged to Offerors who also had average technical scores that placed them among the top 28. [redacted]. Because of their high technical scores of these Offerors, the Government disregarded their *per se* unreasonable prices, eschewing its established methods for determining fairness, instead arbitrarily and capriciously justifying the extreme prices of these

three Offerors by stating, in conclusory fashion, that their technical merit was "well worth" the higher price, and by stating that their price proposals reflected actual costs. AR 998. For this reason, STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced and the protest should be sustained.

## IV. IN VIOLATION OF LAW, THE GOVERNMENT ARBITRARILY AND CAPRICIOUSLY FAILED TO CONSIDER COST/PRICE IN MAKING ITS BEST VALUE TRADE-OFF ANALYSIS AND FAILED PROPERLY TO DOCUMENT AND EXPLAIN ITS REASONS FOR PAYING A PRICE PREMIUM FOR TWENTY-EIGHT OF THE TWENTY-NINE ALLIANT CONTRACT AWARDS.

A. The Government is unreasonably, arbitrarily and capriciously willing to pay Offerors, with [redacted]

Recognizing that the technical factors were to be significantly more important than Cost/Price, the Government failed to identify how much weight it gave to the technical factors and also failed to state at what point the technical factors became so close to one another that Cost/Price became more important. Furthermore, even in cases where the technical scores were very close, there is no indication of how much weight the Government gave to Cost/Price.[5] In fact, based on the Administrative Record, it appears that no weight was given to Cost/Price.

While the Solicitation does not say how much weight Cost/Price was to be given, it is reasonable to assume that the technical factors in an offer may be worth as much as [redacted] as the cost factors,[6] [redacted]. Evaluating the

---

[5] Regardless of whether the Government defined, numerically, how much weight the various factors would be given under various scenarios, it seems obvious that the Government was required to consider Cost/Price to *some* degree. In addition, the Government's failure in this regard does not rob the Court of its ability to use reason and common sense in determining what weight *should have* been given to these factors in both scenarios. For many of the contracts awarded under this Solicitation, however, the only way in which the Government can justify the disparities between technical merit advantages and the price premiums charged by those companies is to minimize Cost/Price to such a degree as to render it, effectively, a non-factor.

[6] The "factor" terminology is used as a means to describe the number of times that technical merit would need to be counted to justify relative increases in price. For example, if a Offeror A (scoring a 4.0 on average technical merit

awardees, and assuming a factor of [redacted] is a reasonable premium to place on technical merit, STG is a better value to the Government than [redacted].[7] *See* Exhibit B. However, as the technical scores become closer, the impact of Cost/Price becomes more important. Assuming that the technical to Cost/Price factor is reduced to two where technical scores are closer [redacted], STG represents a better value than [redacted].[8] Under this analysis alone, STG is able to unseat [redacted], giving it a very good chance for award.

Focusing more closely [redacted] that the Government determined were technically ranked close enough to STG[9] to merit a closer inspection via a best value tradeoff analysis, [redacted], it is clear that the Government has not conducted an adequate best value analysis and is overpaying for the minimal incremental technical advantage proposed by these Offerors.[10] Using even the most conservative estimates, with the Government giving technical merit an advantage of being worth [redacted] that of Cost/Price (keeping in mind that the technical scores of these [redacted] differed by [redacted] ([redacted]), the only company to survive this analysis and not be displaced is [redacted]

---

and offer a price of $40 Million) were compared to Offeror B (scoring 3.5 on technical merit, but offering a price of $30 Million), award could only be justified to Offeror A only if the technical scores were counted as being worth at least 2.35 times (or a factor of 2.35) as much as Cost/Price. The comparison is derived by calculating the percentage technical advantage enjoyed by Offeror A ((4.0 – 3.5)/3.5)% and also calculating the percentage price premium being proposed by Offeror A ((40M – 30M)/30M)%. These figures are compared to determine how many times the technical factors must be counted in order to justify the price premium.

[7] These Offerors are [redacted]

[8] These Offerors are [redacted].

[9] Although the Government advised STG that its offer had been compared to 11 other Offerors who were ranked technically higher who also had higher prices, STG's individual tradeoff analysis, shown at Exhibit 45 to the SSDM, reflects an analysis to only [redacted].

[10] This tradeoff analysis, as discussed more fully below, was a wholly inadequate sham designed only to bolster and reinforce the Government's predetermined decision of award to those 28 Offerors with the highest average technical scores.

[redacted].

Thus, the Government has determined, without any substantive analysis or explanation, that [redacted], thus concluding that [redacted]. *See* Exhibit B. [redacted]. The Government has not explained or defined how much more importance technical merit considerations are given over Cost/Price. Under the criteria specified in the Solicitation, it is patently unreasonable to give technical merit [redacted], as much importance as Cost/Price, [redacted]. STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced by the arbitrary and capricious weight given to technical merit versus price in its award decision. The Government's decision has no rational basis. For these reasons, the protest should be sustained.

B. The Government failed to document its tradeoff analysis.

In accordance with FAR Part 15.308, the SSA was required to document his rationale for tradeoffs and the purported benefits associated with additional costs. To the extent that it can be said that the Government performed a tradeoff analysis, the required supporting documentation is conspicuously missing from the Record. *See Id*. Throughout the SSDM, the SSA does little more than pay lip service to the requirement for a substantive analysis of how and why the proposals with higher prices than STG were worth the price premium. The Government exerts considerable effort to establish the technical superiority of certain Offerors, but spends little time

or effort explaining why perceived benefits based on minor, incremental difference in technical scores were worth the higher prices being proposed. Instead, the Government makes conclusory statements that certain awardees were a better value than STG in ways that are unsupported by fact or reason.

The SSDM contains no substantive analysis comparing the technical advantages of the higher priced Alliant awardees in relation to STG's proposal. Moreover, there is no analysis of why these perceived benefits (whatever the Government thinks they are) are worth the higher cost. Rather, the methodology used by the Government, as discussed in more detail below, failed to give credit to STG's lower priced offer, instead focusing solely on the technical attributes of the awardees' proposals without regard to their Cost/Price. In essence, the SSA simply concluded that technical merit was worth the extra price, whatever the price. *See* AR 973 – 1013, 2925 – 2933, 2938 – 2948.

These types of conclusory statements are insufficient to document the type of analysis required under a best value tradeoff. *See Magellan Health Services* , B-298912; January 5, 2007, 2007 WL 1469049, *15, 2007 CPD ¶ 81; *Johnson Controls World Services, Inc.* B -289942; May 24, 2002, 2002 WL 1162912, *7. As such, STG has been competitively prejudiced, the protest should be sustained and the Court should take corrective action to award STG an Alliant contract.

C. The Government's tradeoff analysis methodology was faulty, circular and designed only to support the Government's predetermined conclusion that higher technically ranked Offerors deserved awards.

The Government's methodology for comparing STG's proposal to other higher ranked, higher cost proposals was a sham. Only a few Offerors were selected for the comparison.

Notably, the Government failed to compare STG to [redacted]. Rather, the Government chose [redacted]. By artificially limiting the comparative sample size, the Government was, in effect, able to minimize the [redacted] by STG over the [redacted] that Offered [redacted] prices than STG. As shown in Exhibit B, the Government failed to give appropriate weight to price as the differences in technical scores narrowed, although the Solicitation made clear that, as technical scores drew closer together, total evaluated price became more and more significant. *See* AR 992. The Government arbitrarily ignored the Solicitation, [redacted], even among these closely ranked Offerors, in an effort to justify the price premiums charged by the Alliant awardees. *See* Exhibit B.

The Government failed to compare STG's proposal to: [redacted]. GSA's failure to compare these high priced Offerors to the STG offer deprived STG of any real chance of receiving an Alliant award. What is so offensive here is that these awardees' prices were [redacted]

[11] Although the Debriefing Letter advised STG that its proposal had been compared against 11 others, the Administrative Record reveals that eight of the comparisons were superficial at best and were actually conducted in conjunction with other Offerors' best value tradeoffs. *See* AR 2925 – 2933.

[redacted].

The actual comparisons made by the Government ([redacted]) also failed to consider price. *See* AR 2929 – 2933. Notably missing from the Government's discussion of the various strengths and weaknesses of the STG proposal was any discussion of how the STG proposal compares in terms of Cost/Price. The Government makes no attempt to perform a tradeoff analysis of the perceived strengths in the [redacted] proposals in an effort to justify the higher prices these companies proposed to the Government. The closest that the Government comes to such analysis is to note STG's lower price, but dismissively conclude (without any real analysis) that STG's "lower price was associated with lower technical merit" (AR 2930) and that "[t]hough STG's proposed price was on the low side ... the Government determined that STG's technical merit was not worth its lower price … ." AR 2933.

In essence, all the Government did when it compared STG's proposal to the proposals of [redacted], all it did was compare technical merit. Not surprisingly, the Government concludes that each of those [redacted] are better than STG. This was inevitably foretold by their higher average technical score, which was established well in advance of the purported tradeoff analysis. The Government makes no attempt to determine if the competing Offerors are a better value than STG, just whether they were technically superior, a conclusion which was assumed in the premise of the tradeoff analysis.

Further compounding the problem, the Government made a half-hearted attempt to compare the Offerors by reviewing their respective individual discriminators. The purpose of using these discriminators is to determine, between two adjectivally equivalent Offerors, which one is truly better. In this case, however, the Government has already concluded which Offerors

are technically superior. Considering that the discriminators form the basis for the ultimate technical scores given to each Offer, the use of the discriminators as a second level of analysis only operates to penalize STG a second time for not having high marks in certain technical areas. If STG had lower technical marks in the upper level categories of Past Performance and Basic Contract Plan (which lower marks prevented STG from enjoying a presumption in favor of award), it was impossible for STG to overcome this obstacle by looking at the discriminators. The analysis will show only one thing – that [redacted] are technically superior – again, something which the Government had concluded before it began the analysis.

The Government has merely concluded, without any analysis, that better technical scores justified the increased proposed price, without any real consideration of what that increase in price was, and whether the minor technical advantages enjoyed by the apparent awardees were worth the additional cost. The Government's award decision was arbitrary, capricious and without rational basis. For this reason, STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced, the protest should be sustained.

## V. THE GOVERNMENT DID NOT COMPARE STG TO THOSE OTHER APPARENT AWARDEES WHICH WERE TECHNICALLY RANKED HIGHER, BUT WERE ALSO MORE COSTLY.

A proper analysis of the overall value of STG's offer, relative to the value of the Alliant awardees, required nothing less than a comparison between STG and *every* other Offeror selected for award with a higher technical score and a higher price. This comparison is necessary to determine whether those individual higher evaluated prices are justified by higher average technical merit.

STG had a lower price than [redacted] awardees.[12] In STG's Debriefing Letter, the Government states that it only compared STG's offer to only [redacted] other awardees, those ranked

12 [redacted]

"[redacted]." AR 2946 – 2947. Even by its own account, the Government failed to consider whether [redacted] apparent awardees were worth the [redacted] by those Offerors. This is not a minor oversight. Rather, it is a glaring failure to perform one of the most basic comparisons required to make a proper best value tradeoff analysis, as required by the Solicitation and the FAR.

The Government's failure to compare STG to every awardee with a higher price has no rational basis, rendering its award decision arbitrary and capricious. For this reason, STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced and the protest should be sustained.

## VI. IN VIOLATION OF LAW, THE GOVERNMENT MADE ITS AWARD DECISIONS ON THE BASIS OF A MECHANICAL COMPARISON OF THE OFFERORS' NUMERICAL TECHNICAL RANKING WITHOUT A PROPER ASSESSMENT OF THE UNDERLYING QUALITATIVE DIFFERENCES AMONG THE COMPETING OFFERORS' PROPOSALS.

It is unlawful for the Government to make award decisions on the basis of a mechanical comparison of the Offerors' numerical technical ranking without a proper assessment of the underlying qualitative difference among the competing Offerors' proposals. *See The MIL Corp.*, B-294836, Dec. 30, 2004, 2005 CPD ¶ 29 at 8; *see also Chapman Law Firm, LPA*, B-293105.6 *et al.*, Nov. 15, 2004, 2004 CPD ¶ 233 at 5. In this case, the Government has slavishly awarded contracts to the 28 Offerors with the highest average technical score, completely ignoring the underlying qualitative differences between the Offerors and ignoring the fact that the [redacted]

[13] As discussed above, the Government's comparison of STG with eight of these eleven awardees was devoid of any real analysis, and was not an evaluation with an eye towards providing STG with award.

[redacted]. Each of the Offerors was very similar to one another, in terms of technical quality being offered to the Government.

The Government blindly considers [redacted]. The Government relies [redacted]. There is a mere [redacted] Offeror.

The SSA's unquestioning reliance on the ranking system placed too much emphasis on the separation (*i.e.*, [redacted]) of the Offerors, and ignores the qualitative differences between the Offers (*i.e.*, the fact that the [redacted] Offeror). It also insulated companies like [redacted] from any critical analysis of its [redacted], which suffered from a [redacted]. Based solely on the ranking system, it is easy to assume that STG would never be able to unseat [redacted]. However, when considering the underlying qualitative differences between [redacted] in conjunction with STG's [redacted] STG's value becomes easy to recognize.

The Government's failure to consider the qualitative differences among the Offerors, instead relying solely on numerical scores and rankings of the Offerors has no rational basis and

is arbitrary and capricious. For this reason, STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced and the protest should be sustained.

## VII. THE GOVERNMENT'S EVALUATION OF STG'S PROPOSAL FOR THE TWO NON-COST FACTORS (PAST PERFORMANCE AND BASIC CONTRACT PLAN) WAS UNEQUAL IN APPLICATION, FAILED TO CONSIDER THE SUPERIOR FEATURES OF STG'S OFFER AND IS PREMISED UPON ARBITRARILY CONTRIVED WEAKNESSES, ALL OF WHICH RESULTED IN UNREASONABLY LOW RATINGS FOR THE NON-COST EVALUATION FACTORS.

A. The Government's evaluation of the Offerors' Basic Contract Plan and Past Performance were uneven.

The Government stated in the Solicitation that Basic Contract and Past Performance would be weighed equally. AR 241. The Government's numerical scoring for Basic Contract Plan carried over scores from the subfactors [redacted]. *See* AR 1008. Past Performance, on the other hand, was scored differently, with the numerical scores deriving from higher level agreed upon adjectival ratings, resulting [redacted]. *See* AR 1009. [redacted].

STG was one of the Offerors ranked [redacted] on Past Performance. However, [redacted]. Because the Government made its decision based solely on the final average technical ranking of the Offerors, STG was never given proper recognition of this high score. [redacted] became, essentially, meaningless in the

Governments' analysis and ranking of STG. In fact, after Basic Contract Plan was factored into the scores, STG ended up being ranked [redacted] overall, despite its Basic Contract Plan rank of [redacted] and its Past Performance rank of [redacted]. Because the Government simply lined the scores up and placed every Offeror rank and file, STG was relegated to bottom tier status, ranked in the [redacted], even though its average ranking was closer to the [redacted]. The Government's uneven evaluation system had no rational basis and was arbitrary and capricious. STG, as the Offeror with the [redacted] total evaluated price, has been competitively prejudiced and the protest should be sustained.

B. The Government failed to consider the superior features of STG's offer and is premised upon arbitrarily contrived weaknesses.

**1. STG's "Past Performance" merited a rating of Exceptionally High confidence.**

The Past Performance portion of STG's proposal clearly warranted a rating of [redacted], but instead it was rated [redacted] Exhibit 2 to the Debriefing Letter identified numerous strengths for each of the various Past Performance subfactors, which should have boosted STG's rating, and [redacted] which no doubt lowered STG's rating. *See* AR 2958. Upon review of the Administrative Record, it is clear that the GSA's evaluation of STG's Past Performance was both unreasonable and unsupported.

*a. Quality of Service.*

[redacted]

[redacted]

*b. Schedule.*

[redacted]

*c. Cost Control.*

[redacted]

[redacted]

*d. Business Relations.*

[redacted]

*e. Subcontract Management /Socioeconomic Goals.*

[redacted]

[redacted]

[redacted]

*f. Consensus Rating*

As discussed above, STG's proposal should have been scored [redacted] for each of the five Past Performance subfactors. Accordingly, the consensus rating for the "Past Performance" factor should have also been [redacted]

**2. The GSA-Alliant evaluators unreasonably downgraded STG's rating for the "Basic Contract Plan" factor.**

STG's proposal was rated [redacted] for Basic Contract Plan even though the evaluators did not find [redacted] in this portion of the STG proposal. The evaluators did, however, identify a [redacted]. *See* the discussion of the "Corporate Commitment" subfactor at AR 2960. The evaluators also identified many [redacted] in STG's Basic Contract Plan. Notwithstanding the many positive aspects of STG's Basic Contract Plan, the evaluators merely found the Plan [redacted].

The discussion in the Debriefing Letter merely consists of conclusions, and lacks any explanation of how a proposal with [redacted] could be rated just [redacted] In fact, that discussion merely parrots the evaluation

standards identified in Exhibit 1 to the Debriefing letter. The rating for this factor is not consistent with the summary comments made by the evaluators, and does not give STG credit for [redacted] they made. Under these circumstances, it is clear that STG's proposal deserves a rating of not less than [redacted] for its Basic Contract Plan.

## VIII. THE GOVERNMENT'S VIOLATIONS OF LAW AND ITS FAILURES TO COMPLY WITH SOLICITATION REQUIREMENTS SEVERELY PREJUDICED STG'S CHANCES FOR AWARD AS THE [redacted] OFFEROR.

STG submitted the [redacted] price; STG submitted a proposal that even GSA admits warranted a rating of [redacted] for Past Performance and [redacted] for Basic Contract Plan. [redacted] Offerors selected for one of the Alliant contract awards received the same rating as STG for Basic Contract Plan; [redacted] awardees received the same rating as STG for Past Performance and [redacted] received lower ratings. Only [redacted] awardee offered a lower price than STG. And yet, STG's proposal was not one of the chosen for award. These facts by themselves demonstrate that the selection methodology utilized by GSA was fatally flawed.

While best value procurement allows the Government to pay a price premium for technical merit, best value is not an excuse to disregard cost. Something is wrong when an Offeror like STG, that is capable and qualified, offers an [redacted] and provides a proposal that [redacted] to any number of offers selected for award, is left out in the cold. And what is specifically wrong here is that the Government decided to make award on the basis of technical merit alone. That is particularly outrageous in this case since a [redacted].

Had the Government properly considered cost in making its award decisions as required by the law and the Solicitation, STG would have been in line for award. Had the Government conducted a proper best value analysis, STG would have been in line for award. And had the Government properly evaluated STG's proposal for Past Performance and Basic Contract Plan, even under the skewed and uneven methodology utilized by GSA, STG would have been in line for award. The Government's mistakes and omissions have cost STG the opportunity for fair consideration of its offer, and if these errors are not corrected, the taxpayer will suffer the consequences in terms of inflated and unjustifiably high prices. STG has been competitively prejudiced. Its protest should be sustained and the Court should order that the Government take corrective action to ensure a proper evaluation of the STG proposal and award of one of the Alliant contracts to STG.

## CONCLUSION

For the reasons stated above, STG respectfully submits that the Court should **SUSTAIN** this protest, order that the Government take corrective action and award STG an Alliant contract award, pay STG's attorney's fees and costs and provide whatever other relief the Court deems just and reasonable.

Dated: November 30, 2007

Respectfully submitted,

/s/ Gerald H. Werfel

Gerald H. Werfel
POMPAN, MURRAY & WERFEL, P.L.C.
601 King Street, Suite 400
Alexandria, Virginia 22314
(703) 739-1340 (Telephone)
(703) 739-1342 (Facsimile)
ghwerfel@pompanmurray.com
*Attorney of Record for STG, Inc.*

Of Counsel:
Philip J. Harvey, Esq.
David G. Fiske, Esq.
Adrien C. Pickard, Esq.
FISKE & HARVEY, PLLC
100 North Pitt Street, Suite 200
Alexandria, Virginia 22314
(703) 518-9910
(703) 448-1767 (Fax)

**Certificate of Filing**

I hereby certify that on November 30, 2007, a copy of the foregoing Consolidated-Plaintiff's Motion for Judgment on the Administrative Record was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Gerald H. Werfel
Gerald H. Werfel