**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | | |
|---|---|---|
| THE CENTECH GROUP, INC. | ) | |
| Plaintiff, | ) | REVISED REDACTED VERSION FOR PUBLIC RELEASE |
| v. | ) | No. ______________ |
| THE UNTIED STATES, | ) | |
| Defendant. | ) | |

**COMPLAINT**

**COMES NOW,** THE CENTECH GROUP, Inc., (hereinafter "CENTECH"), through undersigned counsel, and files this Complaint arising out of a bid protest. Plaintiff, CENTECH asserts this action for preliminary and permanent injunctive relief, and declaratory judgment against Defendant, the United States of America, through its General Services Administration ("GSA"), to prohibit the United States from awarding a contract or expending any funds for its Government-wide Acquisition Contract ("GWACs") for the "Alliant" Program, except under a lawfully awarded contract made in accordance with applicable procurement laws and regulations, and the evaluation scheme published in the Request for Proposals ("RFP"); to declare that CENTECH should be entitled to be chosen as an awardee under such contract when lawfully made in accordance with all applicable laws, regulations, and procedures; to compel the Defendant to do so upon compliance with all applicable laws, regulations, and procedures; and to provide CENTECH related bid and proposal costs.

## I. NATURE OF THIS ACTION

1. This is an action by an interested party protesting the selection of awardeed under a multiple-award contracts of the General Services Administration ("GSA") for a broad range of

[redacted]

information technology services. This action is in the nature of a bid protest as well as a claim for breach of implied contract to have a bid fairly considered, and it seeks declaratory and injunctive relief.

## II. JURISDICTION

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1491(b)(1) and (2).

## III. THE PARTIES

3. Plaintiff, THE CENTECH GROUP, Inc. ("CENTECH") is a corporation organized under the laws of the Commonwealth of Virginia. CENTECH's principal place of business is located at 4600 N. Fairfax Drive, Suite 400, Arlington, Virginia 22203. CENTECH is engaged in the business of providing services, including the information technology, communications, and computer services at issue here, to the Federal Government and other customers.

4. CENTECH submitted a timely and acceptable proposal to the General Services Administration ("GSA") for the services in question. It is responsible and fully competent to provide those services. The GSA evaluated CENTECH's proposal as acceptable and capable of performing the services being procured. CENTECH alleges that it would have received a contract award but for the illegal and improper actions of the GSA detailed below. Accordingly, CENTECH is an interested party entitled to bring this action.

5. The United States has acted through the General Services Administration, Enterprise GWAC Center, Global Long Term Integrated, Information Technology Solutions Services.

## IV. STANDING

6. Having submitted a proposal not accepted for award, CENTECH possesses a direct economic interest which is impacted by GSA's evaluation methods complained about. The GSA disclosed that CENTECH was ranked 29th on past performance and technical evaluation criteria. In advertising this contract, the GSA stated that it will make up to 30 awards. In fact, GSA made 29 awards, including awards to companies with much higher prices than CENTECH. Moreover, CENTECH was not chosen for award due to its small business status. Therefore, CENTECH is an interested party that the GSA that should have selected for award "but for" the violations of law and regulation complained about herein.

## V. FACTS

7. On September 29, 2006, GSA issued solicitation number TQ2006MCV0001 (the "Solicitation" or the "RFP"). The Solicitation sought proposals for Government-wide Acquisition Contracts ("GWACs") for a program called Alliant. (RFP, Section B.1). GWACs are authorized pursuant to 40 U.S.C. § 1412(e). Under GWACs, various departments and agencies of the Federal Government could issue orders for the services included in the contracts. The maximum size of the Alliant program is $50 billion. (RFP, Section B.4). The contracts would last up to ten years (RFP, Section F.2).

8. In the Solicitation, GSA announced that it intended to award more than one contract under the solicitation. (RFP, Section B.1). GSA stated that it would operate this GWAC as a multiple-award task order contract; such contracts are subject to 41 U.S.C. § 253 h (d). Under this type of contract, the Government is able to compete task orders among the contract awardees, or some subset thereof. Specifically, GSA announced that it intended to award up to 30 contracts under the Solicitation.

9. The solicitation contemplated contracts under which the contractors could provide a very broad variety of information technology services to the Federal Government. (RFP, Sections C). Offerors were to propose a total of 80 different labor categories (RFP, Attachments J-2 & J-3).

10. The Solicitation was issued under the procedures for competitive proposals in Federal Acquisition Regulation ("FAR") Part 15. Pursuant to those procedures, the Solicitation announced that there were two Technical Evaluation subfactors and that they were of approximately equal importance: (1) Past performance and (2) Basic Contract Plan. Combined, the two Technical Evaluation subfactors were significantly more important than the Cost/Price evaluation factor. The rating system for evaluation factors had five different levels, in descending order, as follows: (1) Exceptionally High Confidence, (2) Significant Confidence, (3) Acceptable Confidence, (4) Marginal Confidence, and (5) Little to No Confidence.

11. On November 17, 2006, CENTECH submitted a timely and acceptable proposal.

12. CENTECH submitted a timely written request for a debriefing. FAR 15.506 required such a debriefing.

13. GSA provided a copy of the debriefing to CENTECH on August 20, 2007.

14. GSA's written debriefing stated that it had rejected 4 of 66 proposals received and evaluated the remaining 62.

15. GSA also said that it awarded these contracts based on initial proposals, and that it did not conduct discussions with offerors. GSA did not conduct discussions with CENTECH.

16. On August 27, 2007 CENTECH timely filed a protest with the General Accountability Office ("GAO").

17. On October 24, 2007, the GAO notified CENTECH that it dismissed its protest because the matter involved was pending before a court of competent jurisdiction.

18. On November 13th 2007 counsel to Plaintiff provided pre-filing notification to the Department of Justice, the Clerk of this Court, and the GSA by U.S. of this filing.

***A. Evaluation Criteria***

19. In its RFP, the GSA advertised that it would apply and follow the proposal evaluation scheme contained in Section M of the RFP. The RFP specified the following Evaluation Factors for Award:

**SECTION M**

**EVALUATION FACTORS FOR AWARD**

**M.1 FAR 52.252-1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998)**

**M.2 BASIS FOR AWARD**

**(a) Best Value –** Award will be made to responsible Offerors whose proposals are determined to provide the "best value" to the Government. FAR Part 15 competitive negotiation selection procedures utilizing the "best value" trade-off approach will be utilized.

**(b) Relative Importance –** The two Technical Evaluation Factors, (1) Past Performance (Section M.5.1) and the (2) Alliant Basic Contract Plan (Section M.5.2), are approximately equal in importance to each other, and when combined, are significantly more important than Cost or Price (Section M.6)….

**M.3 EVALUATION PROCEDURE FOR CONTRACT AWARD**

The procedure for evaluating Proposals shall be as follows:

**(a) Acceptability Review –** The Government will conduct an acceptability review of each proposal received as described below in Section M.4. The Offeror's proposal will only proceed to the evaluation phase if it is deemed to "ass" the acceptability review.

**(b) Technical Evaluation –** The Government will evaluate an Offeror's Technical Proposal as further described below in Section M.5.

**(c) Cost/Price Evaluation –** The Government will evaluate an Offeror's Cost/Price Proposal, as further described below in Section M.6.

**(d) Best Value Tradeoff –** Consistent with FAR 15.101-1, the Government will conduct a "best value" tradeoff, in which differences in non-price factors and evaluated price will be compared between the Offerors in order to determine which Offeror represents the best value to the Government. ***The technical factors combined are significantly more important than cost or price…;***

## M.5 TECHNICAL EVALUATION FACTORS

The Government will evaluate its confidence level in the Offeror's ability to manage risk and to deliver high quality service and solutions under the Basic Contract, by assigning adjectival/confidence ratings to the following two Technical Evaluation Factors.

**(a) Past Performance** for which the Government will look "retrospectively" and consider the Offeror's history of success in delivering high quality service and solutions are contract efforts of similar scope and complexity to those anticipated under the Alliant Contract pursuant to Section C.

**(b) Alliant Basic Contract Plan** for which the Government will look "prospectively" and consider the Offeror's level of commitment to the Alliant program and potential for success. The Government will evaluate the Offeror's proposal resources devoted to Alliant and the degree to which the Offeror's corporate structure and program management system will facilitate high quality service and solutions for all work described in Section C.

### M.5.1 Past Performance

The Government will look "retrospectively" and consider the Offeror's Past Performance Considerations in determining the Government's confidence level, with approximate equal importance to each other, are the subfactors: (a) Quality of Service; (b) Schedule; (c) Cost Control; (d) Business Relations; and (e) Subcontract Management/Socioeconomic Goals.

**(a) Quality of Service –** The Government will evaluate the Offeror's ability to provide a service that met the customer's quality requirements and conformed to contract requirements. The Government will consider whether risk factors were identified, mitigated and managed resulting in high quality service and solutions. Offerors that employed innovative and unique quality assurance tools and methodologies to ensure efficient and effective design, development and implementation of quality solutions will be more highly rated. Offerors whose performance metrics and quality control solutions are comprehensive, verifiable and effective will be evaluated more favorably.

**(b) Schedule –** The Government will evaluate the Offeror's ability to meet all schedule goals related to completion of the contract, task orders, milestones, delivery schedules and administrative requirements (timely submission of accurate Small Business Subcontracting reports; invoices; contract closeout documentation, etc.).

**(c) Cost Control** (does not apply to FFP and FFP w/EPA) **–** The Government will evaluate the Offeror's ability to deliver a service at the agreed to price/cost to include their ability to effectively forecast, manage and control contract costs, as well as report and analyze variances.

**(d) Business Relations –** The Government will evaluate the Offeror's ability to integrate and coordinate all activity needed to execute the contract and evaluate the degree to which the Offeror cooperated in order to be an effective business partner. Elements that may be considered include the timeliness, completeness and quality of: problem identification, corrective action plans, proposal submittals, change orders and task order requests (TORs); as well as the contractor's history of cooperative behavior and customer satisfaction.

**(e) Subcontract Management/Socioeconomic Goals –** The Government will evaluate the Offeror's ability to timely award and manage subcontracts and whether they have met their small business utilization goals in the past, with those exceeding their goals being evaluated more favorably.

### M.5.1.1 Acceptable Past Performance

Only Past Performance information submitted, which is deemed acceptable and relevant pursuant to the requirements set forth in Section L.12.3, will be evaluated.

### M.5.1.2 Method of Selecting Past Performance Efforts for Evaluation

The Government intends to use reasonable efforts to check approximately ten (10) efforts selected from Tables 1 and 2, including the three (3) efforts, which the Offeror has identified. The Government reserves the right to check more or fewer efforts, at its discretion, and does not guarantee that it will contact any particular effort listed in Table 1 or Table 2, even the efforts specifically listed by the Offeror.

### M.5.1.3 Evaluation Method

Past Performance is a measure of the degree to which an Offeror, as an organization, has satisfied its customers, while fulfilling its absolute duty to

comply with applicable laws and regulations. Relevant Past Performance will be evaluated to determine the relative merits of the Offeror's past performance.

In the event any Offerors are deemed virtually equivalent, the following discriminators may be used: Offerors with demonstrated success in providing integrated IT solutions including all three component areas in Section C will be evaluated more favorably. Offerors with successful performance on efforts that include OCONUS work, Cost-type contracts or include significant subcontract management will be rated more highly.

**M.5.2 Alliant Basic Contract Plan**

The Government will look "prospectively" and consider the Offeror's Alliant Basic Contract Plan. Considerations in determining the Government's confidence level, in descending order of importance, are the subfactors: (a) Resources; (b) Program Management; and (c) Corporate Commitment. As part of its evaluation of the contract plan, the Government will evaluate the Offeror's overall capability to support the Alliant program by determining whether the plan sufficiently addresses any gaps or weaknesses not addressed in past performance.

**(a) Resources –** The Government will evaluate the Offeror's plan to determine the adequacy of internal and external resources available to perform all three component areas of Section C including OCONUS work and effectively and efficiently administer the Alliant program. The Offeror's Program Management systems and processes will be evaluated as a separate subfactor. See (b) below.

**(1) Internal Resources –** The Government will evaluate the adequacy of the Offeror's current core capabilities which include but are not limited to the: ability to recruit, train and retain qualified personnel, number of personnel possessing security clearances and the level of the clearances, quality of key personnel and effectiveness of business systems.

Offerors that propose Program Managers with proven track records of managing program similar to the Alliant in scope and magnitude will be evaluated more favorably. Offerors that propose Contract Administrators with proven expertise in applying FAR rules and regulations in administering contracts similar to Alliant will be evaluated more favorably.

Offerors with approved purchasing systems will be evaluated more favorably.

**(2) External Resources –** The Government will evaluate the Offeror's methodology for supplementing its cure capabilities to meet all three component areas identified in Section C for completeness and soundness of approach. Emphasis will be placed on those areas not addressed by internal resources or reflected in past performance.

The Government will evaluate the Offeror's methodology for selecting, monitoring, and managing subcontractors and teaming arrangements, as applicable; methodology for providing OCONUS support; and approach to support continuity of operations in response to sudden workload surges including contingency/disaster recovery situations.

**(b) Program Management –** The Government will evaluate the Offerors program management strategy to determine how well it facilitates success of the Alliant program.

The Government will evaluate the viability of the Offeror's Program Management Information System to support the Basic Contract including the data deliverables in Section F.5. Offerors providing comprehensive and thorough descriptions that demonstrate a program management information system, which effectively employs electronic commerce/electronic business processes and is capable of producing timely quality data products will be evaluated more favorably.

Offerors providing a comprehensive and effective program management strategy with quantifiable performance metrics that link incentives to performance and quality controls that ensure a comprehensive and verifiable approach for monitoring and reporting performance will be evaluated more favorably.

Offerors with approved EVMC will be evaluated more favorably.

**(c) Corporate Commitment –** The Government will evaluate the Offeror's plan to determine the level of corporate commitment to the Alliant program including whether it has a dedicated Alliant IT organization adequate to support the Alliant program.

The strategy for business development, proposal management, contract administration and pursuit of technological innovations will be evaluated for completeness, understanding of the requirement and potential for optimization of the Alliant program.

Offerors that provide well-defined lines of authority, responsibility and communication in their corporate structure as well as detailed processes for early problem identification with efficient and effective mitigation will be evaluated more favorably.

Offerors with plans that demonstrate their ability to develop and implement successful business process improvements will be evaluated more favorably.

## M.6 COST/PRICE EVALUATION

The technical factors combined are significantly more important than cost or price; however, the closer the technical scores of the various proposals are to one

another, the more important cost or price considerations become in determining the overall best-value for the Government.

Cost/price proposals will be evaluated using proposal analysis techniques consistent with FAR 15.404-1 to ensure that proposed direct and indirect rates for each labor category during the base period and option period are fair, reasonable, and predictable for anticipated work under the Basic Contract.

Pursuant to FAR 15.404-1(g), an offer may be rejected if the Government determines that the lack of balanced pricing poses an unacceptable risk to the Government.

As defined in FAR 3.501, an Offeror may be rejected if the evaluation determines that an Offeror submitted prices below anticipated costs. Proposals that include unrealistically low labor rates, or that do not otherwise demonstrate cost realism, will be considered a high risk assessment and will be evaluated for award in accordance with that assessment.

**M.6.1. Price Analysis**

Price analysis is the process of examining and evaluating a proposed price without evaluating its separate cost elements and proposed profit.

The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price such as, but not limited to, the following:

**(a)** Comparison of proposed Loaded Hourly Labor Rates received in response to the Solicitation. Normally, adequate price competition establishes price reasonableness.

**(b)** Comparison of previously proposed Loaded Hourly Labor Rates for the same or similar labor categories using independent Government Price estimates.

**(c)** Overall evaluated price using independent Government estimates for labor hours as set forth in Section L, Attachments 2 and 3.

**M.6.2. Cost Analysis**

Cost analysis is the review and evaluation of the separate cost elements and profit in an Offeror's proposal and the application of judgment to determine how well the proposed costs represent that the cost should be, assuming reasonable economy and efficiency.

The Government may use various cost analysis techniques and procedures to ensure a fair and reasonable price, given the circumstances of the acquisition such as, but not limited to, the following:

**(a)** Verification that the Offeror's cost submissions are in accordance with the contract cost principles and procedures in FAR Part 31 and, when applicable, the requirements and procedures in 48 CFR Chapter 99 (Appendix to the FAR loose-leaf edition), Cost Accounting Standards.

**(b)** Verification from DCAA/DCMA that the Offeror's cost controls and surveillance systems are adequate as demonstrated through approved cost accounting and estimating systems, including all the Offeror's approved provisional billing rates and forward pricing rate agreements from DCAA.

**(c)** The application of audited indirect cost rates and direct labor rates in the Offeror's basis of estimate for each Loaded Hourly Labor Rate, and if necessary, a cost realism analysis to demonstrate the Offeror's understanding of the requirements of this Solicitation.

**M.7 SMALL BUSINESS SUBCONTRACTING PLAN**

The Government will evaluate the Offeror's proposed Individual Small Business Subcontracting Plan for providing subcontracting opportunities for the socio-economic categories indicated in Section L.5.1 to determine the extent and enforceability of the Offeror's commitment to the socio-economic goals of the Basic Contract. This plan is provided to the Government at the time of proposal submission per Section L.12.2, Folder E, and is subject to negotiation by the Contracting Officer. Failure to negotiate a satisfactory Individual Small Business Subcontracting Plan will render a proposal unacceptable and therefore no longer eligible for award. Offerors qualifying as small businesses under North American Industry Classification System (NAICA) code 541512, Computer Systems Design Services, are not required to submit Small Business Subcontracting Plans.

***B. Debriefing***

20 In the Contracting Officer's debriefing letter to CENTECH the Contracting Officer disclosed the following technical scores applicable to CENTECH's proposal:

**PAST PERFORMANCE**

Quality of Service: [redacted]

Schedule [redacted]

Cost Significant [redacted]

Business Relations [redacted]

SubK/Socioeconomic Goals ([redacted]

**ALLIANT CONTRACT PLAN (BCP)**

Resources [redacted]

Program Management [redacted]

Corporate Commitment [redacted]

**COST/PRICE ANALYSIS**

Cost Analysis**.** [redacted]

Price Analysis (Total Evaluated Price). [redacted]

21. The Contracting Officer disclosed that the GSA applied the following source selection methods to reach its determination that CENTECH [redacted] and therefore missed obtaining a contract award by one proposal ranking:

First, [redacted]

[redacted]

Second, t[redacted]

Next, [redacted]

[redacted]

**CONCLUSION**

[redacted]

**COUNT ONE – FAILURE TO FOLLOW EVALAUTION CRITERIA**

22. Plaintiff incorporates by reference the allegations of paragraphs 1 through 21.

23. In its RFP the GSA disclosed that "award will be made to responsible Offerors whose proposals are determined to provide the "best value" to the Government. To make its best value determinations, the GSA disclosed that "the Government will conduct a "best value" tradeoff, in which differences in non-price factors and evaluated price will be compared between the Offerors in order to determine which Offeror represents the best value to the Government.

24. The GSA also disclosed however, that ***"the technical factors combined are significantly more important than cost or price."***

25. Notwithstanding the paramount emphasis that GSA stated it would place on technical considerations over price, [redacted]

26. In the Conclusion to the Contracting Officer's Officer debriefing letter, the Contracting Officer discloses:

[redacted]

[redacted]

[redacted]

27. The GSA's stated reason for not selecting CENTECH proposal for award violates the "best value" tradeoff analysis and evaluation scheme disclosed in its RFP.

28. On an overall proposal evaluation basis, t[redacted]

**<u>COUNT TWO – IMPROPER SUBCONTRACTING PLAN EVALUATION</u>**

29. Plaintiff incorporates by reference the allegations of paragraphs 1 through 28.

30. CENTECH submitted a small business subcontracting plan, even though it was not required to do so. The GSA ignored CENTECH's positive subcontracting record and scored it "Neutral" based on nothing more than CENTECH's status as a small business concern.

31. As a consequence, CENTECH was denied the benefit of a positive evaluation rating.

32. In addition, CENTECH received the rating [redacted] on its Subcontracting Management & Supplementing Core Capabilities element of Alliant Basic Contract Plan. In the context of this award, the GSA's decision amounted [redacted] CENTECH. However, the Small Business Act prohibits federal agencies from downgrading companies simply by virtue of being a small business concern without a reference to the SBA for a Certificate of Competency. <u>See</u> 15 USC §637(b)(7).

33. Furthermore, FAR §15.305 mandates that the GSA conduct a thorough and diligent past performance evaluation.

34. In discussing CENTECH's strengths on this issue in the Past Performance section, the GSA admitted that CENTECH's subcontract management earned [redacted] from references. Contrary to this evidence, the GSA arbitrarily concluded that "there was not a track record to rate CENTECH for this subfactor."

35. The Contracting Officer justified this conclusion by explaining that "CENTECH was a small business concern at the time of proposal submission" and that "several references cited 'N/A,' or did not address the use of subcontractors." Id. (italics added).

36. The GSA apparently did not look beyond CENTECH's size at the time it submitted its proposal in considering this evaluation factor. However, just a page later, in the Basic Contract Plan section, the PCO noted that CENTECH's "positive attributes noted include . . . serving as a prime contractor on 1,950 (78%) contracts/task orders managing 312 different companies serving as subcontractors."

37. The GSA [redacted] The GSA also alleged that subcontracting improvements [redacted]

38. As noted in the Small Business Act: "It is the policy of the United States that small business concerns . . . shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems." 15 USC 637(d)(1); see also 15 USC §631.

39. The GSA's evaluation process nullifies this Congressional policy by effectively presuming that small businesses – [redacted]

40. In its RFP, the Government disclosed that it would "evaluate the Offeror's proposed Individual Small Business Subcontracting Plan for providing subcontracting opportunities for the socio-economic categories indicated in Section L.5.1 to determine the extent and enforceability of the Offeror's commitment to the socio-economic goals of the Basic Contract. The GSA failed to perform this evaluation and as a consequence, [redacted]

**<u>COUNT THREE– FAILURE TO TREAT OFFERORS EQUALLY</u>**

41. Plaintiff incorporates by reference the allegations of paragraphs 1 through 40.

42. Although the evaluation of proposals is a matter within the discretion of the contracting agency, an agency's evaluation may be overturned where it lacks a reasonable basis or conflicts with the stated evaluation criteria for award. The record must reasonably support the evaluation of the proposals, and it is fundamental that the contracting agency must treat all offerors equally against common requirements and evaluation criteria.

43. From its evaluation of CENTECH's Technical Proposal, the GSA determined that CENTECH submitted a highly ranked technical proposal that it scored accordingly as follows:

**PAST PERFORMANCE**

Quality of Service: [redacted]

Schedule [redacted]

Cost Significant [redacted]

Business Relations [redacted]

SubK/Socioeconomic Goals [redacted]

**ALLIANT CONTRACT PLAN (BCP)**

Resources [redacted]

Program Management [redacted]

Corporate Commitment [redacted]

44. The GSA evaluated CENTECH's cost proposal as competitive and reasonable as follows:

[redacted]

45, From a Price Analysis perspective, the GSA's evaluators stated:

[redacted]

46. Therefore, no rational basis existed for GSA to bypass CENTECH's proposal in violation of its evaluation scheme in Section M of the RFP t[redacted]

47. The GSA committed to treat all offerors' proposals equally. By deviating from its disclosed evaluation scheme, and by arbitrarily acting to justify its having bypassed CENTECH's proposal to enable it to access lower priced proposals, GSA failed to treat offerors'

equally in violation of federal procurement laws and regulations, and its disclosed evaluation scheme in the RFP.

**COUNT FOUR – IMPROPER CONTRACT PLAN EVALUATION**

47. Plaintiff incorporates by reference the allegations of paragraphs 1 through 46.

48. Basic Contract Plan was one of two equally weighted components of the Technical Evaluation factor. Basic Contract Plan was itself divided into three subfactors, in descending order of importance: (1) Resources, (2) Program Management, and (3) Corporate Commitment. Each subfactor had from three to six elements.

49. [redacted]

50. The "Resources" subfactor contained two sub-elements, "Internal Resources" and "External Resources."

51. In evaluating CENTECH's proposal related to its "Resources", [redacted] The GSA failed to document whether any features of CENTECH's proposal were evaluated as strengths or weaknesses, and failed to disclose the significance of the features evaluated and how they impacted on GSA's best value determination.

52. Instead, the GSA merely recites that it weighed several undisclosed "discriminators" that caused it to exclude CENTECH's offer from award consideration without any disclosure by the GSA of the analyses or judgments that it rendered in reaching its conclusions. This violates FAR 15.305(a) and the standards of review in 5 U.S.C. § 706.1

53. As with its evaluation of "Resources" GSA's evaluation of Corporate Commitment violated FAR 15.305(a) and the standards of review in 5 U.S.C. § 706, and rendered the evaluation arbitrary and capricious.

54. In evaluating CENTECH's proposal related to the "Corporate Commitment", the GSA failed to adequately document the basis of its conclusions [redacted]

55. The GSA failed to document whether any features of CENTECH's proposal that were evaluated as strengths or weaknesses, and failed to disclose the significance of the features evaluated and how they impacted on GSA's best value determination.

56. Instead, the GSA merely recites that it weighed several undisclosed "discriminators" that caused it to exclude CENTECH's offer from award consideration without any disclosure of the analyses undertaken or the judgments that the GSA rendered to reach its conclusions. This violates FAR 15.305(a) and the standards of review in 5 U.S.C. § 706.1.

57. Without these errors in the evaluation of the Alliant Basic Contract Plan, CENTECH would have received higher technical ratings, thus magnifying the impact of the GSA's deviation from its stated evaluation criteria and elevation of price over technical considerations as the its overriding selection criteria and discriminator.

**COUNT FIVE – IMPROPER TECHNICAL AND COST EVALUATION RANKING**

58. Plaintiff incorporates by reference the allegations of paragraphs 1 through 57.

59. In the written debriefing, GSA stated that [redacted] However, GSA also stated that [redacted]

[redacted] However, the GSA inexplicably determined to award a contract to the 31st ranked offeror despite the fact that the GSA scored the proposal to be [redacted] The GSA made the award to the 31st ranked offeror merely to access its lower proposed price in violation of the evaluation criteria disclosed in the RFP.

60. GSA's deviation of an overall Technical Evaluation ranking was arbitrary and capricious, and lacked a reasonable basis.

61. This error is especially significant because GSA's written evaluation noted that the offerors ranked [redacted]n the Technical Evaluation were part of a special analysis to consider them for award, and one of these offerors actually did receive a contract award. Thus, the failure of GSA to properly combine the two subfactors into an overall Technical Evaluation ranking deprived CENTECH of this opportunity to receive further consideration for contract award.

**<u>COUNT SIX – IMPROPER BEST VALUE DETERMINATION</u>**

62. Plaintiff incorporates by referenced herein the allegations of paragraphs 1 through 61.

63. Under the Solicitation, GSA was obliged to evaluate an offeror's proposed price, as well as the cost constituents of that price. In its written debriefing to CENTECH, GSA claimed to have made such an evaluation.

64. Under the Solicitation, GSA promised to award contracts on a "best value" basis, taking into account both the Technical Evaluation and the Cost/Price Evaluation. The two combined technical factors were described as significantly more important than cost/price.

65. Since the Technical Evaluation was subject to numerous flaws as described in Counts One through Five, CENTECH received a lower technical rating than it should have, and consequently a lower overall ranking. As a result, the best value analysis, which relied in large part upon the improper and incorrect Technical Evaluation, was itself flawed. A proper evaluation of CENTECH's proposal would have improved its ranking to the extent that it would have received a contract award.

66. In its debriefing, GSA explained that the award decision was made by selecting the 28 offerors with the highest-ranking for Technical Evaluation. After reviewing the Technical Evaluation rankings of offers ranked [redacted] one more offeror was selected for award because of its "substantially lower prices." GSA then awarded contracts to these 29 offerors.

67. Because it selected the 31st ranked awardee over CENTECH for no other reason than that offeror submitted a lower priced proposal, GSA deviated from its disclosed evaluation scheme in a manner specifically targeted to CENTECH. This was inconsistent with the evaluation criteria in the Solicitation and violates federal procurement laws and the FAR.

## PRAYER FOR RELIEF

### *PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF*

As a result of the GSA's unlawful actions CENTECH suffers irreparable injury for which it has no adequate legal remedy. This injury consists of its lost government contract, lost profits, the opportunity to fairly compete for award going forward, and harm to its business reputation. Without an injunction, CENTECH will be barred from competing for Alliant orders for up to ten years.

The relief CENTECH requests will not cause any injury to the United States Government, or the GSA, and will serve the public interest by insuring that the GSA's

competition for "GWACs" for the "Alliant" Program, is conducted in accordance with federal procurement laws, including the Small Business Act, and the FAR.

The GSA's violations of federal procurement statutes, regulations, and policies, adversely effect and undermine the integrity of the federal procurement process.

The relief CENTECH requests will protect the public interest by preserving the integrity of the public confidence in the federal procurement process, thereby promoting competition for federal government contracts.

CENTECH is fully qualified to perform the GSA's Alliant Program requirements under a lawfully awarded GWAC contract, as the GSA so determined during its source selection. .

WHEREFORE, CENTECH prays that this Court grant the following relief:

A. Declare that the GSA violated federal procurement laws and acted unreasonably, arbitrarily, and capriciously by its actions complained about herein, with an Order prohibiting the GSA from awarding a contract, or expending any funds for its Alliant Program except under a contracts fairly awarded to CENTECH and other offerors who competed for and earned the right to receive contract awards made in accordance with federal procurement laws and regulations, and consistent with the evaluation scheme disclosed by the GSA in its RFP, and such other relief as the Court deems just and appropriate to remedy the harm CENTECH complains about; and

B. Preliminarily and permanently enjoin the GSA from allowing anyone other than CENTECH to perform Alliant contracts and requirements until such time as the Court determines that awards made were fairly determined in accordance with all applicable laws and regulations, and

C. Award CENTECH its bid preparation costs, and such other and further relief as this Court deems just and proper.

Dated: November 15, 2007

Respectfully submitted,

THE MARTIN LAW FIRM, PLLC

____________________________

Kenneth A. Martin, Esq.
6723 Whittier Ave., Suite 200
McLean, VA 22101
703-918-0350 (telephone)
703-918-0386 (facsimile)

Counsel to
THE CENTECH GROUP, Inc.

*Of Counsel:*

Max V. Kidalov
Vice President & General Counsel
THE CENTECH GROUP, INC.
4600 North Fairfax Drive, Suite 400
Arlington, Virginia 22203
(703) 525-4444