# In The United States Court of Federal Claims

Nos. 07-691C, 07-732C, 07-741C, 07-747C, 07-760C, 07-761C, 07-766C, 07-771C, and 07-803C

(Filed: January 16, 2008)

SERCO INC.; CGI FEDERAL INC.;
STG, INC.; ARTEL, INC.;
ADVANCED TECHNOLOGY SYSTEMS INC.;
APPTIS INC.; NORTEL GOVERNMENT
SOLUTIONS, INC.; and THE CENTECH GROUP, INC.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant,

and

INDUS CORPORATION;
ELECTRONIC DATA SYSTEMS CORPORATION;
INTERNATIONAL BUSINESS MACHINES CORPORATION;
STANLEY ASSOCIATES, INC.; and
GENERAL DYNAMICS ONE SOURCE, LLC,

Defendant-Intervenors.

## ORDER

On October 22, 2007, this court scheduled oral argument in this matter for February 4, 2008. To ensure that this argument proceeds fairly and efficiently, the following provisions shall be observed by the parties:

1. Oral argument shall commence at 9:30 a.m. (EST) in Courtroom 4 at the United States Court of Federal Claims, 717 Madison Place, Washington, DC 20005. Only those individuals admitted under the Protective Order shall be permitted in the courtroom.

2. Each side (the plaintiffs on one side, and defendant and the defendant-intervenors on the other) shall be allotted a maximum of three hours and twenty minutes to present argument.

3. The time allotted for argument shall further be divided between the sets of cross-cutting issues identified in paragraph 4 of this order

and any other issues presented herein, particularly those more unique to each plaintiff. The court will hear and complete argument on the cross-cutting set of issues first and then later in the day hear argument from both sides on the other issues. The identification or omission of particular issues in paragraph 4 and the relative timing allocated herein to the argument of various issues should not be viewed as reflecting any pre-decisional views regarding the impact that the resolution of a given issue ultimately will have on the resolution of this case.

4. The sets of cross-cutting issues are as follows:

a. **Issues involving the accuracy of the data and calculations used in determining the technical ranks.** Among these issues are those involving: (i) the validity of the observations recorded by the contractor regarding past performance; (ii) the accuracy and consistency of the agency's conversion of the observations made by the contractor into adjectival ratings; (iii) the potential for false precision to exist in the results of the calculation of the basic contract plan rating and, correspondingly, in the results of the calculation of the weighted BCP/PP weighted average (*e.g.*, whether, contrary to significant figure principles, arbitrariness was introduced into the analysis by beginning with data often expressed in whole numbers or numbers purportedly accurate up to one decimal point and ending up with distinctions being made on the basis of BCP/PP averages carried out to three decimal points); and (iv) the relative weights given to the BCP and PP scores and whether that weighing was consistent with the requirements of the Solicitation and the Source Selection Plan.

b. **Issues involving the agency's consideration of price.** Among these issues are those involving: (i) whether the agency properly conducted its price reasonableness and cost realism analyses; (ii) whether it was arbitrary, capricious or otherwise contrary to law for the agency to make awards to offerors with prices that substantially deviated from the mean of the offered prices and from the independent government cost estimate; and (iii) whether the agency's consideration of price in making its award decisions conformed with the requirements of law, the Solicitation and the Source Selection Plan.

c. **Issues involving the agency's trade-off decisions.** Among these issues are those involving: (i) whether the agency's use of what has been referred to as a "presumptive award group" was tantamount to establishing a "competitive range" so as to trigger a variety of procedural requirements under the Federal Acquisition Regulation; (ii) whether the trade-off analysis conducted by the agency made enough comparisons and compared the right offerors;

(iii) whether the trade-off analysis conducted by the agency correctly re-employed the "discriminators" that were described in the past performance segment of the Solicitation; (iv) whether the trade-off analysis sufficiently considered whether the technical advantages of a given offer were worth the increase in price; (v) whether the trade-off analysis was adequately documented; and (vi) whether the results of the trade-off analysis were otherwise arbitrary, capricious or contrary to law.

5. Each side shall be allotted a minimum of 2 hours to discuss all the sets of cross-cutting issues described in paragraph 4 of this order.

   a. Plaintiffs shall coordinate and designate one or, at most, two counsel to argue each of the sets of cross-cutting issues;

   b. Defendant and defendant-intervenors International Business Machines Corporation (IBM) and Electronic Data Systems Corporation (EDS) shall coordinate and determine how, if at all, they will allocate the total time dedicated to the cross-cutting issues amongst themselves. Defendant-intervenors which did not file briefs responding to plaintiffs' motions for judgment on the administrative record will not be permitted to argue.

6. Each plaintiff shall be allotted 10 minutes to discuss any issues it wishes to raise; any plaintiff may cede its 10 minutes to the consideration of the cross-cutting sets of issues, thereby expanding the time available for argument of the latter set of issues (*e.g.*, if one plaintiff cedes its individual time, the minimum allotted to the cross-cutting sets of issues will be expanded to 2 hours and 10 minutes).

7. Defendant, IBM and EDS shall be allotted a total of 1 hour and 20 minutes to respond to any of the issues raised by the individual plaintiffs during their 10 minute-argument segments. Defendant, IBM and EDS also shall coordinate and determine how, if at all, they will allocate the total time dedicated to these issues amongst themselves; defendant, IBM and EDS may agree to cede any portion of the 1 hour and 20 minutes to the consideration of the cross-cutting set of issues, thereby expanding the time available for argument of the latter set of issues.

8. On or before January 25, 2008, a party selected by the plaintiffs, or barring such selection, Serco shall file a joint report on behalf of plaintiffs, discussing how plaintiffs will allocate their time and which counsel will be arguing each of the sets of cross-cutting

issues listed in paragraph 4. The report shall indicate whether any of the plaintiffs are ceding time to the consideration of the cross-cutting set of issues and list any matters on which the plaintiffs have failed to reach agreement.

9. On or before January 28, 2008, defendant's counsel shall file a joint report on behalf of defendant and the arguing defendant-intervenors, discussing how defendant and defendant-intervenors will allocate their time. The reports shall indicate whether defendant and the arguing defendant-intervenors are ceding time to the consideration of the cross-cutting set of issues and list any matters on which defendant and the arguing defendant-intervenors have failed to reach agreement.

10. Should these report reveal disagreements that cannot readily be resolved, the court will conduct a status conference. It is the court's hope and expectation that such a conference will prove unnecessary.

11. The time limitations listed above will be strictly applied. As a consequence, the oral argument should be viewed as an opportunity to highlight critical points and respond to the court's questions. Given the time limitations, those arguing should be thoroughly familiar with the administrative record and with the authorities cited in the various briefs.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge